UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CIVIL ACTION NO:

JOHN HAGANS and VIVIAN HAGANS,
individually and on behalf of all others
similarly situated,

      Plaintiffs,                              JURY TRIAL DEMANDED

vs.

NATIONAL MENTOR HEALTHCARE,
INC., and NATIONAL MENTOR
HEALTHCARE, LLC,

      Defendants.

_____/

**PLAINTIFFS' CLASS AND COLLECTIVE ACTION COMPLAINT**

Congress designed the Fair Labor Standards Act of 1938 ("FLSA") to remedy situations "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."  29 U.S.C. § 202(a).  To achieve this broad remedial purpose, the FLSA establishes minimum wage and overtime requirements for covered employees.  29 U.S.C. §§ 206, 207.  These provisions, coupled with an effective integrated cause of action within the FLSA, prevent employers from pilfering the wages rightfully earned by their employees.  *See, Billingsley v. Citi Trends, Inc.*, 13-12561, 2014 WL 1199501 (11th Cir. Mar. 25, 2014).

1.      This case implicates an in-home care service company, which goes by the trade name of "Sevita Health." The employers implicated are NATIONAL MENTOR HEALTHCARE, INC. and NATIONAL MENTOR HEALTHCARE, LLC, which do business as

"Sevita Health," and was previously known as "The Mentor Network" ("Defendants" or "Sevita").[1]

2.      Defendants have a longstanding policy of misclassifying their employees as independent contractors.  Moreover, Defendants have persisted in their willful violation of state and federal wage and hour laws notwithstanding the fact that in-home employees working under conditions virtually identical to those Plaintiffs work under here, have previously been found to be employees.

3.      Defendants required and/or permitted Plaintiffs, JOHN HAGANS and VIVIAN HAGANS ("Plaintiffs"), and those similarly situated, to work as "Direct Support Professionals" or "Mentors" (collectively referred to as "DSPs") in excess of forty (40) hours per week, but refused to compensate them at the applicable minimum wage and/or required overtime rate.[2]

4.      Instead, Defendants paid both Plaintiffs a total of $65.65 per day (i.e. $32.86 each), regardless of their hours worked.

5.      Defendants' conduct violates the FLSA and NJWPL/NJWHL, which both require non-exempt employees, such as Plaintiffs, to be compensated at a rate of at least the applicable New Jersey minimum wage for all hours/weeks worked, and require that non-exempt employees be paid time and a half for all overtime hours worked.

6.      Plaintiffs bring a collective action to recover the unpaid wages owed to them and all other similarly situated employees, current and former, of Defendants who worked for Defendants in New Jersey, at any time during the three year period before this Complaint was

---

[1] Upon information and belief, both of the named-Defendants are subsidiaries of National Mentor Holdings, Inc., a Massachusetts company.

[2] This case is intended to include all DSPs, like Plaintiffs, who work through the host home program and provide in-home care to Defendants' clients/patients, who are housed at the DSPs' homes.

filed up to the present ("Collective Members").  These putative Collective Members should be informed of the pendency of this action and apprised of their rights to join in the manner envisioned by *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) and its progeny.

7.       Plaintiffs further complain on behalf of themselves, and a class of other similarly situated current and former "DSP" employees of the Defendants who worked in New Jersey, pursuant to Fed.R.Civ.P.23, that they are entitled to back wages from Defendants for hours/weeks of work for which they did not receive at least the New Jersey minimum wage and/or proper overtime, in violation of the New Jersey Wage and Hour Law ("NJWHL Claims").

## SUBJECT MATTER JURISDICTION AND VENUE

8.       This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

9.       This Court has jurisdiction over the NJWHL/NJWPL Claims pursuant to 28 U.S.C. §1367, because the acts and omissions that give rise to Plaintiffs' FLSA claims are the same acts and omissions that give rise to Plaintiffs' NJWHL/NJWPL Claims.

10.       Venue is proper in the District of New Jersey because the events forming the basis of this suit occurred in this District, and Plaintiffs' reside in this District.

## PARTIES AND PERSONAL JURISDICTION

11.       Plaintiff, JOHN HAGANS is a citizen of the State of New Jersey.

12.       Plaintiff, VIVIAN HAGANS is a citizen of the State of New Jersey.

13.       The Collective Members are all of Defendants' current and former DSPs who worked for Defendants through The Mentor Network and/or Sevita Health in the State of New Jersey, at any time during the three (3) years prior to the filing of Plaintiffs' Complaint up to the present.

14.     The Class Members are all of Defendants' current and former DSPs who worked for Defendants through The Mentor Network and/or Sevita Health at any time during the six (6) years prior to the filing of Plaintiffs' Complaint up to the present.

15.     Defendant, National Mentor Healthcare, Inc., is a foreign corporation doing business in New Jersey as "Sevita Health" (previously "The Mentor Network"), for the purpose of accumulating monetary profit.

16.     Defendant, National Mentor Healthcare, LLC, is a foreign limited liability company doing business in New Jersey as "Sevita Health" (previously "The Mentor Network"), for the purpose of accumulating monetary profit.

17.     Defendants employ over 40,000 employees in 40 states and serves upwards of 50,000 people.   *See*  https://sevitahealth.com/about-us/our-people/ ("***Our employees*** – 40,000 strong – help change people's lives.") (emphasis added).

18.     Defendants changed their name to "Sevita Health" in September 2021. Previously, they were known as "The Mentor Network."

19.     As of late 2021, the private equity companies that own Defendants valued Defendants at over $3 Billion Dollars, when they sought to sell a stake in the company.

20.     Defendants operate community-based DSP or mentor networks throughout the United States, and provide in-home care and services for people with intellectual and developmental disabilities (I/DD), through contracts with various states, including the State of New Jersey.

21.     Defendants serve both children and adults with intellectual and developmental disabilities, individuals with complex care needs, people recovering from brain and spinal cord

injury, seniors in need of daily support, children in foster care, patients struggling with autism to name a few services.

22.     Throughout the relevant time period, Defendants contracted with the State of New Jersey, Department of Human Services, Division of Developmental Disabilities to provide in-home services for people with I/DD throughout the State of New Jersey for profit.

## COVERAGE

23.      In an FLSA case, the following elements must be met: "a plaintiff must plead that '(1) Plaintiff was an 'employee,' as defined by the FLSA; (2) the defendant was 'engaged in commerce,' as defined by the FLSA; and (3) the plaintiff was not paid the federal minimum wage or was not paid overtime compensation for hours worked in excess of forty in a given week.'" *Perez v. Express Scripts, Inc.*, No. CV 19-07752, 2020 WL 7654305, at *2 (D.N.J. Dec. 23, 2020) (quoting *Razak v. Uber Tech., Inc.*, No. CV 16-573, 2016 WL 5874822, at 3 (E.D. Pa. Oct. 7, 2016)).[3]

24.     NJWHL, in relevant part, incorporates the definitions from the FLSA.

## EMPLOYMENT RELATIONSHIP

25.     "To be 'employed' includes when an employer 'suffer[s] or permit[s] [the employee] to work.'" *Id.* at 942 (citing 29 U.S.C. § 203(g)). "To determine if an individual is an employee, 'we look at the economic reality of all the circumstances' surrounding the activity." *Id.* (citing *Brouwer,* 139 F.3d at 819). "We refer to this test as the 'economic reality' test." *Id.* (citing *Villarreal v. Woodham,* 113 F.3d 202, 205 (11th Cir.1997)). "The touchstone of the economic reality test is the alleged employee's economic dependence on the employer." *Id.*

---

[3] To satisfy the third prong, the Third Circuit has adopted a "middle-ground approach," wherein plaintiffs are not required to identify exact dates and times in which they worked overtime (or were paid sub-minimum wages) to defeat a motion to dismiss. *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014).

26.     Here, Defendants have the power to hire and fire Plaintiffs.

27.     Defendants have a formal application process, and applicants who are accepted must then complete mandatory training conducted by both the State of New Jersey and Defendants in order to be employed.

28.     Defendants dictate the duties which Plaintiffs must perform and the manner in which they perform them.

29.     Defendants provide all DSPs with extensive policy and procedure manuals and other instructions to ensure that all DSPs perform their duties in a uniform manner, as required by Defendants.

30.     Defendants control virtually all aspects of Plaintiffs' work.

31.     Defendants assign a dedicated coordinator to help each DSP with case management, who makes home visits, answers questions and helps with any issues that may arise.

32.     The coordinator is there to support the DSP and make sure the individual's plan of care is being followed, and that Defendants' mandatory on call service is implemented in case of emergency.

33.     Defendants closely monitor the DSPs, to ensure that all of Defendants' policies and procedures are followed and that the individual's plan of care is being followed.

34.     Defendants controlled/control Plaintiffs' work assignments and schedule.

35.     Defendants provided training, through an orientation program that taught the DSPs what they needed to know in order to work for Defendants.

36.     Defendants determined the rate and the method of payment of all DSPs including Plaintiffs, and the rates were non-negotiable as between Defendants and Plaintiffs.

37.     At all times relevant, Plaintiffs were/are economically dependent on Defendants.

38.     Defendants required Plaintiffs and all other DSPs to pay various expenses, for which they failed to reimburse Plaintiffs in whole or in part, for Defendants' benefit and for the benefit of the individual who resided with Plaintiffs.

39.     DSPs are an integral part of Defendants' business model.

40.     DSPs are not customarily engaged in an independently established trade, occupation, professional or business.

41.     Rather they work under highly structured and highly regulated conditions dictated by Defendants and the State of New Jersey.

42.     Plaintiffs' job duties require little to no skill.

43.     Defendants required and continue to require Plaintiffs and all DSPs to complete training from Defendants and the State of New Jersey on an ongoing basis in order to retain their jobs.

44.     Defendants maintained records regarding the work performed by Plaintiffs and all other DSPs.

45.     At all material times, Defendants have been an employer within the meaning of 3(d) of the FLSA. 29 U.S.C. § 203(d).

46.     Moreover, the FLSA defines the term "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to any employee." 29 U.S.C. § 203(d).

47.     The statutory definition of "employer" includes corporate officers, participating shareholders, supervisors, managers, or other employees where that individual exercises some supervisory authority over employees and is responsible in whole or in part for the alleged

violation. *See id.*; *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971-72 (5th Cir. 1984).

## COVERAGE

48.     At all material times, Defendants have been an enterprise within the meaning of 3(r) of the FLSA. 29 U.S.C. § 203(r), and NJWHL.

49.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of NJWHL because they have had employees engaged in commerce. 29 U.S.C. § 203(s)(1).

50.     Specifically, Defendants have employed over 40,000 employees in 40 states simultaneously at all times relevant hereto.

51.     Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard.

52.     At all material times, Plaintiffs and other similarly situated individuals were employees who engaged in commerce or in the production of goods for commerce as required by 29 USC § 206-207 and the NJWHL.

## WAGE VIOLATIONS

53.     Although Defendants hold Plaintiffs and all other DSPs as their employees to the public, it classifies them as independent contractors for purposes of the FLSA and NJWHL (as well as FICA, workers compensation, etc.).

54.     Defendants' classification of Plaintiffs and all other DSPs as independent contractors is erroneous, because Plaintiffs and all other DSPs are Defendants' employees.

55.     Defendants failed to pay Plaintiffs and all other DSPs they hire proper minimum wages.

56.     Plaintiffs and those similarly situated routinely worked in excess of 40 hours per week, and over 8 hours per day, but Defendants failed to pay Plaintiffs overtime premiums when they work in excess of 40 hours per week.

57.     The only money Plaintiffs receive was/is $65.65 per day (combined) for all hours that they worked/work.

58.     Plaintiffs each typically worked more than 8 hours a day (i.e. more than 16 hours combined).

59.     Due to the excessive hours they work and low wage paid, Plaintiffs' operative hourly/weekly wage was/is $4.10 per hour, or less.

## FACTS

60.     Plaintiffs and Class and Collective Members have all been victimized by Defendants' common policy and plan to violate their rights under the FLSA and NJWHL/NJWPL by denying them minimum wage, and proper overtime.

61.     Defendants operate as "Sevita Health" throughout the State of New Jersey and throughout the United States.

62.     Defendants employ DSPs like Plaintiffs to provide the in-home care services that Defendants offers to the public and to their governmental clients.

63.     Plaintiffs were and continue to be employed by Defendants as DSPs.

64.     Plaintiffs have worked for Defendants since January 28, 1998, and continue to work for Defendants.

65.     Plaintiffs have first-hand personal knowledge of the pay violations committed by Defendants.

66.     Defendants pay all DSPs, including Plaintiffs, solely a day rate for each day

worked.

67.     Due to the hours that Plaintiffs, and all similarly situated DSPs, are required to work, the day rate paid by Defendants result in sub-minimum wage payments to Plaintiffs and similarly situated DSPs.

68.     Further, Defendants do not pay Plaintiffs or any of their DSP employees, overtime, notwithstanding the fact that they routinely and regularly work in excess of 40 hours per week.

69.     Defendants do not reimburse Plaintiffs for the costs associated with providing in-home care for Defendants' clients, resulting in further minimum wage and overtime violations.

70.     Defendants do not pay any DSPs for the time spent completing mandatory training for the certification(s) which are a prerequisite for their jobs.

71.     Defendants illegally classified the DSPs as independent contractors.

72.     At all times, the DSPs were employees of Defendants as that term is defined by the FLSA, the NJWHL/NJWPL, and relevant case law.

73.     Defendants hired, fired and supervised the DSPs.

74.     Defendants set the schedule for the DSPs.

75.     Defendants controlled the details of the DSPs' jobs, including imposing limitations on how to interact with the Defendants' clients.

76.     Defendants disciplined the DSPs if/when they failed to follow Defendants' rules and procedures.

77.     Defendants tracked the days the DSPs worked just as is common for typical employer-employee relationships.

78.     In addition, Defendants instructed the DSPs about when, where, and how the

DSPs were to perform their work.

79.     The following further facts demonstrate the DSPs' status as employees:

a)      Defendants had/have the sole right to hire and fire the DSPs;

b)      Defendants require DSPs to complete an employee application as a prerequisite to their employment;

c)      Defendants made the decision not to pay overtime;

d)      Defendants made the decision not to compensate at the applicable minimum wage rate;

e)      Defendants controlled virtually all aspects of the DSPs' employment;

f)      The DSPs have made no financial investment in Defendants' business;

g)      The DSPs were hired as permanent employees and have worked for Defendants for years;

h)      Defendants supervised the DSPs; and

i)      Defendants scheduled DSPs and assigned their clients and as such had sole control over their opportunity for profit.

80.     Defendants misclassified Plaintiffs and Class Members as independent contractors to avoid their obligations to pay them pursuant to the FLSA and NJWHL/NJWPL.

81.     Plaintiffs and Class Members are not exempt from the minimum wage or overtime requirements of the FLSA and/or NJWHL/NJWPL.

82.     Defendants' method of paying Plaintiffs or lack thereof in violation of the FLSA and NJWHL was willful and was not based on a good faith and reasonable belief that their conduct complied with the FLSA or NJWHL/NJWPL.

83.     Defendants misclassified Plaintiffs with the intent to avoid paying them and other

DSPs in accordance to the FLSA, NJWHL and NJWPL.

84. Defendants have been in the in-home companionship industry for decades and are familiar with the long line of federal cases holding that workers in this industry are employees as that term is defined by the FLSA and parallel state wage and hour laws.

## COLLECTIVE ACTION ALLEGATIONS (FLSA CLAIMS)

85. As part of their regular business practices, Defendants have intentionally, willfully and repeatedly harmed Plaintiffs and Collective Members by engaging in a pattern, practice, or policy of violating the FLSA on a class wide basis, as described above.

86. Although Defendants permitted and/or required Collective Members to work in excess of forty (40) hours per workweek, Defendants have denied them full compensation for their hours worked over forty.

87. Defendants have also denied them full compensation at the legally-mandated minimum wage rate for all weeks worked.

88. Collective Members perform or have performed the same or similar work as Plaintiffs.

89. Plaintiffs and Collective Members all worked as DSPs, providing in-home care to Defendants' clients, under the same conditions and were/are subject to the same violations of the FLSA.

90. Many Collective Members regularly work or have worked in excess of forty (40) hours during a workweek.

91. Defendants have classified and continue to classify Collective Members as independent contractors.

92.     Collective Members are not exempt from receiving overtime pay and/or minimum wage at the legally-mandated minimum wage rate under the FLSA.

93.     As such, Collective Members are similar to Plaintiffs in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of overtime and minimum wage.

94.     Defendants' failure to pay overtime compensation and at least the legally-mandated minimum wage rate required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the Collective Members.

95.     The experiences of Plaintiffs, with respect to their pay, are typical of the experiences of Collective Members.

96.     The experiences of Plaintiffs, with respect to their job duties, are typical of the experiences of Collective Members.

97.     The specific job titles or precise job responsibilities of each Collective Member does not prevent collective treatment.

98.     All Collective Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek.

99.     All Collective Members, irrespective of their particular job requirements, are entitled to compensation for weeks/hours worked at the legally-mandated minimum wage rate.

100.     Although the exact amount of damages may vary among Collective Members, the damages for Collective Members can be easily calculated by a formula.  The claims of all Collective Members arise from a common nucleus of facts.  Liability is based on a systematic course of wrongful conduct by Defendants that caused harm to all Collective Members.

101.     The Plaintiffs and the Collective Members held the same job title: DSPs.

102.    The Defendants have classified all of their DSPs as independent contractors from at least January 2016 to present.

103.    As such, the Collective of similarly situated Plaintiffs is properly defined as follows:

**All current and former Direct Service Providers or DSPs who worked for Defendants, in the State of New Jersey, at any time from January 2019 up to the present.**

## CLASS ACTION ALLEGATIONS (NJWHL/NJWPL CLAIMS)

104.    Plaintiffs sue on their behalf and on behalf of a class of persons under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

105.    Plaintiffs bring their NJWHL claims on behalf of all persons who were employed by Defendants in the State of New Jersey at any time since January 2016, to the entry of judgment in this case (the "Class Period"), who were "DSP" employees and who have not been paid at least the applicable New Jersey Minimum Wage for hours/weeks worked, and not been paid overtime premiums, as required, in violation of the New Jersey Wage and Hour Law and New Jersey Wage Payment Law (the "Class").

106.    The persons in the Class identified above are so numerous that joinder of all members is impracticable.

107.    Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are between 100 and 2,000 members of the Class during the Class Period.

108.    The claims of Plaintiffs are typical of the claims of the Class, and a class action is superior to other available methods of fair and efficient adjudication of the controversy -

particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate Defendants.

109.    The Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

110.    Specifically, Defendants illegally misclassified all of their DSP employees, including Plaintiffs as independent contractors and failed to pay them minimum wages and overtime wages as mandated by the NJWHL and NJWPL.

111.    Application of this policy or practice does/did not depend on the personal circumstances of Plaintiffs or those joining this lawsuit.  Rather, the same policy or practice which resulted in the non-payment of minimum wages and overtime premiums to Plaintiffs applied and continues to apply to all class members.  Accordingly, the class members are properly defined as:

**All of Defendants' current and former Direct Service Providers or DSPs who worked for Defendants in the State of New Jersey at any time from January 2016 to the present.**

112.    Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in employment law and class action litigation.

113.    Plaintiffs have the same interests in this matter as all other members of the class and Plaintiffs' claims are typical of the Class.

114.    There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

a)      Whether the Defendants employed the members of the Class within the meaning of the NJWHL and NJWPL;

b)      Whether the Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and members of the Class;

c)      What proof of hours worked is sufficient where employers fail in their duty to maintain time records;

d)      Whether Defendants misclassified their DSP employees as independent contractors;

e)      Whether Defendants failed and/or refused to pay the members of the Class at least the New Jersey Minimum Wage in one of more workweeks;

f)      Whether Defendants failed and/or refused to pay the members of the class proper overtime premiums, as required by the NJWHL and NJWPL in one or more workweeks;

g)      Whether Defendants are liable for liquidated damages in addition to an award of minimum wages and/or overtime wages;

h)      Whether the Defendants are liable for all damages claimed hereunder, including but not limited to: costs, disbursements and attorney's fees; and

i)      Whether the Defendants should be enjoined from such violations of NJWHL and NJWPL in the future.

I.      **COUNT ONE: VIOLATION OF 29 U.S.C. § 207**

115.    Plaintiffs incorporate the allegations contained paragraphs 1-84.

116.    Defendants' practice of failing to pay Plaintiffs and Class Members time-and-a-half rate for hours in excess of forty (40) per workweek violates the FLSA. 29 U.S.C. § 207.

117.    None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the regular rate at which their employees are employed are applicable to Defendants or Plaintiffs.

## II.    COUNT TWO: VIOLATION OF 29 U.S.C. § 206

118.    Plaintiffs incorporate the allegations contained paragraphs 1-84.

119.    Defendants' practice of failing to pay Plaintiffs and Class Members at the required minimum wage rate violates the FLSA.  29 U.S.C. § 206.

120.    None of the exemptions provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to Defendants or Plaintiffs.

121.    Defendants failed to keep adequate records of Plaintiffs' and Class Members' work hours and pay in violation of section 211(c) of the FLSA.  *See* 29 U.S.C. § 211(c).

122.    Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

a)    The time of day and day of week on which the employees' work week begins;

b)    The regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

c)    An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

d)    The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

e)    The hours worked each workday and total hours worked each workweek;

f)       The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

g)       The total premium for overtime hours.  This amount excludes the straight-time earnings for overtime hours recorded under this section;

h)       The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

i)       The dates, amounts, and nature of the items which make up the total additions and deductions;

j)       The total wages paid each pay period; and

k)       The date of payment and the pay period covered by payment.

29 C.F.R. 516.2, 516.5.

123.    Defendants have not complied with federal law and have failed to maintain such records with respect to Plaintiffs and Class Members.

124.    Because Defendants' records are inaccurate and/or inadequate, Plaintiffs and Class Members can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of the work "as a matter of a just and reasonable inference."  *See, e.g.*, *Anderson v. Mt. Clemens Pottery Co.¸* 328 U.S. 680, 687 (1946).

### III.    <u>COUNT THREE: MINIMUM WAGES UNDER NJWHL/NJWPL</u>

125.    Plaintiffs incorporate the allegations contained paragraphs 1-84.

126.   Plaintiffs and those similarly situated employees, are/were entitled to be paid at least the New Jersey minimum wage for each hour/week worked during employment with Defendants.

127.   Specifically, Plaintiffs, and those similarly situated employees, were not paid the proper minimum wage, as required by NJWHL and NJWPL.

128.   Defendants willfully failed to pay Plaintiffs, and those similarly situated employees, minimum wages for one or more weeks during Plaintiff's employment contrary to NJWHL and NJWPL.

129.   As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiffs, and those similarly situated employees, have been damaged in the loss of minimum wages for one or more weeks of work with Defendants.

130.   Plaintiffs are entitled to an award of damages in an amount equal to the relevant New Jersey Minimum Wage, and liquidated damages in an amount equal to 200% of their unpaid wages as well.

131.   Plaintiffs are entitled to an award of reasonable attorneys' fees and costs, pursuant to NJWHL and NJWPL.

## IV.      COUNT FOUR: OVERTIME WAGES UNDER NJWHL.

132.   Plaintiffs incorporate the allegations contained paragraphs 1-84.

133.   Plaintiffs and those similarly situated employees, are/were entitled to be paid overtime premiums when they worked in excess of 40 hours per week.

134.   Plaintiffs, and those similarly situated employees, were not paid the proper overtime premiums, as required by NJWHL, when they worked in excess of 40 hours per week.

135.   Defendants willfully failed to pay Plaintiffs, and those similarly situated employees,

overtime wages for one or more weeks during Plaintiffs' employment contrary to NJWHL and NJWPL.

136.    As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiffs, and those similarly situated employees, have been damaged in the loss of overtime wages for one or more weeks of work with Defendants.

137.    Plaintiffs are entitled to an award of damages in an amount equal to the difference between the pay earned and the amounts they were paid by Defendants, and liquidated damages in an amount equal to 200% of their unpaid wages as well.

138.    Plaintiff is entitled to an award of reasonable attorneys' fees and costs, pursuant to NJWHL and NJWPL.

## **DAMAGES SOUGHT**

139.    Plaintiffs and Class Members are entitled to recover compensation for the hours/weeks they worked for which they were not paid at least the New Jersey-mandated minimum wage rate and not paid the legally-mandated overtime premium pay due.

140.    In addition, Plaintiffs and Class members are entitled to recover an amount equal to 200% of their unpaid wages/overtime as liquidated damages.

141.    Plaintiffs and the Class Members are entitled to recover their attorney's fees and costs as required by NJWHL and NJWPL.

## **JURY DEMAND**

142.    Plaintiffs and Class Members hereby demand trial by jury.

## PRAYER

For these reasons, Plaintiffs and Class Members respectfully request that judgment be entered in their favor awarding the following relief:

a)   Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Class and appointing Plaintiffs and their counsel to represent the Class;

b)   Declaring, pursuant to 29 U.S.C. §§2201 and 2202, that the acts and practices complained of herein are in violation of the maximum hour and minimum wage provisions of the FLSA;

c)   All unpaid wages at the New Jersey mandated minimum wage rate;

d)   An amount equal to 200% of all owed wages and overtime wage as liquidated damages as allowed under NJWHL and NJWPL;

e)   Reasonable attorney's fees, costs and expenses of this action as provided by NJWHL and NJWPL;

f)   Such other relief to which Plaintiffs and Class Members may be entitled, at law or in equity.

Dated: January 11, 2022

<div style="margin-left:50%">

Respectfully submitted,

*/s/ Andrew R. Frisch*
Andrew R. Frisch
NJ Bar No. 038452000

MORGAN & MORGAN, P.A.
8151 Peters Road, Suite 4000
Plantation, FL 33324
Tel: (954) WORKERS
Fax: (954) 327-3013
E-mail: afrisch@forthepeople.com

</div>