UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOHN HAGANS and VIVIAN
HAGANS, individually and on behalf
of all others similarly situated,

                                          CIVIL ACTION

        Plaintiffs,                       CASE NO.: 1:22-CV-00128-KMW-SAK

vs.

NATIONAL MENTOR
HEALTHCARE, INC., and
NATIONAL MENTOR
HEALTHCARE, LLC,

_____ Defendants. _____/

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
CONDITIONALLY CERTIFY COLLECTIVE ACTION
<u>AND FACILITATE NOTICE TO POTENTIAL CLASS MEMBERS</u>**

**Motion noticed for August 15, 2022.**

# **TABLE OF CONTENTS**

INDEX OF EXHIBITS ................................................................................................... iv

TABLE OF AUTHORITIES ........................................................................................... v

INTRODUCTION ........................................................................................................... 1

MEMORANDUM OF LAW ........................................................................................... 2

I.   THE FLSA AUTHORIZES COLLECTIVE ACTIONS ........................................... 2

II. RELEVANT FACTUAL BACKGROUND ............................................................... 3

    A.   The Overtime Claim. ....................................................................................... 6

    B.   The Minimum Wage Claim. ............................................................................ 6

    C.   Defendant Uniformly Misclassifies All CCPs as Independent Contractors. ....... 7

III. APPLICABLE STANDARDS FOR COLLECTIVE ACTIONS ............................. 11

    A.   At This Stage, District Courts Within The Third Circuit Require Only Minimal Evidence

    To Support Conditional Class Certification Of A Class Of Similarly Situated Employees. ..... 13

    B.   Plaintiffs Meet the Lenient Burden For Conditional Certification of a Collective Action. 15

IV. FACTORS IRRELEVANT TO THE COURT'S CONSIDERATION ................................... 21

    A.   The Economic Realities Test Is Not Considered At Stage One ......................................... 21

    B.   Differences in Amounts Paid Does Not Preclude Conditional Certification. ..................... 24

    C.   Courts Do Not Consider the Need for Discovery During Stage I. ..................................... 25

V. ........PLAINTIFFS' NOTICE IS ACCURATE AND MAIL, E-MAIL AND TEXT MESSAGE

NOTICE IS APPROPRIATE HERE ......................................................................... 28

A.  Providing Putative Class Members With the Option to Electronically Execute Their

Consent Forms is Appropriate Here. ........................................................................ 30

B.  A Reminder Notice Half-Way Through the Notice Period is Appropriate. ..................... 31

C.  A Ninety-Day Notice Period is Appropriate.................................................................... 32

D.  Notice Within a Three Year Statute of Limitations Period is Appropriate Here.............. 33

E.  Limited Discovery of Names and Contact Information of the Putative Class is Necessary

to Carry Out Notice......................................................................................................... 34

CONCLUSION .................................................................................................................... 35

CERTIFICATE OF SERVICE ............................................................................................ 37

## <u>INDEX OF EXHIBITS</u>

| EXHIBIT A | Proposed Notice of Lawsuit |
|---|---|
| EXHIBIT B | Proposed Consent to Join Wage Claim |
| EXHIBIT C | "Host Homes" |
| EXHIBIT D | FAQ Regarding Name Change |
| EXHIBIT E | "Our employees – 40,000 strong – help change people's lives." |
| EXHIBIT F | "Sevita Health Minority Stake Sale Reportedly in the Works With $3B+ Valuation |
| COMPOSITE EXHIBIT G | Declarations |

# TABLE OF AUTHORITIES

**Cases**

*Abdul-Rasheed v. KableLink Commc'ns, LLC*, 2013 WL 5954785, at *3 (M.D. Fla. Nov. 7, 2013) ................................................................................................................................. 26

*Adami v. Cardo Windows, Inc.*, 299 F.R.D. 68, 78 (D.N.J.2014).............................. 16, 17, 22, 31

*Adams v. Gilead Group, LLC,* 280 F. Supp. 3d 1358, 1360 (M.D. Fla. 2017)............................ 20

*Afsur v. Riya Chutney Manor*, LLC, 2013 WL 3509620 at *2 (D.N.J. July 11, 2013................ 24

*Alequin v. Darden Rests., Inc.,* 2013 WL 3945919 (S.D. Fla. July 31, 2013)............................ 38

*Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 442-45 (N.D. Ill. 1982) .................................... 11

*Anglada v. Linens 'N Things, Inc.,* 2007 WL 1552511, at *7 (S.D.N.Y. May 29, 2007); .......... 47

*Ballaris v. Wacker Siltronic Corp.*, 2001 WL 1335809, at *2 (D. Or. Aug. 24, 2001)............... 11

*Ballew v. Lennar Corp.,* 2008 WL 4218137, at *1 (M.D. Fla. Sept. 11, 2008) ......................... 44

*Barreda v. Prospect Airport Services, Inc.*, 2008 WL 7431307 (N.D. Ill. Nov. 26, 2008).......... 22

*Barrios v. Suburban Disposal, Inc.*, 2013 WL 6498086, at *2 (D.N.J. Dec. 11, 2013) .............. 19

*Bellan v. Cap. BlueCross*, 496 F. Supp. 3d 854, 858 (M.D. Pa. 2020) .................................. 20, 31

*Belt v. P.F. Chang's China Bistro, Inc.*, 2020 WL 3829026, at *9 (E.D. Pa. July 8, 2020);.. 39, 42

*Benion v. Lecom, Inc.*, No. 15-14367, 2016 WL 2801562, at *11 (E.D. Mich. May 13, 2016)... 26

*Bernal v. Vankar Enterprises, Inc.*, 2008 WL 791963, at *3 (W.D. Tex. March 24, 2008) ........ 22

*Bishop v. AT & T Corp.*, 256 F.R.D. 503, 507 (W.D. Pa. 2009) .......................................... 31, 36

*Bland v. Calfrac Well Servs. Corp.,* 2013 WL 4054594, at *1 (W.D. Pa. Aug. 12, 2013) .......... 41

*Brown v. Money Tree Mortgage, Inc.,* 222 F.R.D. 676, 682 (D. Kan. 2004) .............................. 35

*Calderon v. Geico Gen. Ins. Co.*, 2011 WL 98197, at *2, 8–9 (D. Md. Jan.12, 2011) ............... 44

*Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 242–43 (3d Cir.2013)......................... 16

*Clark v. Intelenet Am., LLC*, 2020 WL 831127, at *2 (D.N.J. Feb. 19, 2020) ...................... 31, 36

*Coats v. Nashville Limo Bus,* 2011 WL 308403 (M.D. Tenn. Jan. 27, 2011) .............................. 27

*Collado v. J. & G. Transport, Inc.*, 2014 WL 5390569 (S.D. Fla. Oct. 23 2014) ................. 21, 39

*Covachuela v. Jersey Firestop, LLC*, 2021 WL 1326985, at *4 (D.N.J. Apr. 9, 2021); ........ 40, 42

*Davis v. NovaStar Mortg., Inc.*, 408 F. Supp. 2d 811, 816 (W.D. Mo. 2005) ............................ 11

*Depalma v. Scotts Co. LLC,* 2016 WL 7206151, at *1 (D.N.J. Mar. 31, 2016)*;* ......................... 31

*Dietrich v. Liberty Square, LLC*, 230 F.R.D. 574, 579 (N.D. Iowa 2005) ............................ 10, 47

*Disimone v. Atlas Service, Inc.*, 2009 WL 5166262 (S.D. Fla. 2009) .......................................... 48

*Doe v. Banc, Jack & Joe, LLC*, 2020 WL 2832621, at *6 (D.N.J. June 1, 2020) ....................... 38

*Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 518 (W.D. Tex. 2015) ...................... 41

*Elliott v. Amspec Servs., LLC*, 2011 WL 6002019, at *4 (D.N.J. Nov. 29, 2011) ...................... 32

*Fiore v. Goodyear Tire & Rubber Co.*, 2011 WL 867043, at *4 (M.D. Fla. March 10, 2011) .... 44

*Franco v. Bank of America Corp.*, 691 F.Supp.2d 1324 (M.D. Fla. 2010) ................................. 48

*Friscia v. Panera Bread Co.*, 2018 WL 3122330, at *7 (D.N.J. June 26, 2018) ( ...................... 31

*Gandhi v. Dell, Inc.*, 2009 WL 3427218, at *2 (W.D. Tex. Oct. 20, 2009) ................................ 44

*Garcia v. Freedom Mortg. Corp.*, 2009 WL 3754070, at *3 (D.N.J. Nov. 2, 2009).. 20, 31, 38, 42

*Gee v. Suntrust Mortg., Inc.*, 2011 WL 722111, at *4 (N.D. Cal. Feb. 18, 2011) (" ................... 43

*Gieseke v. First Horizon Home Loan Corp.,* 408 F. Supp. 2d 1164, 1169 (D. Kan. Jan. 10, 2006)

............................................................................................................................................... 47

*Gilbertson v. J. Givoo Consultants I, Inc.*, 2021 WL 689114, at *2 (D.N.J. Feb. 23, 2021) . 40, 42

*Goldman v. RadioShack Corp.,* 2003 WL 21250571, at *1 (E.D. Pa. Apr. 16, 2003) ................ 35

*Goodman v. Burlington Coat Factory*, 2012 WL 5944000, at *5 (D.N.J. Nov. 20, 2012) .... 31, 36

*Gordon v. TBC Retail Group, Inc.*, 134 F. Supp. 3d 1027, 1032 (D.S.C. 2015) ......................... 35

*Graham v. Overland Solutions, Inc.*, 2011 WL 1769737, at *4 (S.D. Cal. May 9, 2011)............ 43

*Guerra v. Big Johnson Concrete Pumping, Inc.*, 2006 WL 2290517 (S.D. Fla. Jun. 28, 2006) .. 11

*Gui Zhen Zhu v. Matsu Corp*, 424 F. Supp. 3d 253, 266 (D. Conn. 2020)................................... 33

*Hargrove v. Ryla Teleservices, Inc.*, 2012 WL 463442, at *1 (E.D. Va. Feb. 13, 2012) ............ 42

*Harris v. Vector Marketing Corp.*, 716 F.Supp.2d 836, 841-42 (N.D. Cal. 2010)........... 25, 29, 43

*Harrison v. Enterprise Rent-A-Car Co.*, 1998 WL 422169, at *13 (M.D. Fla. July 1, 1998)...... 34

*Henry v. Quicken Loans, Inc.,* 2006 WL 2811291, at *7 (E.D. Mich. Sept. 28, 2006)................ 47

*Hernandez v. Two Bros. Farm, LLC*, 2008 WL 4613069, at *2 (S.D. Fla. Oct. 15, 2008).......... 45

*Herring v. Hewitt Assoc., Inc.*, 2007 WL 2121693, at *4 (D.N.J. July 24, 2007))........... 17, 31, 33

*Hively v. Allis-Chalmers Energy*, 2013 WL 5936418, at *4-5 (W.D. Pa. Nov. 5, 2013)............. 24

*Hodzic v. Fedex Package Sys., Inc.*, 2016 WL 6248078, at *8 (W.D. Pa. Oct. 26, 2016) ..... 24, 28

*Hoffman-LaRoche, Inc. v. Sperling et al.*, 493 U.S. 165 (1989),........................................... passim

*Houston v. URS Corp.,* 591 F.Supp.2d 827, 834 (E.D. Va. 2008)................................................ 26

*In re Family Dollar FLSA Litigation*, 2014 WL 1091356, at *2 (W.D.N.C. Mar. 18, 2014) ...... 35

*In re Penthouse Executive Club Compensation Litig.,* 2010 WL 4340255, at *4 (S.D.N.Y. Oct.
27, 2010) ....................................................................................................................... 27, 30

*In re Wells Fargo Wage and Hour Employment Practices Litigation* (No. III), 2012 WL
3308880, at *29 (S.D. Tex. Aug. 10, 2012) ............................................................................. 44

Johnston v. Titan Logistics*,* 2019 WL 4345725, at *5 (W.D. Pa. Sept. 12, 2019)...................... 23

*Jones v. JGC Dallas LLC*, 2012 WL 6928101, at *8 (N.D. Tex. Nov. 29, 2012)........................ 41

*Kolasa v. BOS Solutions,* 018 WL 3370675 (W.D. Pa. May 10, 2018) ...................................... 23

*Kutzback v. LMS Intellibound, LLC*, 2014 WL 7187006 (W.D. Tenn. Dec. 16, 2014) .............. 22

*Labrie v. UPS Supply Chain Sols., Inc.*, 2009 WL 723599, at *6 (N.D. Cal. Mar. 18, 2009)...... 29

*Landry v. Swire Oilfield Servs., L.L.C.,* 252 F. Supp. 3d 1079, 1130 (D.N.M. 2017)................. 40

*Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868, at *1 (S.D. Ohio June 16, 2008)....... 45

*LeMaster v. Alternative Healthcare Sols., Inc.*, 726 F. Supp. 2d 854, 863 (M.D. Tenn. 2010) ... 10

*Lemus v. Burnham Painting and Drywall Corp.,* 2007 WL 1875539 (D. Nev. June 25, 2007).. 27, 29

*Lewis v. Huntington Nat. Bank*, 2011 WL 8960489, at *2 (S.D. Ohio June 20, 2011) ................ 39

*Lloredo v. Radioshack Corp.,* 2005 WL 1156030, at *1 (S.D. Fla. May 12, 2005).................... 33

*Maddy v. Gen. Elec. Co.,* 59 F. Supp. 3d 675, 681 (D.N.J. 2014)................................................. 31

*McGhee v. TOMS King, LLC*, 2021 WL 1176097, at *9 (W.D. Pa. Mar. 29, 2021)............. 40, 42

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)..................................................... 45

*Messenger v. Cabot Oil & Gas Corp.,* 2021 WL 2530614, at *5 (M.D. Pa. June 21, 2021) . 23, 28

*Misra v. Decision One Mortg. Co., LLC,* 673 F.Supp.2d 987, 996 (C.D. Cal. 2008) ................. 25

*Morden v. T-Mobile USA, Inc.,* 2006 WL 1727987, at *3 (W.D. Wash. June 22, 2006)....... 46, 47

*Mraz v. Aetna Life Ins. Co*., 2014 WL 5018862, at *5 (M.D. Pa. Oct. 7, 2014) ........................ 41

*O'Quinn v. TransCanada USA Servs., Inc*., 469 F. Supp. 3d 591, 605 (S.D.W. Va. 2020) ........ 32

Ornelas v. Hooper Holmes, Inc., 2014 WL 7051868, at *8 (D.N.J. Dec. 12, 2014)........ 24, 28, 29

*Parr v. Hico Concrete, Inc*., 2011 WL 3293391 (M.D. Tenn. Aug. 1, 2011) ............................. 21

*Pearsall-Dineen v. Freedom Mortg. Corp.*, 27 F. Supp. 3d 567, 570 (D.N.J. 2014) ......... 3, 16, 20

*Pereira v. Foot Locker*, Inc., 261 F.R.D. 60, 63–64 (E.D. Pa. 2009) .............................. 31, 36, 44

*Porter v. Merrill Lynch Pierce Fenner & Smith, Inc*., 2018 WL 5874094, at *2 (D.N.J. Nov. 9, 2018) ........................................................................................................................... 20, 38

*Realite v. Ark Restaurants Corp*., 7 F. Supp. 2d 303, 307 (S.D.N.Y. 1998) ............................... 11

*Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937 (W.D. Ark. 2007).................. 46

*Reyes v. AT & T Corp.*, 801 F. Supp. 2d 1350, 1358 (S.D. Fla. 2011) ......................................... 34

*Robinson v. Tyson Foods, Inc.*, 254 F.R.D. 97 (S.D. Iowa 2008) ................................................. 32

*Robles v. Vornado Realty Tr.,* 2015 WL 5012597, at *5 (D.N.J. Aug. 21, 2015);...................... 43

*Ruehl v. Viacom, Inc.*, 500 F.3d 375, 388 n. 17 (3d Cir.2007) .................................................... 18

*Russell v. Life Win, Inc*., 2014 WL 7877787 (M.D. Fla. Apr. 23, 2014).............................. passim

*Sanchez v. Santander Bank, N.A.*, , 2019 WL 6050738, at *3 (D.N.J. Nov. 15, 2019)............... 38

*Schwed v. Gen. Elec. Co.,* 159 F.R.D 373, 375 (N.D.N.Y. 1995) ................................................. 34

*Shaw v. Set Enterprises, Inc.,* 2016 WL 10593592, at *2 (S.D. Fla. Dec. 6, 2016) .................... 26

*Shipes v. Amurcon Corp.*, 2012 WL 1720615, at *4 (E.D. Mich. May 16, 2012)....................... 44

*Simpkins v. Pulte Home Corporation,* 2008 WL 3927275, at *5 (M.D. Fla. 2008) .................... 36

*Sniffen v. Spectrum Indus. Servs.*, 2007 WL 1341772, at *2 (S.D. Ohio  Feb. 13, 2007) ............ 21

*Spellman v. American Eagle Express, Inc.,* No. 10–764, 2011 WL 4102301 (E.D. Pa. May 18, 2011............................................................................................................................................. 25

*Swarthout v. Ryla Teleservices, Inc.*, 2011 WL 6152347, at *5 (N.D. Ind. Dec. 12, 2011)......... 42

*Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011), .......................... 17, 18

*Tanner v. TPUSA, Inc.*, 2014 WL 692916, *4 (M.D. Ga. Feb. 20, 2014) .................................... 36

*THE DEVEREUX FOUNDATION, Petitioner-Appellant, v. NEW JERSEY DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT, Respondent-Respondent.*, No. A-0936-19, 2021 WL 2099851, at *1 (N.J. Super. Ct. App. Div. May 25, 2021), cert. denied sub nom. *Devereux Found. v. New Jersey Dep't of Lab. & Workforce Dev.*, 248 N.J. 380, 259 A.3d 281 (2021) ........................................................................................................................................ 9

*Troncone v. Velahos*, 2011 WL 3236219, at *4 (D.N.J. July 28, 2011)................................. 25, 29

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1126 (E.D. Cal. 2009) ................. 43

*Walker v. Honghua America, LLC*, 2012 WL 1601288 (S.D. Tex. May 7, 2012) ................ 26, 30

*Ward v. Fla. BC Holdings, LLC*, 2018 WL 7360807, at *7 (M.D. Fla. Dec. 20, 2018), .............. 33

*Wass v. NPC Intern., Inc.*, 2011 WL 1118774, *5 (D. Kan. March 28, 2011) ............................ 44

*White v. Integrated Elec. Section Techs.*, 2013 WL 2903070 at *2-6 (E.D. La. June 13, 2013). 26, 30, 41

*Williams v. Coventry Health Care of Florida, Inc.*, 2016 WL 7013530 at * 1 (M.D. Fla. Oct. 4, 2016) ........................................................................................................... 39

Williams v. Sweet Home Healthcare, LLC, 325 F.R.D. 113, 131 (E.D. Pa. 2018), .................... 23

*Wilson v. Guardian Angel Nursing, Inc.*, 2008 WL 2944661, at *17 (M.D. Tenn. July 31, 2008) ........................................................................................................... 10

*Zanes v. Flagship Resort Dev., LLC*, 2010 WL 4687814, at *2 (D.N.J. Nov. 9, 2010). ........ 16, 18

*Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012) ............................ 3, 16, 17

*Zeledon v. Dimi Gyro LLC*, 2016 WL 6561404, at *10 (S.D.N.Y. Oct. 13, 2016) .................... 33

*Zhao v. Benihana*, 2001 WL 84500, at *2 (S.D.N.Y. May 7, 2001) ............................................ 11

**Statutes**

29 U.S.C. § 216(b) ........................................................................................... 2, 12, 13, 14

**Rules**

Federal Rule of Civil Procedure 23 ........................................................................... 12

**Regulations**

29 C.F.R. § 778.5 ........................................................................................................... 8

**INTRODUCTION**

Plaintiffs, John Hagans ("J. Hagans") and Vivian Hagans ("V. Hagans") (J. Hagans and V. Hagans are collectively "Plaintiffs"), individually, and on behalf of those similarly situated, respectfully request entry of an Order permitting, under court supervision, notice to all "Community Care Providers" (a/k/a "CCPs") employed by National Mentor Healthcare, LLC (hereinafter "Defendant") within the three (3) year period preceding the filing of the Complaint in this case to the present. *See* D.E. 1.[1]

Plaintiffs seek to facilitate notice to a limited class of CCPs who work for Defendant within the State of New Jersey who are compensated on a day rate basis,[2] but are not paid proper overtime compensation as required by the Fair Labor Standards Act ("FLSA"), for all of the hours that they work over forty (40) each week ("the Overtime Claim"). Plaintiffs further seek to facilitate notice to a class of all CCPs who worked for Defendant in the State of New Jersey who were not paid at least minimum wages as required by the FLSA because the day rate received from Defendant, coupled with the hours worked each week, resulted in the regular rate falling below minimum wage ("the Minimum Wage Claim."). Such overtime wages and/or minimum wages are not paid to the putative class members because Defendant engages in a companywide policy and practice

---

[1] The Complaint in this case was filed January 11, 2022. *See* D.E. 1.

[2] While Defendant classifies its payments to Plaintiffs as a "reimbursement," it is undisputed that each CCP is paid a fixed amount, per patient, per day for each day that he or she houses a patient assigned by Defendant. Thus, all CCPs are paid (or not paid) in a similar manner.

1

common to all of Defendant's CCPs within the State of New Jersey whereby Defendant misclassifies the CCPs as independent contractors and does not pay them any wages beyond their daily rate notwithstanding the exorbitant hours that they work each week.  Plaintiffs' proposed Class Notice and Consent to Become an Opt-In Plaintiff are attached hereto as **Exhibits A** and **B**, respectively.

**MEMORANDUM OF LAW**

## I.  THE FLSA AUTHORIZES COLLECTIVE ACTIONS

The FLSA authorizes employees to bring an action on behalf of themselves and others similarly situated. *See* 29 U.S.C. § 216(b).  The FLSA provides, in pertinent part, that:

> An action to recover the liability [for unpaid overtime and minimum wages] may be maintained against any employer . . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of them self or themselves and other employees similarly situated.  ***No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.***

*See id.* (emphasis added).  As further set forth below, the initial step in this process is conditional certification and notice to potential class members upon the lenient standard of showing that the class members are similarly situated.  *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012); *Pearsall-Dineen v. Freedom Mortg. Corp.*, 27 F. Supp. 3d 567, 570 (D.N.J. 2014).

## II.   RELEVANT FACTUAL BACKGROUND

Defendant operates an in-home care service company, which goes by the trade name of "Sevita Health."  *See* Defendant's Answer at ¶¶ 1, 20, D.E. 10; *see also* "Host Homes," https://sevitahealth.com/our-services/communities/adult-services/residential-services/host-homes/, attached hereto as **Exhibit C**.  Defendant was previously known as "The Mentor Network."  *See* FAQ Regarding Name Change, attached hereto as **Exhibit D** ("Is Sevita a new Company? No. Sevita is a change in trade name for The MENTOR Network.").  Defendant employs over 40,000 employees in 40 states and serves upwards of 50,000 people.  *See* https://sevitahealth.com/about-us/our-people/ ("Our employees – 40,000 strong – help change people's lives."), attached hereto as **Exhibit E**.  As of late 2021, the private equity companies that own Defendant valued Defendant at over $3 Billion Dollars, when they sought to sell a stake in the company.  *See* https://bhbusiness.com/2021/10/27/sevita-health-minority-stake-sale-reportedly-in-the-works-with-3b-valuation/, attached hereto as **Exhibit F**.

Defendant operates community-based CCP or mentor networks throughout the United States, and provides in-home care and services for people with intellectual and developmental disabilities (I/DD), through contracts with various states, including the State of New Jersey. *See* D.E. 1, Complaint at ¶ 20; D.E. 10, Answer at ¶ 20.  Defendant serves both children and adults with intellectual and

developmental disabilities, individuals with complex care needs, people recovering from brain and spinal cord injury, seniors in need of daily support, children in foster care, patients struggling with autism to name a few services. *See* Declaration of John Hagans ("J. Hagans Decl.") at ¶6; Declaration of Vivian Hagans ("V. Hagans Decl.") at ¶ 6, Declaration of Isadore Patrick ("I. Patrick Decl.") at ¶ 6; Declaration of Janice Riggs-Patrick ("Riggs-Patrick Decl.") at ¶ 6; Declaration of Robin Still ("Still Decl.") ¶ 6; Declaration of Rose Wynn ("Wynn Decl.") at ¶ 6, all Declarations are attached hereto as **Composite Exhibit G**.

Throughout the relevant time period, Defendant contracted with the State of New Jersey, Department of Human Services, Division of Developmental Disabilities to provide in-home services for people with I/DD throughout the State of New Jersey, for profit. *See* D.E. 10 at ¶ 22. Defendant employs CCPs, like Plaintiffs, to provide the in-home care services that Defendant offers to the public and to their governmental clients. *See* J. Hagans Decl. at ¶¶ 7-9; V. Hagans Decl. at ¶¶ 7-9; I. Patrick Decl. at ¶¶ 7-9; Riggs-Patrick Decl. at ¶¶ 7-9; Still Decl. at ¶¶ 7-9; Wynn Decl. at ¶¶ 7-9. All CCPs, including Plaintiffs, host Defendant's patients in their homes, and provide the home environment and assistance that will allow the patient(s) to live a full and healthy life—similar to a CNA (or Certified Nursing Assistant). *See* J. Hagans Decl. at ¶¶ 7-9; V. Hagans Decl. at ¶¶ 7-9; I. Patrick Decl. at ¶¶ 7-9; Riggs-Patrick Decl. at ¶¶ 7-9; Still Decl. at ¶¶ 7-9; Wynn

4

Decl. at ¶¶ 7-9. All CCPs perform similar job duties. *See* J. Hagans Decl. at ¶ 11; V. Hagans Decl. at ¶ 11; I. Patrick Decl. at ¶ 11; Riggs-Patrick Decl. at ¶ 11; Still Decl. at ¶ 11; Wynn Decl. at ¶ 11. Specifically, all CCPs' primary job duty is to ensure the patient's daily needs are met. *See* J. Hagans Decl. at ¶ 11; V. Hagans Decl. at ¶ 11; I. Patrick Decl. at ¶ 11; Riggs-Patrick Decl. at ¶ 11; Still Decl. at ¶ 11; Wynn Decl. at ¶ 11. This includes, *inter alia*, taking the patient to doctor's appointments, ensuring that the patient is fed, clothed, and bathed, providing a comfortable and clean room and living space for the patient, and ensuring that the patient has interaction within the community. *See* J. Hagans Decl. at ¶ 11; V. Hagans Decl. at ¶ 11; I. Patrick Decl. at ¶ 11; Riggs-Patrick Decl. at ¶ 11; Still Decl. at ¶ 11; Wynn Decl. at ¶ 11.

Defendant pays all CCPs, including Plaintiffs, solely a day rate, or fixed amount, for each day worked. *See* J. Hagans Decl. at ¶ 13; V. Hagans Decl. at ¶ 13; I. Patrick Decl. at ¶ 14; Riggs-Patrick Decl. at ¶ 14; Still Decl. at ¶ 13; Wynn Decl. at ¶ 14. Specifically, Defendant pays all CCPs $65.65 per day, per patient that the CCP hosts in his or her home. *See* J. Hagans Decl. at ¶ 13; V. Hagans Decl. at ¶ 13; I. Patrick Decl. at ¶ 14; Riggs-Patrick Decl. at ¶ 14; Still Decl. at ¶ 13; Wynn Decl. at ¶ 14.[3]

---

[3] For clarification, the amount Defendant pays each day is per household, not per CCP. For instance, if two CCPs live in the same household caring for one patient, Defendant does not pay each CCP $65.65.

A. **The Overtime Claim.**

Defendant required and/or permitted, and still requires/permits, Plaintiff and all its New Jersey-based CCPs to work in excess of forty (40) hours per week, but refuses to compensate them at the applicable required overtime rate for the hours that they work over forty (40) in a work week. *See* J. Hagans Decl. at ¶¶ 13-15, 39; V. Hagans Decl. at ¶¶ 13-15, 39; I. Patrick Decl. at ¶¶ 14-16, 39; Riggs-Patrick Decl. at ¶¶ 14-16, 39; Still Decl. at ¶¶ 13-15, 37; Wynn Decl. at ¶¶ 14-16, 38. Defendant does not pay any CCPs, including Plaintiffs, for the time spent completing mandatory training for the certification(s) which are a prerequisite to maintain employment. *See* J. Hagans Decl. at ¶¶ 32-34; V. Hagans Decl. at ¶¶ 32-34; I. Patrick Decl. at ¶¶ 33-36; Riggs-Patrick Decl. at ¶¶ 33-36; Still Decl. at ¶¶ 33-36; Wynn Decl. at ¶¶ 33-36. Although Plaintiffs and the CCPs routinely work more than forty (40) hours in a single work week caring for Defendant's patients in their homes, Defendant only pays the fixed rate of $65.65 per day, per patient that the CCP hosts in his or her home. *See* J. Hagans Decl. at ¶¶ 13-15, 39; V. Hagans Decl. at ¶¶ 13-15, 39; I. Patrick Decl. at ¶¶ 14-16, 39; Riggs-Patrick Decl. at ¶¶ 14-16, 39; Still Decl. at ¶¶ 13-15, 37; Wynn Decl. at ¶¶ 14-16, 38.

B. **The Minimum Wage Claim.**

In addition to the Overtime Claim, Plaintiffs assert, on behalf of themselves and all similarly situated CCPs, that Defendant failed to pay proper minimum

wages in accordance with the FLSA.  Specifically, due to the hours that Plaintiffs, and all similarly situated CCPs, are required to work, the fixed rate paid by Defendant resulted, and continues to result in, sub-minimum wage payments to Plaintiffs and similarly situated CCPs. *See* J. Hagans Decl. at ¶¶ 13-14; V. Hagans Decl. at ¶¶ 13-14; I. Patrick Decl. at ¶¶ 14-15; Riggs-Patrick Decl. at ¶¶ 14-15; Still Decl. at ¶¶ 13-14; Wynn Decl. at ¶¶ 14-15.  For example, John and Vivian Hagans receive $65.65 per day, combined. *See* D.E. 1. at ¶ 57.  Based on the hours that John Hagans and Vivian Hagans, as well as other CCPs work each week, their regular rates of pay equate with $4.10. per hour.  *See* J. Hagans Decl. at ¶ 13; V. Hagans Decl. at ¶ 13 ($65.65/2 = $32.83 x 7 = $229.81/56 = $4.10.). The federally mandated minimum wage is currently $7.25 per hour, and the New Jersey minimum wage is currently $13.00 per hour.[4]

## C. Defendant Uniformly Misclassifies All CCPs as Independent Contractors.

The foregoing FLSA violations stem from Defendant's longstanding policy of misclassifying their CCPs, including Plaintiffs, as independent contractors.  *See* J. Hagans Decl. at ¶ 16; V. Hagans Decl. at ¶ 16; I. Patrick Decl. at ¶ 17; Riggs-

---

[4] In 2021, the New Jersey Minimum wage was $12.00 per hour; in 2020 the New Jersey Minimum wage was $11.00 per hour; in 2019 the New Jersey minimum wage was $10.00 per hour.  *See* 29 C.F.R. § 778.5 ("Where a higher minimum wage than that set in the Fair Labor Standards Act is applicable to an employee by virtue of such other legislation, the regular rate of the employee . . . cannot be lower than such applicable minimum . . .").

Patrick Decl. at ¶ 17; Still Decl. at ¶ 16; Wynn Decl. at ¶ 17. Notwithstanding Defendant's classification of Plaintiffs and their other CCPs as independent contractors, Defendant exerts an exorbitant amount of control over Plaintiffs' employment. *See* J. Hagans Decl. at ¶¶ 16-37; V. Hagans Decl. at ¶¶ 16-37; I. Patrick Decl. at ¶¶ 17-37; Riggs-Patrick Decl. at ¶¶ 17-37; Still Decl. at ¶¶ 16-35; Wynn Decl. at ¶¶ 17-36. Some examples of this control includes, but is not limited to, Defendant's authority to terminate CCPs, Defendant's creation and enforcement of strict policies and codes of conduct that apply to CCPs, Defendant's control over the manner and form of documentation required to be submitted by CCPs, and Defendant's employment of case managers that supervise, and regularly visit and communicate with CCPs in order to ensure that CCPs are complying with Defendant's policies. *See* J. Hagans Decl. at ¶¶ 16-37; V. Hagans Decl. at ¶¶ 16-37; I. Patrick Decl. at ¶¶ 17-37; Riggs-Patrick Decl. at ¶¶ 17-37; Still Decl. at ¶¶ 16-35; Wynn Decl. at ¶¶ 17-36. Defendant has persisted in its willful violation of state and federal wage and hour laws notwithstanding the fact that in-home employees working under conditions virtually identical to those Plaintiffs work under here, have previously been found to be employees. *See THE DEVEREUX FOUNDATION, Petitioner-Appellant, v. NEW JERSEY DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT, Respondent-Respondent.*, No. A-0936-19, 2021 WL 2099851, at *1 (N.J. Super. Ct. App. Div. May 25, 2021), cert.

denied sub nom. *Devereux Found. v. New Jersey Dep't of Lab. & Workforce Dev*., 248 N.J. 380, 259 A.3d 281 (2021) (operators of foster homes who worked through agency contracting with the State of New Jersey held to be employees and not contractors under New Jersey law); *Wilson v. Guardian Angel Nursing, Inc*., 2008 WL 2944661, at *17 (M.D. Tenn. July 31, 2008) (finding that nurses who provided in-home care to patients were employees who were misclassified as independent contractors for the purposes of the FLSA); *LeMaster v. Alternative Healthcare Sols., Inc*., 726 F. Supp. 2d 854, 863 (M.D. Tenn. 2010) (same).

To date, in addition to the two (2) named-Plaintiffs, six (6) similarly situated CCPs have filed their consents to join in this case prior to receiving court-approved notice. *See* D.E. 6; D.E. 15; D.E. 23; D.E. 27; D.E. 28-1; D.E. 28-2. This number well exceeds the minimal showing necessary to facilitate notice at this early stage of the proceedings. *See Dietrich v. Liberty Square, LLC*, 230 F.R.D. 574, 579 (N.D. Iowa 2005) (two affidavits provide sufficient factual basis for "similarly situated" inquiry); *Guerra v. Big Johnson Concrete Pumping, Inc*., 2006 WL 2290517 (S.D. Fla. Jun. 28, 2006) (two declarations were sufficient to facilitate notice at different facilities); *Ballaris v. Wacker Siltronic Corp*., 2001 WL 1335809, at *2 (D. Or. Aug. 24, 2001) (allegations in complaint and two affidavits sufficient); *see also Davis v. NovaStar Mortg., Inc*., 408 F. Supp. 2d 811, 816 (W.D. Mo. 2005) (declarations provide appropriate support*); Zhao v. Benihana*,

2001 WL 84500, at *2 (S.D.N.Y. May 7, 2001) (one affidavit based on plaintiff's "best knowledge" sufficient); *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 307 (S.D.N.Y. 1998) (allegations in complaint and plaintiffs' affidavits sufficient); *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 442-45 (N.D. Ill. 1982) (allegations in complaint sufficient).

Each of Defendant's CCPs who have opted into this action have confirmed that all CCPs performed similar duties, were classified as independent contractors but were heavily controlled by Defendant, were paid a fixed day rate, and that no CCP was paid overtime for the hours that they worked over forty (40) each week in accordance with the law. Further, CCPs who have opted into this action have confirmed that due to the hours that CCPs are required to work, the day rate paid by Defendant resulted, and continues to result in, sub-minimum wage payments to them.

Here, the evidence—which includes six (6) declarations from Plaintiffs who have opted into this matter, and the allegations contained within the complaint— confirms that all of Defendant's CCPs are similarly situated because:

(a) they all had the same title of CCP or Mentor;
(b) they all performed similar job duties on a day-to-day basis;
(c) they are all compensated solely by a fixed day rate;
(d) they are all classified as independent contractors;
(e) Defendant failed to pay any CCPs overtime premiums; and
(f) Defendant failed to pay CCPs proper minimum wage compensation when their regular rate fell below the mandated rate.

The evidence establishes that the same illegal pay policies applied and continue to apply to all of Defendant's CCPs within the State of New Jersey, and easily

10

satisfies the lenient standard in order to proceed with conditional certification for Defendant's CCPs and to permit notice to be sent to the putative class members.

Simply put, Defendant's compensation policies are common to all CCPs in the defined class who worked and/or continue to work for Defendant in the State of New Jersey. All other CCPs within the defined class are owed full and proper payment of their overtime wages and minimum wages and the right to participate in this litigation. It is undisputed that Defendant has acted, or refused to act, on grounds applicable to all CCPs in the defined class, thereby making the identical relief appropriate with respect to the defined class as a whole.

Therefore, Plaintiffs respectfully request that the Court authorize Plaintiffs to facilitate notice to each of Defendant's CCPs in the defined class who have been subjected to Defendant's illegal payment policy as described above at any time within the last three (3) years preceding the filing of the Complaint in this matter to the present. Plaintiffs further request that they be permitted to give such notice as approved by this Court to all such class members concerning their rights to opt-in to this litigation by executing the appropriate consent as required by Section 216(b) of the FLSA.

### III.    APPLICABLE STANDARDS FOR COLLECTIVE ACTIONS

FLSA class actions operate much differently than do class action suits under Federal Rule of Civil Procedure 23. Under 29 U.S.C. § 216(b), an employee

belonging to a similarly situated class of plaintiffs must "opt in" to the class by filing a written consent with the Court in order to be bound by the outcome of the case. Without signing and filing such an express consent, employees are not bound by the outcome of the litigation. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). This is the opposite of Rule 23(b)(3) class actions, where the plaintiff initiating the class action, upon certification of the proposed class, represents every member of the class who does not affirmatively opt out of the class.

In *Hoffman-LaRoche, Inc. v. Sperling et al.*, 493 U.S. 165 (1989), the Supreme Court ruled that trial courts have authority to compel defendant-employers to provide names and addresses of potential plaintiffs through the pre-trial discovery process, and also to authorize distribution of court-authorized consent forms to potential plaintiffs. *Id.* at 169. In *Sperling*, the Court addressed whether a district court may play any role in prescribing the terms and conditions of communication from the named plaintiffs to potential members of the class on whose behalf the collective action was brought. *Id.* at 170. The Supreme Court held that district courts have discretion in appropriate cases to enforce § 216(b) by facilitating notice to potential plaintiffs. *Id.* at 170-71. This authority arises from

the Court's broad discretionary power to manage the process of joining multiple parties in an orderly manner. *Id.*

Trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute. Thus, it lies within the trial court's discretion to begin its involvement early, at the point of the initial notice, rather than at some later time. *See id.* Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action. *Id.* Additionally, the benefits of § 216(b)'s class action provision "depend on employees receiving accurate and timely notice concerning the pendency of the collective action so they can make informed decisions about whether to participate." *Id.* at 170.

A. **At This Stage, District Courts Within The Third Circuit Require Only Minimal Evidence To Support Conditional Class Certification Of A Class Of Similarly Situated Employees.**

The FLSA provides that a collective action "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 28 U.S.C. § 216(b). "Despite this straightforward authorization, the FLSA fails to define the term 'similarly situated.'" *Pearsall-Dineen*, 27 F. Supp. 3d at 569–70. As a result, courts within the Third Circuit follow a two-step process to determine whether a FLSA plaintiff may proceed with a collective action, or instead must pursue their claim

individually. *Id.*; *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 242–43 (3d Cir.2013); *Zavala*, 691 F.3d at 535–37.

The first step analysis begins when a plaintiff moves for conditional certification of a collective action. *Zanes v. Flagship Resort Dev., LLC*, 2010 WL 4687814, at *2 (D.N.J. Nov. 9, 2010). This step generally "occurs early in the litigation when the court has minimal evidence." *Adami v. Cardo Windows, Inc.*, 299 F.R.D. 68, 78 (D.N.J.2014). When considering the first step of conditional certification, courts apply a "fairly lenient standard" to determine whether the plaintiff has met the "modest factual showing" necessary for certification. *Zavala*, 691 F.3d at 536 n. 4. Under this standard, a plaintiff "must produce some evidence beyond pure speculation of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Id*. (internal quotation marks omitted) (quoting *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011), rev'd on other grounds, 569 U.S. 66, 133 S. Ct. 1523, 185 L. Ed. 2d 636 (2013)). This generally requires review of both the pleadings and affidavits in support of or in opposition to the proposed collective action. *Adami*, 299 F.R.D. at 78 (citing *Herring v. Hewitt Assoc., Inc.*, 2007 WL 2121693, at *4 (D.N.J. July 24, 2007)). A showing that opt-in plaintiffs bring the same claims and seek the same form of relief has been considered sufficient for conditional certification. *Adami*, 299 F.R.D. at 79.

Following conditional certification, a FLSA collective action proceeds to discovery. At or near the conclusion of discovery, a court (upon motion by either the plaintiff for final certification or by the defendant for decertification) proceeds to the final step for certification. *Symczyk*, 656 F.3d at 193. "It is possible for a class to be certified at stage one but fail certification at stage two." *Zanes*, 2010 WL 4687814, at *2; *see also Ruehl v. Viacom, Inc.*, 500 F.3d 375, 388 n. 17 (3d Cir.2007) ("At the [second step], after potential class members have filed their consents to opt in and after there has been further discovery to support the plaintiffs' allegations, a district court may revoke conditional certification if the proposed class does not meet FLSA's 'similarly situated' requirement.").

This case is at stage one, and no discovery has been completed. As further discussed herein, Plaintiffs have amply met their burden.

**B. <u>Plaintiffs Meet the Lenient Burden For Conditional Certification of a Collective Action.</u>**

As indicated above, based on the allegations in the Collective Action Complaint, the six (6) attached declarations from Plaintiffs and the Opt-In Plaintiffs, and the other record evidence available here, Plaintiffs have met their burden to facilitate notice to all of Defendant's CCPs within the State of New Jersey. Here, all of Defendant's CCPs are similarly situated by virtue of the fact that they all: (1) share the same job title, (2) have the same or similar job duties, (3)

are paid under the same compensation structure, and (4) are all subjected to the same pay practices challenged by Plaintiffs and those who have opted into this action (i.e. failure to pay overtime and minimum wages as a result of Defendant's misclassification of its CCPs as independent contractors).  To that end, Defendant employed, and continues to employ, CCPs who suffer under the same illegal pay practices.

While no Court within this district has imposed a number requirement with regard to the number of affidavits/declarations necessary at the conditional certification stage, Plaintiffs have presented evidence that meets or exceeds what courts in this district, and throughout the country, have deemed sufficient for conditional certification of an FLSA collective action. *See Barrios v. Suburban Disposal, Inc*., 2013 WL 6498086, at *2 (D.N.J. Dec. 11, 2013) (conditionally certifying a collective action where plaintiff presented three affidavits and noting that there is no number requirement with regard to affidavits in order to conditionally certify a collective action); *Pearsall-Dineen*, 27 F. Supp. 3d at 571 (conditionally certifying a nationwide collective action where plaintiff presented nine affidavits at the time of certification); *Garcia v. Freedom Mortg. Corp*., 2009 WL 3754070, at *3 (D.N.J. Nov. 2, 2009) (conditionally certifying an FLSA collective action where plaintiff presented eight affidavits); *Bellan v. Cap. BlueCross*, 496 F. Supp. 3d 854, 858 (M.D. Pa. 2020) (conditionally certifying an

FLSA collective action where plaintiff presented three sworn declarations); *Porter v. Merrill Lynch Pierce Fenner & Smith, Inc*., 2018 WL 5874094, at *2 (D.N.J. Nov. 9, 2018) (conditionally certifying an FLSA collective action where plaintiff presented two declarations); *Adams v. Gilead Group, LLC,* 280 F. Supp. 3d 1358, 1360 (M.D. Fla. 2017) (conditionally certifying a **nationwide** collective action where there were only six opt-ins from Florida at the time of certification); *Russell v. Life Win, Inc*., 2014 WL 7877787, at *3 (M.D. Fla. Apr. 23, 2014) (conditionally certifying a class of employees who were responsible for selling motivational workshops and seminars to customers based on the allegations in the complaint and six affidavits); *Collado v. J. & G. Transport, Inc.*, 2014 WL 5390569 (S.D. Fla. Oct. 23 2014) (grating Plaintiffs' motion for conditional certification where "[i]n support of the Motion, Plaintiffs offered two affidavits . . ."); *Sniffen v. Spectrum Indus. Servs*., 2007 WL 1341772, at *2 (S.D. Ohio  Feb. 13, 2007) (even under the more restrictive standard of a "modest factual showing," the "affidavits of the two named plaintiffs [show] that potential class members are similarly situated"); *Parr v. Hico Concrete, Inc*., 2011 WL 3293391 (M.D. Tenn. Aug. 1, 2011) (certifying collective action based on declarations from three class members; *Bernal v. Vankar Enterprises, Inc*., 2008 WL 791963, at *3 (W.D. Tex. March 24, 2008) (class of tipped bartenders conditionally certified based on plaintiff's complaint alleging an illegal tip pool and plaintiff's affidavit alone);

17

*Barreda v. Prospect Airport Services, Inc.*, 2008 WL 7431307 (N.D. Ill. Nov. 26, 2008) (certifying companywide collective action based on affidavits from only one location); *Kutzback v. LMS Intellibound, LLC*, 2014 WL 7187006 (W.D. Tenn. Dec. 16, 2014) (granting nationwide conditional certification for approximately 28,000 putative members based on declarations and evidence of prior litigation and DOL investigation).

Furthermore, district courts within the Third Circuit have routinely conditionally certified collective actions based on alleged underpayment of overtime and minimum wages to workers who claim to have been misclassified as independent contractors, just like here. *See, e.g., Adami,* 299 F.R.D. at 79 (granting conditional certification where plaintiffs alleged FLSA violations due to their misclassification as independent contractors); *Messenger v. Cabot Oil & Gas Corp.,* 2021 WL 2530614, at *5 (M.D. Pa. June 21, 2021) (granting conditional certification as to one defendant where plaintiffs alleged FLSA violations due to their misclassification as independent contractors); *Williams v. Sweet Home Healthcare, LLC*, 325 F.R.D. 113, 131 (E.D. Pa. 2018), *leave to appeal denied*, 2018 WL 4008363 (3d Cir. Mar. 6, 2018) (certifying collective, and class, including misclassified independent contractors, refusing to engage in merits considerations at Stage I); *Johnston v. Titan Logistics*, 2019 WL 4345725, at *5 (W.D. Pa. Sept. 12, 2019) (certifying collective based on allegations of joint

employer relationship and independent contractor misclassification); *Kolasa v. BOS Solutions*, 2018 WL 3370675 (W.D. Pa. May 10, 2018) (adopting R&R recommending certification of collective of allegedly misclassified independent contractors); *Hodzic v. Fedex Package Sys., Inc.*, Civ. A. No. 15-956, 2016 WL 6248078, at *8 (W.D. Pa. Oct. 26, 2016) (conditionally certifying collective action of FedEx delivery drivers arguing they were misclassified as independent contractors); *Ornelas v. Hooper Holmes, Inc.*, 2014 WL 7051868, at *8 (D.N.J. Dec. 12, 2014) (granting conditional certification of collective of allegedly misclassified independent contractors, finding that review of economic reality factors should be reserved for Stage II); *Hively v. Allis-Chalmers Energy*, 2013 WL 5936418, at *4-5 (W.D. Pa. Nov. 5, 2013) (conditionally certifying collective action of allegedly misclassified independent contractors); *Afsur v. Riya Chutney Manor, LLC*, 2013 WL 3509620 at *2 (D.N.J. July 11, 2013) (certifying collective of misclassified contractors where "all members of the putative class were subject to the same employment practices" and performed similar work for similar compensation); *Troncone v. Velahos*, 2011 WL 3236219, at *4 (D.N.J. July 28, 2011) (declining to address the 6-factor economic reality test and conditionally certifying class of independent contractors, *sua sponte,* based on allegation in complaint that "Defendants failed to pay Plaintiff minimum wage and 'wrongfully designated [her] ... as [an] independent contractor[ ] ....' "); *Spellman v. American*

19

*Eagle Express, Inc.,* 2011 WL 4102301 (E.D. Pa. May 18, 2011) (conditionally

certifying a allegedly misclassified delivery drivers).[5]

---

[5] Likewise, district courts nationwide routinely certify independent contractor misclassification actions at Stage I. *See, e.g., Harris v. Vector Marketing Corp.*, 716 F.Supp.2d 836, 841-42 (N.D. Cal. 2010) (certifying collective of independent contractors, noting that it would be premature to make a determination as to whether plaintiffs were independent contractors or employees at Stage I); *Misra v. Decision One Mortg. Co., LLC,* 673 F.Supp.2d 987, 996 (C.D. Cal. 2008) (explaining, to defeat conditional certification, it is disingenuous for an employer to argue a court must inquire into the individual work duties of each proposed plaintiff when the employer has itself uniformly classified the plaintiffs as exempt from FLSA protections); *Houston v. URS Corp.,* 591 F.Supp.2d 827, 834 (E.D. Va. 2008) (finding sufficient similarity in plaintiffs who were all classified as independent contractors and explaining courts have found sufficient similarity when plaintiffs "raise a similar legal issue as to coverage, exemption, or nonpayment of ... overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions"); *Benion v. Lecom, Inc.,* 2016 WL 2801562, at *11 (E.D. Mich. May 13, 2016) ("The weight of authority favors the position that conditional certification may be ordered before the employment relationship should be clarified, particularly in misclassification cases"); *Shaw v. Set Enterprises, Inc.,* 2016 WL 10593592, at *2 (S.D. Fla. Dec. 6, 2016) (granting certification where common scheme of independent contractor misclassification); *Abdul-Rasheed v. KableLink Commc'ns, LLC*, 2013 WL 5954785, at *3 (M.D. Fla. Nov. 7, 2013) (same); *White v. Integrated Elec. Section Techs.*, 2013 WL 2903070 at *2-6 (E.D. La. June 13, 2013) (same); *Walker v. Honghua America, LLC,* 2012 WL 1601288 (S.D. Tex. May 7, 2012) (certifying collective of allegedly misclassified independent contractors, stating, "…many courts have granted conditional certification in FLSA cases involving disputes over whether workers were misclassified as independent contractors."); *Coats v. Nashville Limo Bus*2011 WL 308403 (M.D. Tenn. Jan. 27, 2011) (certifying independent contractor collective); *In re Penthouse Executive Club Compensation Litig.,* 2010 WL 4340255, at *4 (S.D.N.Y. Oct. 27, 2010) (certifying class of allegedly misclassified independent contractors based on similar job title, job, and pay structure, stating, "[i]f such a group does not merit at least preliminary class treatment, one would expect that class treatment would rarely be granted in FLSA actions, a proposition that is plainly incorrect as an empirical matter."); *Lemus v. Burnham Painting and Drywall Corp.,* 2007 WL 1875539 (D. Nev. June 25, 2007)

Here, eight (8) CCPs who worked for Defendant have come forward to join this lawsuit before certification has even been granted. Moreover, six (6) CCPs who are Plaintiffs in this action have provided declarations that have been signed under oath and confirm that the same illegal pay policies were applied to all of Defendant's CCPs. Accordingly, Plaintiffs easily satisfy their lenient burden for determining that other CCPs who are similarly situated to them exist, and conditional certification and notice to these individuals is warranted.

## IV.   FACTORS IRRELEVANT TO THE COURT'S CONSIDERATION

### A. The Economic Realities Test Is Not Considered At Stage One.

Plaintiffs anticipate that Defendant may contend that notice should not issue because the inquiry into the economic realities test—the test applied to determine whether a worker is properly classified as an independent contractor under the FLSA—is inherently too individualized to conditionally certify a collective action. However, this argument has been rejected time and time again by courts in this District and throughout the United States. *See Messenger*, 2021 WL 2530614, at *4-*5 (rejecting defendant's argument that the economic realities test requires a highly individualized fact-specific inquiry that prevented conditional certification);

---

(rejecting argument that determining employment status versus independent contractor status would require a highly individualized inquiry making conditional certification inappropriate).

21

*Hodzic*, 2016 WL 6248078, at *7-*8 (granting conditional certification of collective of allegedly misclassified independent contractors, finding that review of economic reality factors is a merits based inquiry that should be reserved for Stage II)[6]; *Ornelas*, 2014 WL 7051868, at *8 (same);[7] *Troncone*, 2011 WL 3236219, at *4 (declining to address the 6-factor economic reality test and conditionally certifying class of independent contractors, *sua sponte,* based on allegation in complaint that "Defendants failed to pay Plaintiff minimum wage and 'wrongfully designated [her] ... as [an] independent contractor[ ] ....'"); *Harris*, 716 F. Supp. 2d 836, 841-42 (certifying collective of independent contractors, noting that it would be premature to make a determination as to whether plaintiffs were independent contractors or employees at Stage I); *Labrie v. UPS Supply Chain Sols., Inc*., No. C08-3182 PJH, 2009 WL 723599, at *6 (N.D. Cal. Mar. 18, 2009) (finding that employer's "arguments [regarding individualized inquiries into the independent contractor classification] raise issues primarily going to the merits and are more appropriately addressed on a motion to decertify or motion for summary judgment

---

[6] "It is this Court's opinion that FedEx's arguments opposing conditional certification generally raise merits-based defenses that are best resolved at step-two, including, FedEx's position that it has no employees under the "economic realities test" and the alleged individualized issues regarding potential class members that may disqualify them as prospective members of the class." *Id.* at *7.

[7] "However, the Court finds it premature to make a determination as to whether individuals were employees or independent contractors at Stage One and declines to apply the 'economic reality' test at this point in the conditional certification process." *Id.* at *8.

22

once notice has been given, the deadline to opt-in has passed, and discovery is closed"); *Lemus,* 2007 WL 1875539, at *5 ("The fact intensive inquiries concerning whether the plaintiffs are independent contractors or employees for purposes of the FLSA, and detailed analysis of whether the plaintiffs are sufficiently similarly situated to maintain the class are more appropriately decided after notice has been given, the deadline to opt in has passed, and discovery has closed."); *White*, 2013 WL 2903070, at *5-*6 (rejecting defendant's argument that the individualized inquiries into the economic realities prevented conditional certification.); *Walker*, 870 F. Supp. 2d at 471 ("The Court believes that the economic factors test is likely not appropriate for determination at the first stage of FLSA class certification."); I*n re Penthouse Executive Club Compensation Litig*., 2010 WL 4340255, at *4 (certifying class of allegedly misclassified independent contractors and finding defendant's argument that the determination into whether plaintiffs were properly classified required an individualized fact intensive inquiry precluding conditional certification "specious.").

The inquiry regarding the economic realities test is a merits-based inquiry that is reserved for Stage II, as it is well-settled that courts do not weigh the merits

of the underlying claims in determining whether potential opt-in plaintiffs may be

"similarly situated." *Adami*, 299 F.R.D. at 80.[8]

## B. Differences in Amounts Paid Does Not Preclude Conditional Certification.

Additionally, Plaintiffs anticipate that Defendant may contend that notice

should not issue because of differences in the amounts that CCPs were paid each

day.  For example, if a CCP cares for two (2) patients, that CCP receives $131.30

($65.65 x 2) per day, as opposed to a CCP who cares for only one (1) individual,

thus earning $65.65 per day.  However, differences in amounts paid do not render

Plaintiffs dissimilar and thus are not fatal to a motion for conditional certification

in an FLSA case.  *See O'Quinn v. TransCanada USA Servs., Inc*., 469 F. Supp. 3d

591, 605 (S.D.W. Va. 2020); *Elliott v. Amspec Servs., LLC*, 2011 WL 6002019, at

*4 (D.N.J. Nov. 29, 2011) (holding that variance in amounts paid is related to the

---

[8] *See also Bellan*,496 F. Supp. 3d at 858; *Garcia*, 2009 WL 3754070, at *5; *Depalma v. Scotts Co. LLC,* 2016 WL 7206151, at *1 (D.N.J. Mar. 31, 2016)*; Maddy v. Gen. Elec. Co.,* 59 F. Supp. 3d 675, 681 (D.N.J. 2014); *Pereira v. Foot Locker*, Inc., 261 F.R.D. 60, 63–64 (E.D. Pa. 2009) ("The merits of Plaintiff's claims *64 do not need to be evaluated at this stage in order for notice to be approved and sent out to proposed conditional collective action members; this Court evaluates only whether the Plaintiffs are similarly situated."); *Friscia v. Panera Bread Co*., 2018 WL 3122330, at *7 (D.N.J. June 26, 2018) (granting conditional certification and noting that the Court's role at the first stage is not to evaluate the merits of plaintiff's claims); *Bishop v. AT & T Corp*., 256 F.R.D. 503, 507 (W.D. Pa. 2009); *Clark v. Intelenet Am., LLC*, 2020 WL 831127, at *2 (D.N.J. Feb. 19, 2020) (same); *Goodman v. Burlington Coat Factory*, 2012 WL 5944000, at *5 (D.N.J. Nov. 20, 2012) (same); *Herring,* 2007 WL 2121693, at *5 (same).

calculation of damages which is irrelevant to whether a putative class seeks relief based on common claims); *Robinson v. Tyson Foods, Inc*., 254 F.R.D. 97, 101 (S.D. Iowa 2008) (granting conditional certification in spite of defendant's argument that the amount paid to putative class members differed).[9]

## C. **Courts Do Not Consider the Need for Discovery During Stage I.**

Courts consistently recognize that discovery at the first notice stage is unnecessary for the similarly situated determination. *See Herring*, 2007 WL 2121693, at *5 ("[T]he merits of plaintiffs' claims need not be evaluated nor discovery be completed in order for such a notice to be approved and disseminated."); *Lloredo v. Radioshack Corp.,* 2005 WL 1156030, at *1 (S.D. Fla. May 12, 2005) (refusing to examine discovery in its notice stage determination); *Harrison v. Enterprise Rent-A-Car Co*., 1998 WL 422169, at *13 (M.D. Fla. July

---

[9] *See also Gui Zhen Zhu v. Matsu Corp*, 424 F. Supp. 3d 253, 266 (D. Conn. 2020) (finding defendant's argument that plaintiffs were not similarly situated due to differences in pay, without merit); *Ward v. Fla. BC Holdings, LLC*, 2018 WL 7360807, at *7 (M.D. Fla. Dec. 20, 2018), *report and recommendation adopted*, 2019 WL 718575 (M.D. Fla. Feb. 20, 2019) ("Even though the Sales Coordinators were paid different amounts for their salaries and different rates for their commissions, this does not preclude a finding of similarity regarding pay provisions."); *Russell,* 2014 WL 7877787, at *3 (rejecting defendant's argument that differences in commission rates rendered putative opt-ins dissimilar); *Zeledon v. Dimi Gyro LLC*, 2016 WL 6561404, at *10 (S.D.N.Y. Oct. 13, 2016) ("Certainly, the fact that Plaintiff and fellow salaried deliverymen may have been paid salaries that ranged from $220 to $320 per week is not a sufficient reason to deny certification.").

1, 1998) (holding that the fact that subsequent discovery may prove the original plaintiffs and opt-in plaintiffs are not after all "similarly situated" does not defeat conditional class certification); *Schwed v. Gen. Elec. Co.,* 159 F.R.D 373, 375 (N.D.N.Y. 1995) ("Even where later discovery proves the putative class members to be dissimilarly situated, notice . . . prior to full discovery is appropriate as it may further the remedial purpose of the [FLSA]").

An examination of discovery is not appropriate because, at this stage, the Court is not making a *factual determination* regarding whether the putative class members are "similarly situated." *See Reyes v. AT & T Corp*., 801 F. Supp. 2d 1350, 1358 (S.D. Fla. 2011) ("Defendant's attempt . . . to seek a factual determination on the similarly situated question by presenting a vast amount of affidavit evidence 'demonstrate[s] a fundamental misunderstanding of the nature of the proceedings at this stage of the litigation.'"); *Brown v. Money Tree Mortgage, Inc.,* 222 F.R.D. 676, 682 (D. Kan. 2004) ("[T]he court will examine the individual plaintiffs' disparate factual and employment setting, as well as various defenses available to the defendant which appear to be individual to each plaintiff, during the 'second stage' analysis after the close of discovery."); *Goldman v. RadioShack Corp.,* 2003 WL 21250571, at *1 (E.D. Pa. Apr. 16, 2003) ("A fact-specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant."); *Gordon v. TBC Retail Group, Inc*., 134 F. Supp. 3d

1027, 1032 (D.S.C. 2015) (At the first stage of conditional certification, Courts determine whether certification is warranted by examining the pleadings and affidavits.   At the second stage, the "court applies a heightened, fact specific" inquiry to determine whether the class is similarly situated.); *In re Family Dollar FLSA Litigation*, 2014 WL 1091356, at *2 (W.D.N.C. Mar. 18, 2014) ("During the second stage, the Defendant can move to decertify the class, at which point the court makes a factual determination as to whether the class is similarly situated.").

Additionally, courts have held that any individualized defenses are **not** considered at the Stage I analysis, but are reserved for the Stage II decertification stage. *See Goodman,* 2012 WL 5944000, at *6 (holding defendant's arguments regarding individual defenses was premature at the notice stage); *Clark*, 2020 WL 831127, at *4 (holding individualized circumstances implicate the merits which is inappropriate at the notice stage); *Bishop,* 256 F.R.D. at 509; *Pereira*, 261 F.R.D. at 66; *Simpkins v. Pulte Home Corporation,* 2008 WL 3927275, at *5 (M.D. Fla. 2008) ("individual factual analysis is saved for the second stage of certification."); *Russell,* 2014 WL 7877787, at *3; *Tanner v. TPUSA, Inc.*, 2014 WL 692916, *4 (M.D. Ga. Feb. 20, 2014) ("Likewise, the availability of individual defenses to individual plaintiffs is better left to decertification.").

Through the allegations in the Complaint, and the declarations and evidence that have been attached to this Motion, Plaintiffs have provided sufficient evidence

to warrant notice of this lawsuit be sent to all other CCPs within the defined class. Because the "similarly situated" determination at the notice stage is preliminary, Defendant will not be prejudiced by the facilitation of notice because they can later argue that Plaintiff and the putative class members are not in fact "similarly situated" enough to proceed collectively to trial once discovery is complete.

## V.   PLAINTIFFS' NOTICE IS ACCURATE AND MAIL, E-MAIL AND TEXT MESSAGE NOTICE IS APPROPRIATE HERE

Plaintiffs' proposed judicial notice is "timely, accurate, and informative." *See Hoffmann-La Roche*, 493 U.S. at 172.  As such, the proposed notice achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action, and should be adopted.  To that end, Plaintiffs request that they be permitted to notify all CCPs within the defined class of the pendency of this collective action through text message, and to e-mail the Class Notice and Consent to Join Form in addition to mailing same via first-class mail.

E-mail notice is the new norm of communication, serves to further the broad remedial purpose of the FLSA, and has widely been adopted by courts within this district and throughout the country. *See Garcia,* 387 F. Supp. 3d at 611 (permitting notice and consent form to be sent via mail and e-mail); *Porter,* 2018 WL 5874094, at *5 (same); *Doe v. Banc, Jack & Joe, LLC*, 2020 WL 2832621, at *6 (D.N.J. June 1, 2020) ("contacting [putative class members] via regular mail,

28

electronic communication, such as email, is now commonplace and does not unduly burden defendant."); *Sanchez v. Santander Bank, N.A.*, , 2019 WL 6050738, at *3 (D.N.J. Nov. 15, 2019) ("In this day of electronic communications, courts in this District have found notice by electronic means in conjunction with first class mail to be an appropriate method of facilitating notice."); *Alequin v. Darden Rests., Inc.,* 2013 WL 3945919 (S.D. Fla. July 31, 2013) (noting that courts within the Southern District of Florida commonly approve e-mail notice in FLSA cases); *Williams v. Coventry Health Care of Florida, Inc.*, 2016 WL 7013530 at * 1 (M.D. Fla. Oct. 4, 2016); *Collado v. J. & G. Transp., Inc.,* 2014 WL 5390569 at * 6 (S.D. Fla. Oct. 23, 2014); *Lewis v. Huntington Nat. Bank*, 2011 WL 8960489, at *2 (S.D. Ohio June 20, 2011) ("The addresses on file for [former employees] may or may not continue to be accurate, and using a second mode of communication will help ensure that all of these potential plaintiffs will receive at least one copy of the Notice Package.").

Moreover, district courts within the Third Circuit routinely permit notice of FLSA collective action to be sent via text message, recognizing that "it is appropriate in the modern digital age to distribute notice by mail, email, and text, because although people frequently move and change addresses, they typically retain the same email addresses and phone numbers." *Belt v. P.F. Chang's China Bistro, Inc*., 2020 WL 3829026, at *9 (E.D. Pa. July 8, 2020); *Gilbertson v. J.*

29

*Givoo Consultants I, Inc*., 2021 WL 689114, at \*2 (D.N.J. Feb. 23, 2021) (permitting notice to be sent via mail, email, and text message); *Covachuela v. Jersey Firestop, LLC*, 2021 WL 1326985, at \*4 (D.N.J. Apr. 9, 2021); *McGhee v. TOMS King, LLC*, 2021 WL 1176097, at \*9 (W.D. Pa. Mar. 29, 2021).

### A. Providing Putative Class Members With the Option to Electronically Execute Their Consent Forms is Appropriate Here.

Federal Courts throughout the United States "recogniz[e] that 'we live in a time when all manner of commercial transactions are routinely cemented by electronic submission'" and "courts have approved the use of online, electronic signature opt-in forms." *Landry v. Swire Oilfield Servs., L.L.C.,* 252 F. Supp. 3d 1079, 1130 (D.N.M. 2017) (quoting *Mraz v. Aetna Life Ins. Co*., 2014 WL 5018862, at \*5 (M.D. Pa. Oct. 7, 2014); *see also Bland v. Calfrac Well Servs. Corp.,* 2013 WL 4054594, at \*1 (W.D. Pa. Aug. 12, 2013).[10]

In the instant case, Plaintiffs request that they be permitted to give class members the option to sign their consent to join forms electronically via "Adobe Sign." Giving the putative class members this option is in line with the FLSA's

---

[10] *See also Dyson v. Stuart Petroleum Testers, Inc*., 308 F.R.D. 510, 518 (W.D. Tex. 2015) (allowing plaintiff to employ its proposed electronic signature method for execution of consent forms); *White,* 2013 WL 2903070, at \*9 (granting Plaintiffs' request to allow class members to execute electronic consent forms); *Jones v. JGC Dallas LLC*, 2012 WL 6928101, at \*8 (N.D. Tex. Nov. 29, 2012), report and recommendation adopted, 2013 WL 271665 (N.D. Tex. Jan. 23, 2013) (allowing class members to be given the option to execute their consent forms online via electronic signature service).

remedial purposes and would ensure that the putative class members have the ability to submit their consent forms without additional obstacles standing in their way.

## B. **A Reminder Notice Half-Way Through the Notice Period is Appropriate.**

Similar to the email and text message transmission of the Notice, a reminder notice is appropriate as well.  Courts have repeatedly permitted such a reminder notice, because it ensures that putative class members are aware of their rights and the time within which to exercise same. *See Garcia,* 387 F. Supp. 3d at 611 ("Class counsel may send one reminder mailing and up to two reminder e-mails to each potential opt-in plaintiff during the opt-in period."); *McGhee,* 2021 WL 1176097, at *10; *Covachuela,* 2021 WL 1326985, at *4 (permitting reminder notice half way through the class period via mail, email and text message); *Gilbertson,* 2021 WL 689114, at *2; *Belt,* 2020 WL 3829026, at *9.[11]

---

[11] *See also Hargrove v. Ryla Teleservices, Inc*., 2012 WL 463442, at *1 (E.D. Va. Feb. 13, 2012) (authorizing plaintiffs' counsel to send a reminder letter to putative class members if responses were not received by plaintiffs within thirty days from the issuance of the original notice.); *Swarthout v. Ryla Teleservices, Inc*., 2011 WL 6152347, at *5 (N.D. Ind. Dec. 12, 2011) (same); *Graham v. Overland Solutions, Inc*., 2011 WL 1769737, at *4 (S.D. Cal. May 9, 2011) (approving reminder postcard to individuals who have not returned the opt-in forms); *Gee v. Suntrust Mortg., Inc*., 2011 WL 722111, at *4 (N.D. Cal. Feb. 18, 2011) ("Plaintiffs' counsel may mail a reminder notice forty-five days after issuance of the first notice."); *Harris,* 716 F.Supp.2d at 847 ("Particularly since the FLSA requires an opt-in procedure, the sending of a [reminder] postcard is appropriate."); *Vasquez v. Coast Valley Roofing, Inc*., 670 F.Supp.2d 1114, 1126 (E.D. Cal. 2009) (ordering

In light of the FLSA's remedial purposes, and the many cases explicitly approving a reminder notice, Plaintiffs respectfully request to send the putative class members a reminder notice via email, text message, and U.S. Mail, at the half-way point in the notice period to ensure that they are aware of their rights and the applicable deadlines within which to exercise them.

## C. <u>A Ninety-Day Notice Period is Appropriate.</u>

Notice periods may vary, however, Courts routinely hold that a ninety (90) day notice period is appropriate in FLSA cases. *See, e.g., Robles v. Vornado Realty Tr.,* 2015 WL 5012597, at \*5 (D.N.J. Aug. 21, 2015); *Pereira,* 261 F.R.D. at 69; *Fiore v. Goodyear Tire & Rubber Co.*, 2011 WL 867043, at \*4 (M.D. Fla. March 10, 2011) (setting notice period at 90 days); *Ballew v. Lennar Corp.,* 2008 WL 4218137, at \*1 (M.D. Fla. Sept. 11, 2008) ("The Court further finds the 90 day period to be reasonable…"); *Gandhi v. Dell, Inc.*, 2009 WL 3427218, at \*2 (W.D. Tex. Oct. 20, 2009) ("Ample authority suggests that 90 days is a reasonable amount of time to allow potential plaintiffs to opt in.").[12]

---

third-party administrator to send reminder notice, because, "[t]hese procedures provide the best possible notice to the Class Members.").

[12] *See also Wass v. NPC Intern., Inc*., 2011 WL 1118774, \*5 (D. Kan. March 28, 2011) (denying the defendant's request to shorten the opt-in period to fewer than ninety days); *Calderon v. Geico Gen. Ins. Co*., 2011 WL 98197, at \*2, 8–9 (D. Md. Jan.12, 2011) (authorizing a ninety-day notice period); *Shipes v. Amurcon Corp*., 2012 WL 1720615, at \*4 (E.D. Mich. May 16, 2012) (overruling defendant's objections to a 90 day opt-in period); *In re Wells Fargo Wage and Hour Employment Practices Litigation* (No. III), 2012 WL 3308880, at \*29 (S.D. Tex.

32

In line with the above authority, Plaintiffs respectfully request that the Court give putative class members ninety (90) days to return their consent to join forms and opt into the case.

### D. Notice Within a Three Year Statute of Limitations Period is Appropriate Here.

Notice within a three-year statute of limitations period is appropriate in this case. The FLSA allows a plaintiff to collect damages within a three-year statute of limitations if it can be shown that a defendant's violation of the FLSA was "willful"—meaning that the "employer either knew, or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Whether Defendant's violations of the FLSA were willful is an issue going to the merits of the case, and not whether notice should be issued to potential claimants. *Russell*, 2014 WL 7877787, at *3. The facts concerning willfulness must be elicited during discovery, and Defendant may challenge the three-year statute of limitations again at an appropriate time. Thus, notice should go to all individuals who were employed by Defendant during the three-year period preceding the Court's ruling on the instant Motion. *See id.* ("Whether Defendants' alleged violations of the FLSA were willful also goes to

---

Aug. 10, 2012) (approving 90 day opt-in period); *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868, at *1 (S.D. Ohio June 16, 2008) (approving 90 day opt-in period); *Hernandez v. Two Bros. Farm, LLC*, 2008 WL 4613069, at *2 (S.D. Fla. Oct. 15, 2008) (approving 90 day opt-in period).

facts that must be elicited during discovery; therefore, it is appropriate at this stage to send class notice to all individuals who were employed by Defendants during the preceding three-year period."); *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937 (W.D. Ark. 2007).

**E.** **Limited Discovery of Names and Contact Information of the Putative Class is Necessary to Carry Out Notice.**

The opt-in provision of the FLSA requires some procedure for identifying and notifying potential class members. *Morden v. T-Mobile USA, Inc.,* 2006 WL 1727987, at *3 (W.D. Wash. June 22, 2006) (compelling defendant to produce the names and addresses of potentially similarly situated employees despite the fact that no conditional class certification motion was pending before the court). "The first step is to identify those employees who may be similarly situated and who may therefore ultimately seek to opt in to the action." *Id.* As such, early discovery of a mailing list is routinely disclosed in FLSA collective actions because lists are necessary to facilitate notice. *See Hoffmann-La Roche,* 493 U.S. at 165; *Anglada v. Linens 'N Things, Inc.,* 2007 WL 1552511, at *7 (S.D.N.Y. May 29, 2007); *Henry v. Quicken Loans, Inc.,* 2006 WL 2811291, at *7 (E.D. Mich. Sept. 28, 2006); *Gieseke v. First Horizon Home Loan Corp.,* 408 F. Supp. 2d 1164, 1169 (D. Kan. Jan. 10, 2006); *Dietrich*, 230 F.R.D. at 581.[13]   Thus, if this Court grants

---

[13]   The names, phone numbers, emails, and addresses of potential class members are discoverable during the regular course of discovery even absent judicial notice

Plaintiffs' Motion, Plaintiff respectfully requests that the Court order Defendant to provide his counsel with a list of all putative class members' names, addresses, phone numbers, social security numbers,[14] and e-mail addresses in order to carry out notice.

## CONCLUSION

Given the broad remedial provisions of the FLSA, coupled with the lenient standard for conditional certification, Plaintiffs and the Opt-In Plaintiffs' allegations and declarations, along with the additional evidence as presented in this Motion, more than satisfy the relatively light burden of showing this Court that they are similarly situated.

WHEREFORE, Plaintiffs, John and Vivian Hagans, individually and on behalf of those similarly situated, respectfully request this Court issue an Order:

---

because current and former ISRs are critical fact witnesses to this lawsuit. *Hoffmann-La Roche* acknowledged the existence of "alternative bases for the discovery, for instance that the employees might have knowledge of other discoverable matter." 493 U.S. at 160; *see also Franco v. Bank of America Corp.*, 691 F.Supp.2d 1324 (M.D. Fla. 2010) (granting plaintiff's motion to compel discovery of names of potential similarly situated employees); *Disimone v. Atlas Service, Inc.*, 2009 WL 5166262 (S.D. Fla. 2009) (ordering defendant to produce a list of plaintiffs' co-workers prior to conditional certification).

[14] Plaintiffs seek only the last 4 digits of putative opt-ins social security numbers so that class members' names can be processed through the national change of address ("NCOA") database to ensure the most up to date physical addresses to effectuate notice.

(i)      conditionally certifying a class of current and former CCPs or Mentors who worked for Defendant for the three year period prior to the filing of the Complaint in this case to the present;

(ii)     directing Defendant to produce to undersigned counsel within fourteen (14) days of the Order granting this Motion a list containing the names, the last known addresses, phone numbers, social security numbers, and e-mail addresses of putative class members who worked for Defendant for the three year period prior to the filing of the Complaint in this case to the present;

(iii)    authorizing undersigned counsel to send notice and a reminder notice, in the form attached hereto as Exhibit A, to all individuals whose names appear on the list produced by Defendant's counsel by first-class mail, e-mail and text message;

(iv)    authorizing the undersigned counsel to provide all individuals whose names appear on the list produced by Defendant's counsel with ninety (90) days from the date the notices are initially mailed to file a Consent to Become Opt-In Plaintiff, in the form attached hereto as Exhibit B;

(v)     authorizing the putative class members to electronically execute their consent to join forms; and

(vi)    any other relief that is just and appropriate.

DATED: July 13, 2022.                Respectfully submitted,


**_/s/  Andrew R. Frisch_**
Andrew R. Frisch, Esquire
New Jersey Bar No.: 038452000
Chanelle Ventura
FL Bar No.: 1002876
(admitted _Pro Hac Vice_)
Morgan & Morgan, P.A.

36

8151 Peters Road, Suite 4000
Plantation, FL 33324
Telephone: (954) WORKERS
Facsimile:  (954) 327-3013
Email:         afrisch@forthepeople.com
Email:         cventura@forthepeople.com
*Trial Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of July, 2022, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which I

understand will send a notice of electronic filing to all parties of record.

*/s/ ANDREW R. FRISCH*
Andrew R. Frisch