# COMPOSITE EXHIBIT G

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOHN HAGANS and VIVIAN HAGANS,
individually and on behalf of all others
similarly situated,

                                               CIVIL ACTION

     Plaintiffs,                            CASE NO.: 1:22-CV-00128-KMW-SAK

vs.

NATIONAL MENTOR HEALTHCARE,
INC., and NATIONAL MENTOR
HEALTHCARE, LLC,

      Defendants.                        /

## **DECLARATION OF JOHN HAGANS**

     I, JOHN HAGANS, declare under the penalty of perjury and pursuant to 28 U.S.C. § 1746 as follows:

     1.     I am over the age of 18 years old.  I make these statements in the State of New Jersey, from my personal knowledge and under the penalty of perjury.

     2.     I am one of the named Plaintiffs in the above-referenced lawsuit.

     3.     I have worked for Defendants (collectively "Sevita Health") since approximately January 28, 1998.

     4.     Sevita Health was previously known as the "Mentor Network."  The Mentor Network changed its name to Sevita Health in September 2021.

     5.     Sevita provides in-home care and services for people with intellectual and developmental disabilities through contracts with various states, including the State of New Jersey.

6.     Sevita's patients/clients include, but are not limited to, people with intellectual and developmental disabilities, individuals with complex care needs, people recovering from brain and spinal cord injuries, seniors in need of daily support and children in foster care.

7.     Throughout the duration of my employment with Sevita, I have been a "Community Care Provider," (hereinafter "CCP"), also known as a "Mentor."

8.     As a CCP, I am responsible for boarding Sevita's patients/clients, as assigned by Sevita, and providing such patients with assistance with their daily living needs, just as a CNA would.

9.     As a CCP, I provide the home environment and assistance that will allow the patient(s) to live a full healthy life in the community.

10.    Sevita's patients/clients live in my home and I provide them with around-the-clock care.

11.    As a CCP, my primary duty is to ensure that the patient's needs are met.  This includes, *inter alia*, ensuring that the patient maintains personal health, hygiene and grooming, is sufficiently fed and hydrated, clothed, up to date with medical appointments and provided with the appropriate medications as directed by a physician, has a safe, comfortable, and clean room and living space, and ensuring the patient has interaction within the community. Although I am licensed to board up to 5 patients at any given time, the maximum number of patients that I have housed in my home and cared for at any given time throughout the duration of my employment has been two (2) individuals.  At one point, I was temporarily providing respite care for a third individual while the individual's primary care giver was away.

12.    Since approximately 2012, I have housed and cared for one (1) individual.

13.     In exchange for my work for Sevita, Sevita pays $65.65 per day, per patient assigned to my household.

14.     I typically work at least approximately eight (8) hours per day, seven (7) days per week (56 hours per week).

15.     Notwithstanding the hours that I work each week, I am never paid overtime, or any amount in excess of the day rate, regardless of the number of hours of work I am required to work each week.

16.     Throughout the duration of my employment, Sevita has classified me as an independent contractor.

17.     Sevita controls every aspect of my work.

18.     Sevita has the authority to terminate me at any time.

19.     Sevita and the New Jersey Division of Developmental Disability ("DDD") create all policies that I am required to strictly follow in order to maintain my position as a CCP.

20.     Sevita has a code of conduct and operations manual that I am required to follow.

21.      Sevita requires me to complete daily reports that are required to be submitted to the case manager on a monthly basis.

22.     In addition to the daily reports, I am required to complete monthly reports and provide them to my case manager as well.

23.     I am also required to submit monthly reports to the DDD.

24.     All paperwork that I am required to complete and maintain is created by either Sevita or the DDD.

25.     I generally communicate with my case manager on a regular basis, at least weekly.  We generally communicate by phone, in-person, or via-email.

26.     The case manager is responsible for ensuring that I am complying with all Sevita and DDD policies and performing my duties properly according to those policies.

27.     My case manager performs routine site visits at my home to ensure that I am complying with Sevita and DDD policies, at least monthly, but sometimes as frequently as weekly.

28.     A representative from the DDD also visits my home quarterly to ensure that I am complying with DDD policies and performing my duties accordingly.

29.     Sevita maintains all files and reports regarding my work and the individual that I care for.

30.     In fact, some paperwork that I am required to submit with my monthly reports is solely obtained by Sevita.

31.     For example, I am required to provide the bank statements for the person I care for in the monthly reports that I submit to Sevita.  I do not have access to the bank statements and must request them each month from Sevita.

32.     Sevita and the DDD dictate the ongoing education requirements that I am required to complete annually.

33.     Sevita and the DDD also periodically require me to complete mandatory training sessions.

34.     Although such training lacks utility outside of the context of my work for Sevita, Sevita does not compensate me for time spent attending mandatory training and ongoing education requirements that I am required to complete in order to retain my job.

35.     For approximately three years beginning in 2017, Sevita required me to complete the College of Direct Support.  Sevita set my user name and passcode.  Sevita instructed me not to change the password assigned to me so that they could monitor my progress.

36.     Although Sevita requires that I take a mandatory 14 day vacation each year, if I want to go on vacation, I am required to find a person to provide respite care—short term relief while I am away.  I am required to submit the proposed respite care person to Sevita for approval, as a prerequisite to having my vacation request approved.

37.     I can recall at least two instances when the respite care provider that I proposed was rejected by Sevita.  On all such occasions, Sevita then required me to use the respite care giver of Sevita's choosing for my Sevita-assigned patients.

38.     Moreover, Sevita does not reimburse me for most costs associated with hosting their patients in my home.  Specifically, I am responsible for paying for, *inter alia*, heating, cooling, gas, water, the patient's grooming supplies, snacks and drinks, some meals, and most laundry services.

39.     Based on my personal knowledge, I know that other CCPs were paid in the same manner as I was—a set amount per day—but were not paid overtime for the hours that they worked over forty each week.

40.     I declare pursuant to 28 U.S.C. § 1746 under the penalty of perjury that the foregoing is true and correct.

_____                    _6/15/2022_____

JOHN HAGANS                                                      Date

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOHN HAGANS and VIVIAN HAGANS,
individually and on behalf of all others
similarly situated,

                CIVIL ACTION

     Plaintiffs,                      CASE NO.: 1:22-CV-00128-KMW-SAK

vs.

NATIONAL MENTOR HEALTHCARE,
INC., and NATIONAL MENTOR
HEALTHCARE, LLC,

       Defendants.               /

## DECLARATION OF VIVIAN HAGANS

     I, VIVIAN HAGANS, declare under the penalty of perjury and pursuant to 28 U.S.C. § 1746 as follows:

     1.     I am over the age of 18 years old.  I make these statements in the State of New Jersey, from my personal knowledge and under the penalty of perjury.

     2.     I am one of the named Plaintiffs in the above-referenced lawsuit.

     3.     I have worked for Defendants (collectively "Sevita Health") since approximately January 28, 1998.

     4.     Sevita Health was previously known as the "Mentor Network."  The Mentor Network changed its name to Sevita Health in September 2021.

     5.     Sevita provides in-home care and services for people with intellectual and developmental disabilities through contracts with various states, including the State of New Jersey.

6.      Sevita's patients/clients include, but are not limited to, people with intellectual and developmental disabilities, individuals with complex care needs, people recovering from brain and spinal cord injuries, seniors in need of daily support and children in foster care.

7.      Throughout the duration of my employment with Sevita, I have been a "Community Care Provider," (hereinafter "CCP"), also known as a "Mentor."

8.      As a CCP, I am responsible for boarding Sevita's patients/clients, as assigned by Sevita, and providing such patients with assistance with their daily living needs, just as a CNA would.

9.      As a CCP, I provide the home environment and assistance that will allow the patient(s) to live a full healthy life in the community.

10.      Sevita's patients/clients live in my home and I provide them with around-the-clock care.

11.      As a CCP, my primary duty is to ensure that the patient's needs are met.  This includes, *inter alia*, ensuring that the patient maintains personal health, hygiene and grooming, is sufficiently fed and hydrated, clothed, up to date with medical appointments and provided with the appropriate medications as directed by a physician, has a safe, comfortable, and clean room and living space, and ensuring the patient has interaction within the community. Although I am licensed to board up to 5 patients at any given time, the maximum number of patients that I have housed in my home and cared for at any given time throughout the duration of my employment has been two (2) individuals.  At one point, I was temporarily providing respite care for a third individual while the individual's primary care giver was away.

12.      Since approximately 2012, I have housed and cared for one (1) individual.

13.     In exchange for my work for Sevita, Sevita pays $65.65 per day, per patient assigned to my household.

14.     I typically work at least approximately eight (8) hours per day, seven (7) days per week (56 hours per week).

15.     Notwithstanding the hours that I work each week, I am never paid overtime, or any amount in excess of the day rate, regardless of the number of hours of work I am required to work each week.

16.     Throughout the duration of my employment, Sevita has classified me as an independent contractor.

17.     Sevita controls every aspect of my work.

18.     Sevita has the authority to terminate me at any time.

19.     Sevita and the New Jersey Division of Developmental Disability ("DDD") create all policies that I am required to strictly follow in order to maintain my position as a CCP.

20.     Sevita has a code of conduct and operations manual that I am required to follow.

21.      Sevita requires me to complete daily reports that are required to be submitted to the case manager on a monthly basis.

22.     In addition to the daily reports, I am required to complete monthly reports and provide them to my case manager as well.

23.     I am also required to submit monthly reports to the DDD.

24.     All paperwork that I am required to complete and maintain is created by either Sevita or the DDD.

25.     I generally communicate with my case manager on a regular basis, at least weekly.  We generally communicate by phone, in-person, or via-email.

26.     The case manager is responsible for ensuring that I am complying with all Sevita and DDD policies and performing my duties properly according to those policies.

27.     My case manager performs routine site visits at my home to ensure that I am complying with Sevita and DDD policies, at least monthly, but sometimes as frequently as weekly.

28.     A representative from the DDD also visits my home quarterly to ensure that I am complying with DDD policies and performing my duties accordingly.

29.     Sevita maintains all files and reports regarding my work and the individual that I care for.

30.     In fact, some paperwork that I am required to submit with my monthly reports is solely obtained by Sevita.

31.     For example, I am required to provide the bank statements for the person I care for in the monthly reports that I submit to Sevita.  I do not have access to the bank statements and must request them each month from Sevita.

32.     Sevita and the DDD dictate the ongoing education requirements that I am required to complete annually.

33.     Sevita and the DDD also periodically require me to complete mandatory training sessions.

34.     Although such training lacks utility outside of the context of my work for Sevita, Sevita does not compensate me for time spent attending mandatory training and ongoing education requirements that I am required to complete in order to retain my job.

35.     For approximately three years beginning in 2017, Sevita required me to complete the College of Direct Support. Sevita set my user name and passcode. Sevita instructed me not to change the password assigned to me so that they could monitor my progress.

36.     Although Sevita requires that I take a mandatory 14 day vacation each year, if I want to go on vacation, I am required to find a person to provide respite care—short term relief while I am away. I am required to submit the proposed respite care person to Sevita for approval, as a prerequisite to having my vacation request approved.

37.     I can recall at least two instances when the respite care provider that I proposed was rejected by Sevita. On all such occasions, Sevita then required me to use the respite care giver of Sevita's choosing for my Sevita-assigned patients.

38.     Moreover, Sevita does not reimburse me for most costs associated with hosting their patients in my home. Specifically, I am responsible for paying for, *inter alia*, heating, cooling, gas, water, the patient's grooming supplies, snacks and drinks, some meals, and most laundry services.

39.     Based on my personal knowledge, I know that other CCPs were paid in the same manner as I was—a set amount per day—but were not paid overtime for the hours that they worked over forty each week.

40.     I declare pursuant to 28 U.S.C. § 1746 under the penalty of perjury that the foregoing is true and correct.

Vivian Hogans _____        6/15/22 _____

VIVIAN HAGANS                          Date

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOHN HAGANS and VIVIAN HAGANS,
individually and on behalf of all others
similarly situated,

       Plaintiffs,

vs.

NATIONAL MENTOR HEALTHCARE,
INC., and NATIONAL MENTOR
HEALTHCARE, LLC,

_____ Defendants. _____/

CIVIL ACTION
CASE NO.: 1:22-CV-00128-KMW-SAK

## DECLARATION OF ISADORE PATRICK

      I, ISACOREPATRICK, declare under the penalty of perjury and pursuant to 28 U.S.C. §

1746 as follows:

      1.     I am over the age of 18 years old.  I make these statements in the State of New

Jersey, from my personal knowledge and under the penalty of perjury.

      2.     I am an Opt-In Plaintiff in the above-referenced lawsuit.

      3.     I have worked for Defendants (collectively "Sevita Health") since approximately

2007.

      4.     Sevita Health was previously known as the "Mentor Network."  The Mentor

Network changed its name to Sevita Health in September 2021.

      5.     Sevita provides in-home care and services for people with intellectual and

developmental disabilities through contracts with various states, including the State of New

Jersey.

6.      Sevita's patients/clients include, but are not limited to, people with intellectual and developmental disabilities, individuals with complex care needs, people recovering from brain and spinal cord injuries, and seniors in need of daily support.

7.      Throughout the duration of my employment with Sevita, I have been a "Community Care Provider," (hereinafter "CCP"), also known as a "Mentor."

8.      As a CCP, I am responsible for boarding Sevita's patients/clients, as assigned by Sevita, and providing such patients with assistance with their daily living needs, just as a CNA would.

9.      As a CCP, I provide the home environment and assistance that will allow the patient(s) to live a full healthy life in the community.

10.     Sevita's patients/clients live in my home and I provide them with around-the-clock care.

11.     As a CCP, my primary duty is to ensure that the patient's needs are met.  This includes, *inter alia*, ensuring that the patient maintains personal health, hygiene and grooming, is sufficiently fed and hydrated, clothed, up to date with medical appointments and provided with the appropriate medications as directed by a physician, has a safe, comfortable, and clean room and living space, and ensuring the patient has interaction within the community.

12.     I am licensed to board up to two patients at any given time.

13.     Since approximately 2007, I have housed and cared for two (2) individuals.

14.     In exchange for my work for Sevita, Sevita pays $65.65 per day, per patient assigned to my household.

15.    I typically work at least approximately eight (8) hours per day, Monday through Friday, and 12 approximately hours on Saturday and Sunday— or approximately 64 hours per week.

16.    Notwithstanding the hours that I work each week, I am never paid overtime, or any amount in excess of the day rate, regardless of the number of hours of work I am required to work each week.

17.    Throughout the duration of my employment, Sevita has classified me as an independent contractor.

18.    Sevita controls every aspect of my work.

19.    Sevita has the authority to terminate me at any time.

20.    Sevita and the New Jersey Division of Developmental Disability ("DDD") create all policies that I am required to strictly follow in order to maintain my position as a CCP.

21.    Sevita has a code of conduct and operations manual that I am required to follow.

22.    Sevita requires me to complete daily reports that are required to be submitted to the case manager on a monthly basis.

23.    In addition to the daily reports, I am required to complete monthly reports and provide them to my case manager as well.

24.    I am also required to submit monthly reports to the DDD.

25.    All paperwork that I am required to complete and maintain is created by either Sevita or the DDD.

26.    I generally communicate with my case manager on a regular basis, at least weekly.  We generally communicate by phone, in-person, or via-email.

27.     The case manager is responsible for ensuring that I am complying with all Sevita and DDD policies and performing my duties properly according to those policies.

28.     My case manager performs routine site visits at my home to ensure that I am complying with Sevita and DDD policies, at least monthly, but sometimes as frequently as weekly.

29.     A representative from the DDD also visits my home quarterly to ensure that I am complying with DDD policies and performing my duties accordingly.

30.     Sevita maintains all files and reports regarding my work and the individual(s) that I care for.

31.     In fact, some paperwork that I am required to submit with my monthly reports is solely obtained by Sevita.

32.     For example, I am required to provide the bank statements for the person I care for in the monthly reports that I submit to Sevita.  I do not have access to the bank statements and must request them each month from Sevita.

33.     Sevita and the DDD dictate the ongoing education requirements that I am required to complete annually.

34.     Sevita and the DDD also periodically require me to complete mandatory training sessions.

35.     Although such training lacks utility outside of the context of my work for Sevita, Sevita does not compensate me for time spent attending mandatory training and ongoing education requirements that I am required to complete in order to retain my job.

36.    For approximately three years beginning in 2017, Sevita required me to complete the College of Direct Support. Sevita set my user name and passcode. Sevita instructed me not to change the password assigned to me so that they could monitor my progress.

37.    Sevita requires that I take a mandatory 14 day respite each year. On all such occasions, Sevita required me to use the respite care giver of Sevita's choosing for my Sevita-assigned patients.

38.    Moreover, Sevita does not reimburse me for most costs associated with hosting their patients in my home. Specifically, I am responsible for paying for, *inter alia*, heating, cooling, gas, water, the patient's grooming supplies, snacks and drinks, some meals, and most laundry services.

39.    Based on my personal knowledge, I know that other CCPs were paid in the same manner as I was—a set amount per day—but were not paid overtime for the hours that they worked over forty each week.

40.    I declare pursuant to 28 U.S.C. § 1746 under the penalty of perjury that the foregoing is true and correct.

_____          6/17/22
ISADORE PATRICK                                    Date

5

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOHN HAGANS and VIVIAN HAGANS,
individually and on behalf of all others
similarly situated,

        Plaintiffs,

vs.

NATIONAL MENTOR HEALTHCARE,
INC., and NATIONAL MENTOR
HEALTHCARE, LLC,

       Defendants.            /

CIVIL ACTION
CASE NO.: 1:22-CV-00128-KMW-SAK

## DECLARATION OF JANICE RIGGS-PATRICK

I, JANICE RIGGS-PATRICK, declare under the penalty of perjury and pursuant to 28 U.S.C. § 1746 as follows:

1.     I am over the age of 18 years old. I make these statements in the State of New Jersey, from my personal knowledge and under the penalty of perjury.

2.     I am one of the named Plaintiffs in the above-referenced lawsuit.

3.     I have worked for Defendants (collectively "Sevita Health") since approximately 2007.

4.     Sevita Health was previously known as the "Mentor Network." The Mentor Network changed its name to Sevita Health in September 2021.

5.     Sevita provides in-home care and services for people with intellectual and developmental disabilities through contracts with various states, including the State of New Jersey.

1

6.      Sevita's patients/clients include, but are not limited to, people with intellectual and developmental disabilities, individuals with complex care needs, people recovering from brain and spinal cord injuries, and seniors in need of daily support.

7.      Throughout the duration of my employment with Sevita, I have been a "Community Care Provider," (hereinafter "CCP"), also known as a "Mentor."

8.      As a CCP, I am responsible for boarding Sevita's patients/clients, as assigned by Sevita, and providing such patients with assistance with their daily living needs, just as a CNA would.

9.      As a CCP, I provide the home environment and assistance that will allow the patient(s) to live a full healthy life in the community.

10.     Sevita's patients/clients live in my home and I provide them with around-the-clock care.

11.     As a CCP, my primary duty is to ensure that the patient's needs are met.  This includes, *inter alia*, ensuring that the patient maintains personal health, hygiene and grooming, is sufficiently fed and hydrated, clothed, up to date with medical appointments and provided with the appropriate medications as directed by a physician, has a safe, comfortable, and clean room and living space, and ensuring the patient has interaction within the community.

12.     I am licensed to board up to two patients at any given time.

13.     Since approximately 2007, I have housed and cared for one (2) individuals.

14.     In exchange for my work for Sevita, Sevita pays $65.65 per day, per patient assigned to my household.

15. I typically work at least approximately eight (8) hours per day, Monday through Friday, and 12 approximately hours on Saturday and Sunday— or approximately 64 hours per week.

16. Notwithstanding the hours that I work each week, I am never paid overtime, or any amount in excess of the day rate, regardless of the number of hours of work I am required to work each week.

17. Throughout the duration of my employment, Sevita has classified me as an independent contractor.

18. Sevita controls every aspect of my work.

19. Sevita has the authority to terminate me at any time.

20. Sevita and the New Jersey Division of Developmental Disability ("DDD") create all policies that I am required to strictly follow in order to maintain my position as a CCP.

21. Sevita has a code of conduct and operations manual that I am required to follow.

22. Sevita requires me to complete daily reports that are required to be submitted to the case manager on a monthly basis.

23. In addition to the daily reports, I am required to complete monthly reports and provide them to my case manager as well.

24. I am also required to submit monthly reports to the DDD.

25. All paperwork that I am required to complete and maintain is created by either Sevita or the DDD.

26. I generally communicate with my case manager on a regular basis, at least weekly. We generally communicate by phone, in-person, or via-email.

27.     The case manager is responsible for ensuring that I am complying with all Sevita and DDD policies and performing my duties properly according to those policies.

28.     My case manager performs routine site visits at my home to ensure that I am complying with Sevita and DDD policies, at least monthly, but sometimes as frequently as weekly.

29.     A representative from the DDD also visits my home quarterly to ensure that I am complying with DDD policies and performing my duties accordingly.

30.     Sevita maintains all files and reports regarding my work and the individual(s) that I care for.

31.     In fact, some paperwork that I am required to submit with my monthly reports is solely obtained by Sevita.

32.     For example, I am required to provide the bank statements for the person I care for in the monthly reports that I submit to Sevita.  I do not have access to the bank statements and must request them each month from Sevita.

33.     Sevita and the DDD dictate the ongoing education requirements that I am required to complete annually.

34.     Sevita and the DDD also periodically require me to complete mandatory training sessions.

35.     Although such training lacks utility outside of the context of my work for Sevita, Sevita does not compensate me for time spent attending mandatory training and ongoing education requirements that I am required to complete in order to retain my job.

4

36.     For approximately three years beginning in 2017, Sevita required me to complete the College of Direct Support. Sevita set my user name and passcode. Sevita instructed me not to change the password assigned to me so that they could monitor my progress.

37.     Sevita requires that I take a mandatory 14 day respite each year. On all such occasions, Sevita required me to use the respite care giver of Sevita's choosing for my Sevita-assigned patients.

38.     Moreover, Sevita does not reimburse me for most costs associated with hosting their patients in my home. Specifically, I am responsible for paying for, *inter alia*, heating, cooling, gas, water, the patient's grooming supplies, snacks and drinks, some meals, and most laundry services.

39.     Based on my personal knowledge, I know that other CCPs were paid in the same manner as I was—a set amount per day—but were not paid overtime for the hours that they worked over forty each week.

40.     I declare pursuant to 28 U.S.C. § 1746 under the penalty of perjury that the foregoing is true and correct.


*Janice Riggs-Patrick*                          6/17/22
Janice Patrick-Riggs                              Date

5

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOHN HAGANS and VIVIAN HAGANS,
individually and on behalf of all others
similarly situated,

      Plaintiffs,

vs.

NATIONAL MENTOR HEALTHCARE,
INC., and NATIONAL MENTOR
HEALTHCARE, LLC,

      Defendants.           /

CIVIL ACTION
CASE NO.: 1:22-CV-00128-KMW-SAK

## DECLARATION OF ROBIN STILL

I, ROBIN STILL, declare under the penalty of perjury and pursuant to 28 U.S.C. § 1746 as follows:

1.     I am over the age of 18 years old.  I make these statements in the State of New Jersey, from my personal knowledge and under the penalty of perjury.

2.     I am an Opt-In Plaintiff in the above-referenced lawsuit.

3.     I have worked for Defendants (collectively "Sevita Health") since approximately June 2004.

4.     Sevita Health was previously known as the "Mentor Network."  The Mentor Network changed its name to Sevita Health in September 2021.

5.     Sevita provides in-home care and services for people with intellectual and developmental disabilities through contracts with various states, including the State of New Jersey.

6.      Sevita's patients/clients include, but are not limited to, people with intellectual and developmental disabilities, individuals with complex care needs, people recovering from brain and spinal cord injuries, seniors in need of daily support and children in foster care.

7.      Throughout the duration of my employment with Sevita, I have been a "Community Care Provider," (hereinafter "CCP"), also known as a "Mentor."

8.      As a CCP, I am responsible for boarding Sevita's patients/clients, as assigned by Sevita, and providing such patients with assistance with their daily living needs, just as a CNA would.

9.      As a CCP, I provide the home environment and assistance that will allow the patient(s) to live a full healthy life in the community.

10.     Sevita's patients/clients live in my home and I provide them with around-the-clock care.

11.     As a CCP, my primary duty is to ensure that the patient's needs are met. This includes, *inter alia*, ensuring that the patient maintains personal health, hygiene and grooming, is sufficiently fed and hydrated, clothed, up to date with medical appointments and provided with the appropriate medications as directed by a physician, has a safe, comfortable, and clean room and living space, and ensuring the patient has interaction within the community.

12.     Although I am licensed to board up to 2 patients at any given time, the maximum number of patients that I have housed in my home and cared for at any given time throughout the duration of my employment has been one (1) individual.

13.     In exchange for my work for Sevita, Sevita pays $65.65 per day, per patient assigned to my household.

14.    I typically work at least approximately eight (8) hours per day, Monday through Friday, and at least 13.5 hours on Saturday and Sunday each week—or approximately 67 hours per week. However, during COVID-19, when the day program for the individual that I care for was shut down, I worked at least approximately 94.5 hours. Based on my personal knowledge, other CCPs worked more than usual during COVID-19 when the day care programs were closed.

15.    Notwithstanding the hours that I work each week, I am never paid overtime, or any amount in excess of the day rate, regardless of the number of hours of work I am required to work each week.

16.    Throughout the duration of my employment, Sevita has classified me as an independent contractor.

17.    Sevita controls every aspect of my work.

18.    Sevita has the authority to terminate me at any time.

19.    Sevita and the New Jersey Division of Developmental Disability ("DDD") create all policies that I am required to strictly follow in order to maintain my position as a CCP.

20.    Sevita has a code of conduct and operations manual that I am required to follow.

21.    Sevita requires me to complete daily reports that are required to be submitted to the case manager on a monthly basis.

22.    In addition to the daily reports, I am required to complete monthly reports and provide them to my case manager as well.

23.    I am also required to submit monthly reports to the DDD.

24.    All paperwork that I am required to complete and maintain is created by either Sevita or the DDD.

25.    I generally communicate with my case coordinator on a regular basis, at least weekly. We generally communicate by phone, in-person, or via-email.

26.    The case coordinator is responsible for ensuring that I am complying with all Sevita and DDD policies and performing my duties properly according to those policies.

27.    My case coordinator performs routine site visits at my home to ensure that I am complying with Sevita and DDD policies, at least monthly, but sometimes as frequently as weekly.

28.    A representative from the DDD also visits my home quarterly to ensure that I am complying with DDD policies and performing my duties accordingly.

29.    Sevita maintains all files and reports regarding my work and the individual that I care for.

30.    In fact, some paperwork that I am required to submit with my monthly reports is solely obtained by Sevita.

31.    For example, I am required to provide the bank statements for the person I care for in the monthly reports that I submit to Sevita. I do not have access to the bank statements and must request them each month from Sevita.

32.    Sevita and the DDD dictate the ongoing education requirements that I am required to complete annually.

33.    Sevita and the DDD also periodically require me to complete mandatory training sessions.

34.    Although such training lacks utility outside of the context of my work for Sevita, Sevita does not compensate me for time spent attending mandatory training and ongoing education requirements that I am required to complete in order to retain my job.

35.     For approximately three years beginning in 2017, Sevita required me to complete the College of Direct Support. Sevita set my user name and passcode. Sevita instructed me not to change the password assigned to me so that they could monitor my progress.

36.     Sevita does not reimburse me for most costs associated with hosting their patients in my home. Specifically, I am responsible for paying for, *inter alia*, heating, cooling, gas, water, the patient's grooming supplies, snacks and drinks, some meals, and most laundry services.

37.     Based on my personal knowledge, I know that other CCPs were paid in the same manner as I was—a set amount per day—but were not paid overtime for the hours that they worked over forty each week.

38.     I declare pursuant to 28 U.S.C. § 1746 under the penalty of perjury that the foregoing is true and correct.

ROBIN STILL                                    6/20/22

                                                   Date

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOHN HAGANS and VIVIAN HAGANS,
individually and on behalf of all others
similarly situated,

        Plaintiffs,

vs.

NATIONAL MENTOR HEALTHCARE,
INC., and NATIONAL MENTOR
HEALTHCARE, LLC,

    Defendants.            /

CIVIL ACTION
CASE NO.: 1:22-CV-00128-KMW-SAK

## DECLARATION OF ROSE WYNN

I, ROSE WYNN, declare under the penalty of perjury and pursuant to 28 U.S.C. § 1746 as follows:

1.    I am over the age of 18 years old.  I make these statements in the State of New Jersey, from my personal knowledge and under the penalty of perjury.

2.    I am an Opt-In Plaintiff in the above-referenced lawsuit.

3.    I have worked for Defendants (collectively "Sevita Health") since approximately 2002.

4.    Sevita Health was previously known as the "Mentor Network."  The Mentor Network changed its name to Sevita Health in September 2021.

5.    Sevita provides in-home care and services for people with intellectual and developmental disabilities through contracts with various states, including the State of New Jersey.

1

6.     Sevita's patients/clients include, but are not limited to, people with intellectual and developmental disabilities, individuals with complex care needs, people recovering from brain and spinal cord injuries, seniors in need of daily support and children in foster care.

7.     Throughout the duration of my employment with Sevita, I have been a "Community Care Provider," (hereinafter "CCP"), also known as a "Mentor."

8.     As a CCP, I am responsible for boarding Sevita's patients/clients, as assigned by Sevita, and providing such patients with assistance with their daily living needs, just as a CNA would.

9.     As a CCP, I provide the home environment and assistance that will allow the patient(s) to live a full healthy life in the community.

10.    Sevita's patients/clients live in my home and I provide them with around-the-clock care.

11.    As a CCP, my primary duty is to ensure that the patient's needs are met. This includes, *inter alia*, ensuring that the patient maintains personal health, hygiene and grooming, is sufficiently fed and hydrated, clothed, up to date with medical appointments and provided with the appropriate medications as directed by a physician, has a safe, comfortable, and clean room and living space, and ensuring the patient has interaction within the community.

12.    I am licensed to board up to 2 patients at any given time.

13.    Since approximately 2004, I have housed and cared for one at least one (1) individual.

14.    In exchange for my work for Sevita, Sevita pays $65.65 per day, per patient assigned to my household.

2

15. I typically work at least approximately eight (8) hours per day, seven (7) days per week (56 hours per week).

16. Notwithstanding the hours that I work each week, I am never paid overtime, or any amount in excess of the day rate, regardless of the number of hours of work I am required to work each week.

17. Throughout the duration of my employment, Sevita has classified me as an independent contractor.

18. Sevita controls every aspect of my work.

19. Sevita has the authority to terminate me at any time.

20. Sevita and the New Jersey Division of Developmental Disability ("DDD") create all policies that I am required to strictly follow in order to maintain my position as a CCP.

21. Sevita has a code of conduct and operations manual that I am required to follow.

22. Sevita requires me to complete daily reports that are required to be submitted to the case manager on a monthly basis.

23. In addition to the daily reports, I am required to complete monthly reports and provide them to my case manager as well.

24. I am also required to submit monthly reports to the DDD.

25. All paperwork that I am required to complete and maintain is created by either Sevita or the DDD.

26. I generally communicate with my case coordinator on a regular basis, at least weekly. We generally communicate by phone, in-person, or via-email.

27. The case coordinator is responsible for ensuring that I am complying with all Sevita and DDD policies and performing my duties properly according to those policies.

3

28.     My case coordinator performs routine site visits at my home to ensure that I am complying with Sevita and DDD policies, at least monthly, but sometimes as frequently as weekly.

29.     A representative from the DDD also visits my home quarterly to ensure that I am complying with DDD policies and performing my duties accordingly.

30.     Sevita maintains all files and reports regarding my work and the individual that I care for.

31.     In fact, some paperwork that I am required to submit with my monthly reports is solely obtained by Sevita.

32.     For example, I am required to provide the bank statements for the person I care for in the monthly reports that I submit to Sevita. I do not have access to the bank statements and must request them each month from Sevita.

33.     Sevita and the DDD dictate the ongoing education requirements that I am required to complete annually.

34.     Sevita and the DDD also periodically require me to complete mandatory training sessions.

35.     Although such training lacks utility outside of the context of my work for Sevita, Sevita does not compensate me for time spent attending mandatory training and ongoing education requirements that I am required to complete in order to retain my job.

36.     For approximately three years beginning in 2017, Sevita required me to complete the College of Direct Support. Sevita set my user name and passcode. Sevita instructed me not to change the password assigned to me so that they could monitor my progress.

4

37.     Sevita does not reimburse me for most costs associated with hosting their patients in my home.   Specifically, I am responsible for paying for, *inter alia*, heating, cooling, gas, water, the patient's grooming supplies, snacks and drinks, some meals, and most laundry services.

38.     Based on my personal knowledge, I know that other CCPs were paid in the same manner as I was—a set amount per day—but were not paid overtime for the hours that they worked over forty each week.

39.     I declare pursuant to 28 U.S.C. § 1746 under the penalty of perjury that the foregoing is true and correct.

ROSE WYNN                                            June 29, 2022

ROSE WYNN                                            Date

5