**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHN HAGANS and VIVIAN HAGANS, individually and on behalf of all others similarly situated, | : : : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : : |
| | : |
| NATIONAL MENTOR HEALTHCARE, INC., and NATIONAL MENTOR HEALTHCARE, LLC, | : : : |
| | : |
| Defendants. | : |

CIVIL ACTION
CASE NO. 1:22-cv-00128-KMW-SAK

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23**

**Motion Noticed for June 17, 2024**

# **TABLE OF CONTENTS**

INDEX OF EXHIBITS…………………………………………………………………vi

TABLE OF AUTHORITIES……………………………………………………………iii

INTRODUCTION…………………………………………………………………………1

MEMORANDUM OF LAW……………………………………………………………2

    I.     RELEVANT FACTUAL BACKGROUND………………………………2

        a.  The Overtime Claim…………………………………………………4
        b.  The Minimum Wage Claim…………………………………………5
        c.  Defendants Uniformly Misclassify All HHPs as Independent Contractors…6

    II.  CLASS CERTFICATION OF THE NJWHL AND NJWPL WAGE CLAIMS PURSUANT TO RULE 23 IS APPROPRIATE AND WARRANTED………………7

        a.  Independent Contractor Misclassification Cases are Well Suited for Rule 23 Treatment……………………………………………………………9

        b.  The Putative Class Satisfies Each Prerequisite of Rule 23(a)………………11
            i.  The Members of the Putative Class Are Ascertainable……………12
            ii.  Numerosity…………………………………………………………13
            iii. Commonality………………………………………………………14
            iv.  Typicality…………………………………………………………...15
            v.  Adequacy of Representation………………………………………16

        c.  The Putative Class Satisfies Each Prerequisite of Rule 23(b)(3)……………17
            i.  Common Questions Of Law And Fact Predominate Over Questions Affecting Only Individual Members Of The Class………………………18
            ii.  A Class Action Is The Superior Method To Adjudicate The Claims At Issue………………………………………………………………20
                a.  Most Class Members Have Insufficient Interest To Justify Individual Lawsuits……………………………………………………20
                b.  The Extent And Nature Of Other Pending Class Actions Does Not Present Any Impediment To Certification…………………………21
                c.  This Court Is The Appropriate Forum To Resolve The Claims At Issue………………………………………………………………..21
                d.  Manageability………………………………………………………..22

    III.  CONCLUSION…………………………………………………………………..22

    CERTIFICATE OF SERVICE……………………………………………………………23

# TABLE OF AUTHORITIES

## Cases

*Agostino v. Quest Diagnostics, Inc.*, 256 F.R.D. 437 (D.N.J. 2009)................................................ 12
*Alba v. Papa John's USA, Inc.*, 2007 U.S. Dist. LEXIS 28079 (C.D. Cal. Feb. 7, 2007) ............................ 11
*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997)........................................................ 8, 15, 18, 20, 21
*Arch v. Am. Tobacco Co.*, 175 F.R.D. 469 (E.D. Pa. 1997)........................................................... 13
*Atis v. Freedom Mortg. Corp.*, 2016 WL 7440465 (D.N.J. Dec. 27, 2016).................................... 11, 12, 15
*Baby Neal for and by Kanter v. Casey*, 43 F.3d 48 (3d Cir. 1994)........................................ 14, 15, 17
*Beck v. Maximus, Inc.*, 457 F.3d 291 (3d Cir. 2006) ...................................................................... 7, 15
*Bedoya v. Am. Eagle Express Inc.*, 914 F.3d 812 (3d Cir. 2019)......................................................... 6
*Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283 (2d Cir.1999) ................................................. 8
*Carr v. Flowers Foods, Inc.*, No. CV 15-6391, 2019 WL 2027299 (E.D. Pa. May 7, 2019)............. 9, 12, 19
*Charlot v. Ecolab, Inc.*, 2020 WL 1546439 (D.N.J. Apr. 1, 2020)................................................. 11
*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980) ........................................................... 20
*Devereux Found. v. New Jersey Dep't of Lab. & Workforce Dev.*, 248 N.J. 380, 259 A.3d 281 (2021)......... 7
*Doe v. Banc, Jack & Joe, LLC*, 2020 WL 2832621, at *14 (D.N.J. June 1, 2020)............................. 9, 10, 19
*Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir.1985)...................................................................... 8
*Georgine v. Amchem Prods., Inc.*, 83 F.3d 610 (3d Cir. 1996) ...................................................... 15
*Goldman v. Radio Shack Corp.*, 2005 U.S. Dist. LEXIS 8742 (E.D. Pa. May 9, 2005) ...................... 11
*Hall v. Accolade, Inc.*, 2020 WL 1477688 (E.D. Pa. Mar. 25, 2020) ............................................. 15
*Hargrove v. Sleepy's LLC*, 612 F. App'x 116, 118 (3d Cir. 2015)............................... 5, 9, 10, 15, 18, 19
*Hargrove v. Sleepy's LLC*, 2022 WL 617176 (D.N.J. Mar. 2, 2022)................................................ 9
*Hargrove v. Sleepy's, LLC*, 106 A.3d 449 (N.J. 2015) ............................................................. 5, 6
*Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912 (3d Cir. 1992)........................................... 14, 16
*Iglesias-Mendoza v. LaBelle. Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007)........................................ 11
*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008) .......................................... 8
*In re Initial Public Offering Securities Litigation*, 471 F.3d 24 (2d Cir. 2006)................................. 8
*In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184 (3d Cir. 2020)................................. 18
*In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.2d 410 (3d Cir. 2016).................... 16
*In re Prudential Ins. Sales Practice Litig.*, 962 F. Supp. 450 (D.N.J. 1997) ................................... 19
*In re Sch. Asbestos Litig.*, 789 F.2d 996 (3d Cir. 1986)........................................................... 14
*Knepper v. Rite Aid Corp.*, 675 F.3d 249 (3d Cir. 2012) ............................................................ 7
*Krzesniak v. Cendant Corp.*, 2007 U.S. Dist. LEXIS 47518 (N.D. Cal. June 20, 2007)………….............10
*Lee v. ABC Carpet & Home*, 236 F.R.D. 193 (S.D.N.Y. 2006)......................................................... 8
*LeMaster v. Alternative Healthcare Sols., Inc.*, 726 F. Supp. 2d 854 (M.D. Tenn. 2010) ....................... 7
*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) ................................................. 8, 12
*Meyer v. CUNA Mutual Group*, 2006 WL 197122 (W.D. Pa. Jan. 25, 2006) ................................. 12, 16
*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)................................................................ 20
*Reyes v. Netdeposit, LLC*, 802 F.3d 469 (3d Cir. 2015) ............................................................. 14
*Rivet v. Off. Depot, Inc.*, 207 F. Supp. 3d 417 (D.N.J. 2016) .................................................... 19
*Rodriguez v. National City Bank*, 726 F.3d 372 (3d Cir. 2013)..................................................... 14
*Rowe v. E.I. du Pont de Nemours & Co.*, 2008 WL 5412912 (D.N.J. Dec. 23, 2008) ............................. 8
*Sav-OnDrug Stores, Inc v. Superior Court*, 96 P.3d 194 (Cal. 2004)............................................... 11
*Schwab v. Philip Morris USA, Inc.*, 2006 WL 2726102 (E.D.N.Y. Sept. 25, 2006) ................................ 8
*Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261 (D. Conn 2002)....................................................... 21
*Stewart v. Abraham*, 275 F.3d 220 (3d Cir.2001).................................................................. 13
*Torres v. Gristede's Operating Corp.*, 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 29, 2006) ... 11, 21, 22
*Torres v. Gristede's Operating Corp.*, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006).............................. 21

*Troncone v. Velahos,* 2012 WL 3018061, at *4 (D.N.J. July 23, 2012) ........................................ 13

*Troncone v. Velahos,* 2013 WL 1222630, at *6 (D.N.J. Mar. 25, 2013) ...................................... 19

*Tyson Foods, Inc. v. Bouaphakeo,* 577 U.S. 442 (2016)........................................................... 18

*Verma v. 3001 Castor, Inc.,* 2016 WL 6962522 (E.D. Pa. Nov. 29, 2016) ................................ 9

*Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011) .............................................................. 14

*Weiss v. York Hosp.,* 745 F.2d 786, 807 (3d Cir. 1984) .......................................... 11, 14, 16

*Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239 (3d Cir. 1975).............................. 11, 16, 17

*White v. Williams,* 208 F.R.D. 123 (D.N.J. 2002).................................................................... 12

*Whiteway v. FedEx Kinko's Office & Print Servs., Inc.,* 2006 U.S. Dist. LEXIS 69193 (N.D. Cal. Sept. 14, 2006) ................................................................................................................... 11

*Williams v. Jani-King of Phila. Inc.,* 837 F.3d 314 (3d Cir. 2016) ...................................... 8, 15

*Williams v. Sweet Home Healthcare, LLC,* 325 F.R.D. 113 (E.D. Pa. 2018) .......................... 9, 16

*Wilson v. Guardian Angel Nursing, Inc.,* 2008 WL 2944661 (M.D. Tenn. July 31, 2008)............................ 7

## Statutes

29 U.S.C. § 216(b) ..................................................................................................................... 7

## Other Authorities

Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure*, §1777 (2d ed. 1986) ..................................................................................................................................... 18

James Wm. Moore et al., Moore's Federal Practice § 23.22[3] [a] (3d ed.1999)........................ 13

*Manual for Complex Litigation,* Fourth S21.222 at 305 (2005) .............................................. 12

## Rules

23(b)(2) ....................................................................................................................................... 1

23(b)(3) .................................................................................................... 1, 17, 18, 20, 21, 22

Fed. R. Civ. P. 23(b)(3)(C) ....................................................................................................... 22

Fed. R. Civ. P. 23(b)(3)(D) ....................................................................................................... 22

Fed. R. Civ. P. 23(e)(1)(B)(ii) .................................................................................................. 22

Rule 23(a).............................................................................. 1, 8, 11, 12, 13, 15, 16, 17

**<u>INDEX OF EXHIBITS</u>**

| | |
|---|---|
| EXHIBIT A | Become a Host Home Provider with Sevita," <u>https://sevitahealth.com/join-us/become-a-mentor/become-a-host-home-mentor</u> |
| EXHIBIT B | Defendants' List of Potential Opt-In Plaintiffs As Ordered by March 17, 2023 Order on Conditional Certification |
| EXHIBIT C | Declaration of Andrew R. Frisch |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHN HAGANS and VIVIAN HAGANS, individually and on behalf of all others similarly situated, | : |
| | : |
| | : |
| | : |
| Plaintiffs, | : |
| | : CIVIL ACTION |
| v. | : CASE NO. 1:22-cv-00128 |
| | : |
| NATIONAL MENTOR HEALTHCARE, INC., and NATIONAL MENTOR HEALTHCARE, LLC, | : |
| | : |
| | : |
| | : |
| Defendants. | : |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23**

Plaintiffs, JOHN HAGANS ("J. Hagans") and VIVIAN HAGANS ("V. Hagans") (collectively, the "Plaintiffs"), individually, and on behalf of a putative class of similarly situated individuals, seek entry of an Order certifying a class action lawsuit pursuant to Rule 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure for alleged violations of the New Jersey Wage and Hour Law ("NJWHL") and New Jersey Wage Payment Law ("NJWPL").

**INTRODUCTION**

Plaintiffs seek class certification on behalf of all current and former "Host Home Providers[1]" or "HHPs" who: (1) worked for Defendants in the State of New Jersey at any time from January 2016 to the present; (2) were compensated solely by a fixed day rate for each day worked; (3) were classified as independent contractors; (4) were not paid the proper overtime premiums for work

---

[1] Defendants interchangeably refer to the position at issue as "Host Home Providers" and "Mentors." Plaintiffs' proposed class if likewise intended to include all Host Home Providers and/or Mentors who performed work for Defendants and received solely a fixed daily stipend.

1

performed in excess of 40 hours per week; and (5) were not paid at least the New Jersey minimum wage compensation when their regular rate fell below the mandatory rate for each hour/week worked during their employment (the "Class" or "Class Members"), for alleged violations of the NJWHL and NJWPL.

## MEMORANDUM OF LAW

### I.    RELEVANT FACTUAL BACKGROUND

Defendant operates an in-home care service company, which goes by the trade name of "Sevita Health." *See* ECF No. 10 (Defendant's Answer) at ¶¶1, 20; *see also* ECF No. 36-3, "Host Homes," https://sevitahealth.com/our-services/communities/adultservices/residential-services/host-homes/; "Become a Host Home Provider with Sevita," https://sevitahealth.com/join-us/become-a-mentor/become-a-host-home-mentor/, attached as **EXHIBIT A**. Defendant was previously known as "The Mentor Network." *See* ECF No. 36-4, FAQ Regarding Name Change ("Is Sevita a new Company? No. Sevita is a change in trade name for The MENTOR Network."). Defendant employs over 40,000 employees in 40 states and serves upwards of 50,000 people. *See* ECF No. 36-5, https://sevitahealth.com/about-us/our-people/ ("Our employees – 40,000 strong – help change people's lives."). As of late 2021, the private equity companies that own Defendant valued Defendant at over $3 Billion Dollars, when they sought to sell a stake in the company. *See* ECF No. 36-6, https://bhbusiness.com/2021/10/27/sevita-health-minority-stake-sale-reportedly-inthe-works-with-3b-valuation/.

Defendants operate community-based Community Care Provider ("CCP") or mentor networks throughout the United States and provide in-home care and services for people with intellectual and developmental disabilities (I/DD), through contracts with various states, including the State of New Jersey. *See* ECF No. 1, Complaint at ¶ 20; ECF No. 10, Answer at ¶ 20. Defendants

serve both children and adults with intellectual and developmental disabilities, individuals with complex care needs, people recovering from brain and spinal cord injury, seniors in need of daily support, children in foster care, and patients struggling with autism, to name a few services. *See* ECF No. 36-7 (Composite Declarations), at Declaration of John Hagans ("J. Hagans Decl.") at ¶6; Declaration of Vivian Hagans ("V. Hagans Decl.") at ¶ 6, Declaration of Isadore Patrick ("I. Patrick Decl.") at ¶ 6; Declaration of Janice Riggs-Patrick ("Riggs-Patrick Decl.") at ¶ 6; Declaration of Robin Still ("Still Decl.") ¶ 6; Declaration of Rose Wynn ("Wynn Decl.") at ¶ 6.

Throughout the relevant time period, Defendants contracted with the State of New Jersey, Department of Human Services, Division of Developmental Disabilities to provide in-home services for people with I/DD throughout the State of New Jersey, for profit. *See* ECF No. 10 at ¶ 22. Defendants employ HHPs, like Plaintiffs, to provide the in-home care services that Defendants offer to the public and to their governmental clients. *See* ECF No. 36-7, J. Hagans Decl. at ¶¶ 7-9; V. Hagans Decl. at ¶¶ 7-9; I. Patrick Decl. at ¶¶ 7-9; Riggs-Patrick Decl. at ¶¶ 7-9; Still Decl. at ¶¶ 7-9; Wynn Decl. at ¶¶ 7-9. All HHPs, including Plaintiffs, host Defendants' patients in their homes, and provide the home environment and assistance that will allow the patient(s) to live a full and healthy life—similar to a CNA (or Certified Nursing Assistant). *See id.,* J. Hagans Decl. at ¶¶ 7-9; V. Hagans Decl. at ¶¶ 7-9; I. Patrick Decl. at ¶¶ 7-9; Riggs-Patrick Decl. at ¶¶ 7-9; Still Decl. at ¶¶ 7-9; Wynn Decl. at ¶¶ 7-9. All HHPs perform similar job duties. *Id.* at J. Hagans Decl. at ¶ 11; V. Hagans Decl. at ¶ 11; I. Patrick Decl. at ¶ 11; Riggs-Patrick Decl. at ¶ 11; Still Decl. at ¶ 11; Wynn Decl. at ¶ 11. Specifically, all HHPs' primary job duty is to ensure the patient's daily needs are met. *Id.* at J. Hagans Decl. at ¶ 11; V. Hagans Decl. at ¶ 11; I. Patrick Decl. at ¶ 11; Riggs-Patrick Decl. at ¶ 11; Still Decl. at ¶ 11; Wynn Decl. at ¶ 11. This includes, *inter alia*, taking the patient to doctor's appointments, ensuring that the patient is fed, clothed, and bathed, providing a comfortable and clean

room and living space for the patient, and ensuring that the patient has interaction within the community. *Id.,* J. Hagans Decl. at ¶ 11; V. Hagans Decl. at ¶ 11; I. Patrick Decl. at ¶ 11; Riggs-Patrick Decl. at ¶ 11; Still Decl. at ¶ 11; Wynn Decl. at ¶ 11.

Defendants pay all HHPs, including Plaintiffs and the Class Members, solely a day rate, or fixed amount, for each day worked.[2] *Id.,* J. Hagans Decl. at ¶ 13; V. Hagans Decl. at ¶ 13; I. Patrick Decl. at ¶ 14; Riggs-Patrick Decl. at ¶ 14; Still Decl. at ¶ 13; Wynn Decl. at ¶ 14. Specifically, Defendants pay all HHPs $65.65 per day, per patient that the HHP hosts in his or her home. *See* J. Hagans Decl. at ¶ 13; V. Hagans Decl. at ¶ 13; I. Patrick Decl. at ¶ 14; Riggs-Patrick Decl. at ¶ 14; Still Decl. at ¶ 13; Wynn Decl. at ¶ 14").

### a. **The Overtime Claim**.

Defendants required and/or permitted, and still require/permit, Plaintiff and all its New Jersey-based HHPs to work in excess of forty (40) hours per week, but refuse to compensate them at the applicable required overtime rate for the hours that they work over forty (40) in a work week. *Id.*, J. Hagans Decl. at ¶¶ 13-15, 39; V. Hagans Decl. at ¶¶ 13-15, 39; I. Patrick Decl. at ¶¶ 14-16, 39; Riggs-Patrick Decl. at ¶¶ 14-16, 39; Still Decl. at ¶¶ 13-15, 37; Wynn Decl. at ¶¶ 14-16, 38. Defendants do not pay any HHPs, including Plaintiffs and the Class Members, for the time spent completing mandatory training for the certification(s), which are a prerequisite to maintain employment. *Id.,* J. Hagans Decl. at ¶¶ 32-34; V. Hagans Decl. at ¶¶ 32- 34; I. Patrick Decl. at ¶¶ 33-36; Riggs-Patrick Decl. at ¶¶ 33-36; Still Decl. at ¶¶ 33-36; Wynn Decl. at ¶¶ 33-36. Although Plaintiffs and the Class Members routinely work more than forty (40) hours in a single work week caring for Defendant's patients in their homes, Defendant only pays the fixed rate of $65.65 per day,

---

[2] While Defendants classify their payments to Plaintiffs as a "reimbursement," it is undisputed that each CCP is paid a fixed amount, per patient, per day for each day that he or she houses a patient assigned by Defendants. Thus, all HHPs are paid (or not paid) in a similar manner.

per patient, that the CCP hosts in his or her home.  *Id.*, J. Hagans Decl. at ¶¶ 13-15, 39; V. Hagans Decl. at ¶¶ 13-15, 39; I. Patrick Decl. at ¶¶ 14-16, 39; Riggs-Patrick Decl. at ¶¶ 14- 16, 39; Still Decl. at ¶¶ 13-15, 37; Wynn Decl. at ¶¶ 14-16, 38.

### b. **The Minimum Wage Claim.**

In addition to the Overtime Claim, Plaintiffs assert, on behalf of themselves and the Class, that Defendants failed to pay proper minimum wages in accordance with the NJWHL and NJWPL. Specifically, due to the hours that Plaintiffs, and all Class Members, are required to work, the fixed rate paid by Defendants resulted, and continues to result in, sub-minimum wage payments to Plaintiffs and the Class. *Id.*, J. Hagans Decl. at ¶¶ 13-14; V. Hagans Decl. at ¶¶ 13-14; I. Patrick Decl. at ¶¶ 14-15; Riggs-Patrick Decl. at ¶¶ 14-15; Still Decl. at ¶¶ 13-14; Wynn Decl. at ¶¶ 14-15. For example, John and Vivian Hagans receive $65.65 per day, combined. *See* ECF No. 1. at ¶ 57. Based on the hours that John Hagans and Vivian Hagans, as well as other HHPs work each week, their regular rates of pay equate with $4.10. per hour. *See* ECF No. 36-7 at J. Hagans Decl. at ¶ 13; V. Hagans Decl. at ¶ 13 ($65.65/2 = $32.83 x 7 = $229.81/56 = $4.10.). The federally mandated minimum wage is currently $7.25 per hour, and the New Jersey minimum wage is currently $15.13 per hour.[3]

### c. **Defendants Uniformly Misclassify All HHPs as Independent Contractors.[4]**

---

[3] In 2024, the New Jersey Minimum wage is $15.13; in 2023, the New Jersey Minimum wage was $14.13 per hour; in 2022, the New Jersey Minimum wage was $13.00 per hour; in 2021, the New Jersey Minimum wage was $12.00 per hour; in 2020 the New Jersey Minimum wage was $11.00 per hour; in 2019 the New Jersey minimum wage was $10.00 per hour.

[4] In 2015, the New Jersey Supreme Court held that the "ABC" test, would govern employment status determinations under both the NJWPL and the NJWHL. *See Hargrove v. Sleepy's, LLC*, 106 A.3d 449, 463 (N.J. 2015); *see also Hargrove v. Sleepy's LLC*, 612 F. App'x 116, 118 (3d Cir. 2015). Under the ABC test, [W]orkers performing services for a given company in exchange for pay are deemed employees *unless* the company can demonstrate *each* of the following: A. Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and B. Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and C. Such individual

The foregoing violations of the NJWHL and NJWPL stem from Defendants' longstanding policy of misclassifying their HHPs, including Plaintiffs and Class Members, as independent contractors. *See id.* at J. Hagans Decl. at ¶ 16; V. Hagans Decl. at ¶ 16; I. Patrick Decl. at ¶ 17; Riggs-Patrick Decl. at ¶ 17; Still Decl. at ¶ 16; Wynn Decl. at ¶ 17; *see also* EXHIBIT A ("Host home providers are independent contractors and not employees of Sevita."). Notwithstanding Defendants' classification of Plaintiffs and the other HHPs as independent contractors, Defendants exert an exorbitant amount of control over Plaintiffs' employment. *Id.*, J. Hagans Decl. at ¶¶ 16-37; V. Hagans Decl. at ¶¶ 16-37; I. Patrick Decl. at ¶¶ 17-37; Riggs-Patrick Decl. at ¶¶ 17-37; Still Decl. at ¶¶ 16-35; Wynn Decl. at ¶¶ 17-36. Some examples of this control includes, but is not limited to, Defendants' authority to terminate HHPs, Defendants' creation and enforcement of strict policies and codes of conduct that apply to HHPs, Defendants' control over the manner and form of documentation required to be submitted by HHPs, and Defendants' employment of case managers that supervise, and regularly visit and communicate with HHPs in order to ensure that HHPs are complying with Defendants' policies. *Id.*, J. Hagans Decl. at ¶¶ 16-37; V. Hagans Decl. at ¶¶ 16- 37; I. Patrick Decl. at ¶¶ 17-37; Riggs-Patrick Decl. at ¶¶ 17-37; Still Decl. at ¶¶ 16-35; Wynn Decl. at ¶¶ 17-36.

Defendants have persisted in their willful violation of federal and New Jersey State wage and hour laws notwithstanding the fact that in-home employees working under conditions virtually identical to those Plaintiffs work under here, have previously been found to be employees. *See THE DEVEREUX FOUNDATION, Petitioner-Appellant, v. NEW JERSEY DEPARTMENT OF LABOR*

---

is customarily engaged in an independently established trade, occupation, profession, or business. *Bedoya v. Am. Eagle Express Inc.*, 914 F.3d 812, 816 (3d Cir. 2019) (emphasis added). "The failure to satisfy any one of the three criteria results in an 'employment' classification." *Hargrove*, 106 A.3d at 458.

*AND WORKFORCE DEVELOPMENT, Respondent-Respondent.*, No. A- 0936-19, 2021 WL 2099851, at *1 (N.J. Super. Ct. App. Div. May 25, 2021), cert. denied sub nom. *Devereux Found. v. New Jersey Dep't of Lab. & Workforce Dev.*, 248 N.J. 380, 259 A.3d 281 (2021) (operators of foster homes who worked through agency contracting with the State of New Jersey held to be employees and not contractors under New Jersey law); *Wilson v. Guardian Angel Nursing, Inc.*, 2008 WL 2944661, at *17 (M.D. Tenn. July 31, 2008) (finding that nurses who provided in-home care to patients were employees who were misclassified as independent contractors for the purposes of the FLSA); *LeMaster v. Alternative Healthcare Sols., Inc.*, 726 F. Supp. 2d 854, 863 (M.D. Tenn. 2010) (same).

Simply put, Defendants' compensation policies are common to all HHPs in the putative class who worked and/or continue to work for Defendants in the State of New Jersey. All other HHPs within the putative class are owed full and proper payment of their overtime wages and minimum wages, and the right to participate in this litigation. It is undisputed that Defendants have acted, or refused to act, on grounds applicable to all HHPs in the putative class, thereby making the identical relief appropriate with respect to the putative class, and, thus, warranting class certification of claims brought pursuant to the NJWHL and NJWPL.[5]

## II.    CLASS CERTIFICATION OF THE NJWHL AND NJWPL WAGE CLAIMS PURSUANT TO RULE 23 IS APPROPRIATE AND WARRANTED.

Federal Rule of Civil Procedure 23 governs the standard for certification of class actions in federal court. Ultimately, the court has discretion under Rule 23 to certify a class. *Beck v. Maximus, Inc.,* 457 F.3d 291, 297 (3d Cir.2006); *see also In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d

---

[5] Plaintiff's FLSA claims, asserted as a collective action under 29 U.S.C. § 216(b), were conditionally certified on March 17, 2023. *See* ECF No. 78 (Order approving conditional certification of the proposed collective action). Plaintiffs' assert their state law claims as a class action under Federal Rule of Civil Procedure 23. *See Knepper v. Rite Aid Corp.*, 675 F.3d 249 (3d Cir. 2012) (collective and class claims may proceed together in the same lawsuit).

305, 310 (3d Cir. 2008), *as amended* (Jan. 16, 2009) ("The trial court, well-positioned to decide which facts and legal arguments are most important to each Rule 23 requirement, possesses broad discretion to control proceedings and frame issues for consideration under Rule 23."). "Moreover, in the Third Circuit, courts are instructed to give Rule 23 a liberal construction." *Rowe v. E.I. du Pont de Nemours & Co.,* 2008 WL 5412912, at *3 (D.N.J. Dec. 23, 2008), citing *Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.1985) ("the interests of justice require that in a doubtful case ... any error, if there is to be one, should be committed in favor of allowing a class action").

On a motion to certify a class, while a court must accept all allegations in the pleadings as true, it should not determine or resolve the merits or claims of the case. *See Caridad v. Metro-North Commuter R.R.,* 191 F.3d 283, 293 (2d Cir.1999); *Williams v. Jani-King of Phila. Inc.*, 837 F.3d 314, 322 (3d Cir. 2016) ("the class certification stage is not the place for a decision on the merits"). "A plaintiff bears the burden of demonstrating that Rule 23's requirements are met by a preponderance of the evidence, and the district court 'must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 306. More specifically, Plaintiffs seeking class certification are required to satisfy each of the conditions of Rule 23(a) and to demonstrate that their action fits within one of the three categories of Rule 23(b). *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594 (3d Cir. 2012); *In re Initial Public Offering Securities Litigation,* 471F.3d 24, 41 (2d Cir. 2006); *Schwab v. Philip Morris USA, Inc.,* 2006 WL 2726102, at *84 (E.D.N.Y. Sept. 25, 2006) (citing *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 614 (1997)). However, "where a collective action under the FLSA that is based on the same set of facts has been approved, there is an inclination to grant class certification of state labor law claims." *Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 202-03 (S.D.N.Y. 2006).

Here, the Plaintiffs seek certification of a class comprised of all of Defendants' "Host Home Providers," who Plaintiffs allege were misclassified as independent contractors and, thus, wrongly denied minimum wage and overtime pay in contravention of the NJWHL and NJWPL. The crux of Plaintiffs' allegations is that *all* of Defendants' HHPs suffered from Defendants' uniform policy and misclassification. In accordance with relevant NJWHL provisions, the named Plaintiffs and the putative class members, all have common claims for unpaid wages, including overtime premiums. Further, none of Defendants' HHPs were exempt under State and/or Federal law and all of these individuals suffered from the same policy of Defendants—its failure to pay proper minimum wages and overtime wages to its HHPs.

### a. <u>Independent Contractor Misclassification Cases are Well Suited for Rule 23 Treatment</u>.

This is far from an issue of first impression. Courts within this Circuit, routinely certify state law misclassification claims arising from claims of independent contractor misclassification. *Hargrove v. Sleepy's LLC,* No. 310CV01138PGSLHG, 2022 WL 617176, at *12 (D.N.J. Mar. 2, 2022), *aff'd,* No. 22-2040, 2023 WL 3943738 (3d Cir. June 12, 2023) (certifying wage and hour claims arising from alleged misclassification of route delivery drivers as independent contractors under NJWHL); *Doe v. Banc, Jack & Joe, LLC,* No. 17CV03843KSHCLW, 2020 WL 2832621, at *14 (D.N.J. June 1, 2020) (certifying claims that class of exotic dancers were misclassified as independent contractors under NJWHL); *Carr v. Flowers Foods, Inc.,* No. CV 15-6391, 2019 WL 2027299, at *22 (E.D. Pa. May 7, 2019) (certifying independent contractor misclassification claims of route drivers under Maryland, New Jersey and Pennsylvania law); *Williams v. Sweet Home Healthcare, LLC,* 325 F.R.D. 113, 132 (E.D. Pa. 2018) (certifying claims of home healthcare workers under Pennsylvania law); *Verma v. 3001 Castor, Inc.,* No. CV 13-3034, 2016 WL 6962522, at *14 (E.D. Pa. Nov. 29, 2016) (certifying claims that class of exotic dancers

were misclassified as independent contractors under Pennsylvania law).

In *Hargrove v. Sleepy's LLC*, the Third Circuit affirmed the district court's decision to certify a class of delivery drivers, finding evidence of the defendant's uniform corporate policies, including the requirement that all drivers sign the defendant's uniform driver agreement, its uniform classification of all delivery drivers as independent contractors, and its common defenses to the wage claims, was sufficient evidence to show that employment status was an in issue common to the class. 2023 WL 3943738, at *2. Because "[p]laintiffs were only required to show that they *can* win their case based on evidence common to the class, not that they will," the court found the plaintiffs satisfied the predominance requirement on the issue of independent contractor misclassification. *Id.* at 3 (internal citations and quotations omitted).

Likewise, in *Doe v. Banc, Jack & Joe, LLC,* the court certified a class of exotic dancers based on evidence of the defendant's uniform classification of dancers as independent contractors and uniform application of standardized policies and practices, including those related to fees and tip requirements. 2020 WL 2832621, at *12. The court declined to assess the classification of the dancers on an individual level because the "key issue" of whether the dancers were properly designated as independent contractors predominated over questions affecting individual members of the class. *Id.*

Similarly, in *Krzesniak v. Cendant Corp.,* the court certified a class of shift managers based on evidence of the defendant's standardized policies and procedures, the class members uniform range of job duties, a uniform job description, and uniform classification of all shift managers as exempt without regard to their actual duties performed. 2007 U.S. Dist. LEXIS 47518, at *37-40 (N.D. Cal. June 20, 2007). The court found that it was more efficient to "answer the question of whether Defendants' exemption of all [shift managers] is correct through a class action than through

10

case-by-case adjudication," *id.* at *38-39, and rejected the employer's invitation to examine job duties on a worker-by-worker bases. *Id.* at *40-41. It held that there is no "requirement that the courts assess an employer's affirmative exemption defense against every class members' claim before certifying an overtime class action." *Id.* at *42 (quoting *Sav-OnDrug Stores, Inc v. Superior Court,* 96 P.3d 194, 207 (Cal. 2004)).  Other courts have reached similar conclusions. *See, e.g.*, *Charlot v. Ecolab, Inc.,* No. CV1810528KMMAH, 2020 WL 1546439, at *3 (D.N.J. Apr. 1, 2020) (certifying misclassification claims of route managers under NJWHL); *Atis v. Freedom Mortg. Corp.,* No. CV 15-3424 (RBK/JS), 2016 WL 7440465, at *1 (D.N.J. Dec. 27, 2016) (certifying misclassification claims of mortgage loan consultants under NJWHL); *Iglesias-Mendoza v. LaBelle. Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007) (certifying farmworker misclassification case); *Alba v. Papa John's USA, Inc.*, 2007 U.S. Dist. LEXIS 28079 (C.D. Cal. Feb. 7, 2007) (certifying store manager misclassification case); *Torres v. Gristede's Operating Corp.,* 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 29, 2006) (certifying department manager and comanager misclassification case); *Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*, 2006 U.S. Dist. LEXIS 69193 (N.D. Cal. Sept. 14, 2006) (certifying store manager misclassification case); *Goldman v. Radio Shack Corp.*, 2005 U.S. Dist. LEXIS 8742 (E.D. Pa. May 9,2005) (same).

### b.  <u>The Putative Class Satisfies Each Prerequisite of Rule 23(a)</u>.

Rule 23(a) sets forth the following prerequisites to class certification:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Weiss v. York Hosp.,* 745 F.2d 786, 807 (3d Cir. 1984); *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 246 & n.7 (3d Cir. 1975); *Atis v. Freedom Mortg. Corp.,* No. CV 15-3424

(RBK/JS), 2016 WL 7440465, at *5 (D.N.J. Dec. 27, 2016); *Meyer v. CUNA Mutual Group*, 2006 WL 197122, at *15 (W.D. Pa. Jan. 25, 2006).

In addition to the four explicit requirements for class certification, "[i]t has long been held that Rule 23 implicitly requires that prospective plaintiffs propose a class definition that is readily ascertainable based on objective criteria." *Agostino v. Quest Diagnostics, Inc.*, 256 F.R.D. 437, 438 (D.N.J. 2009). Class certification presupposes the existence of an actual class. *White v. Williams*, 208 F.R.D. 123, 129 (D.N.J. 2002). Thus, the class may not be "amorphous, vague, or indeterminate," but rather, "administratively feasible to determine whether a given individual is a member of the class." *Id.* (citations omitted).

Based on the pleadings and record evidence, Plaintiffs meet this implicit requirement as well as the four threshold requirements of Rule 23(a).

### i. The Members of the Putative Class Are Ascertainable.

A class definition must be "precise, objective, and presently ascertainable." *Manual for Complex Litigation*, Fourth S21.222 at 305 (2005). The Third Circuit has stated that the class must be either identifiable from the Defendant's records, or ascertainable by some other reliable, administratively feasible, method. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594 (3d Cir. 2012). The named Plaintiffs have proposed a class of all HHPs who worked for Defendants in New Jersey during at least one workweek from January 2016, six years prior to the date the Complaint was filed, through the present time. Further, Plaintiffs' proposed class definition, which covers a putative class of ***at least*** 43 individuals who worked as HHPs for Defendants, satisfies this requirement. The members of this class should be easily ascertainable from Defendants' records. Accordingly, the Court should find that the proposed class is ascertainable. *See Carr,* 2019 WL 2027299, at *10 ("Determining here whether a particular individual 'worked ... in' a particular state

as specified in the class definitions is 'readily ascertainable based on objective criteria,' because distributors work out of specified warehouses and within fixed geographic areas, which are documented clearly in Flowers' records.").

### ii. Numerosity

For a class action to be appropriate, the proposed class must be so numerous that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This Court can make a commonsense determination as to whether it would be difficult or inconvenient to join all class members as named parties under the particular circumstances of a case. *Arch v. Am. Tobacco Co.*, 175 F.R.D. 469, 476 (E.D. Pa. 1997); *see* H. Newberg & A. Conte, *Newberg on Class Actions*, § 3.05, at 3-25 (1992) ("In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone."). "In the Third Circuit, a plaintiff who demonstrates that the potential number of plaintiffs exceeds 40 satisfies the numerosity requirement." *Troncone v. Velahos,* No. CIV. 10-2961 RBK/AMD, 2012 WL 3018061, at *4 (D.N.J. July 23, 2012) (quoting *Stewart v. Abraham,* 275 F.3d 220 (3d Cir.2001) (citing 5 James Wm. Moore et al., Moore's Federal Practice § 23.22[3] [a] (3d ed.1999))).

Here, although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, Defendants have identified at least 43 putative Class Members, who worked for Defendants in the ***three (3) years*** prior to the date of the Order granting conditional certification alone.[6] *See* Defendants' List of Potential Opt-In Plaintiffs As Ordered by March 17, 2023 Order on Conditional Certification, attached as **EXHIBIT B**. Accordingly, the numerosity requirement is satisfied.

---

[6] This number will only increase to account for the longer six-year statute of limitations applicable to Plaintiffs' claims under New Jersey law.

### iii. __Commonality__

To maintain a class action, there must be "questions of law __or__ fact common to the class." Fed. R. Civ. P. 23(a)(2) (emphasis added). The commonality "bar is not a high one," *Rodriguez v. National City Bank*, 726 F.3d 372, 382 (3d Cir. 2013), and "is easily met." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); *see also Prudential II*, 148 F.3d at 310; *Weiss*, 745 F.2d at 808-09; *see also Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 924 (3d Cir. 1992); *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986) (The threshold for satisfying commonality is low.). Commonality "does not require perfect identity of questions of law or fact among all class members." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015); *In re Chiang*, 385 F.3d 256, 265 (3d Cir. 2004). . Since "'even a single common question will do,'" *id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)), commonality is satisfied if "'plaintiffs share at least one question of fact or law with the grievances of the prospective class.'" *Id.* (quoting *Rodriguez*, 726 F.3d at 382).Here, the commonality requirement is satisfied because Plaintiffs' pursuit of unpaid wages and overtime premiums is based on the same evidentiary record and legal principles as the claims of other putative Class Members, who were also classified as independent contractors and subject to the same payroll policies. *See generally* ECF No. 36-7 (Composite Declarations). Specifically, Class Members: (1) are/were compensated solely by a fixed day rate; (2) routinely worked hours over forty in a single workweek; (3) are/were classified as independent contractors; (4) were not paid overtime for all hours worked over 40 in a workweek; and (5) were not paid at least the New Jersey minimum wage compensation when their regular rate fell below the mandatory rate for each hour/week worked during their employment. *Id.*

Plaintiffs' Complaint, as well as the proposed Amended Complaint, also list, specifically, the common issues implicated by their claims. *See* ECF No. 1 (Complaint), at ¶114; ECF No. 127-1

(Proposed Amended Complaint), at ¶119. Courts within the Third Circuit and the Third Circuit itself have routinely found such allegations to be "common" for purposes of class certification. *See, e.g., Hargrove v. Sleepy's LLC*, No. 22-2040, 2023 WL 3943738, at *2 (3d Cir. June 12, 2023) ("The ABC test often turns on evidence of an employer's policies and practices, and so often presents a common issue."), citing *Williams v. Jani-King of Phila., Inc.*, 837 F.3d 314, 321 (3d Cir. 2016) (employer's control was common issue); *Hall v. Accolade, Inc.,* 2020 WL 1477688, at *5 (E.D. Pa. Mar. 25, 2020) ("the core disputed issue is whether [defendant] (mis)classified every single class member  as overtime-exempt … This creates a common legal issue: whether the exemption was proper under the PMWA."); *Atis v. Freedom Mortg. Corp.,* No. CV 15-3424 (RBK/JS), 2016 WL 7440465, at *6 (D.N.J. Dec. 27, 2016) (class certification granted where assistant vice presidents of sales held the same job title, had overwhelmingly the same the job responsibilities, and proving misclassification would require evidence common to the class as opposed to individualized proofs). Thus, the numerous common questions alleged in Plaintiff's Complaint easily satisfy the commonality requirement of Rule 23(a)(2).

### iv.  Typicality

The typicality requirement of Rule 23(a)(3) ensures that the named plaintiff's claims and those of the class are sufficiently interrelated that their interests will be aligned. *Beck v. Maximus, Inc.*, 457 F.3d 291, 295–96 (3d Cir. 2006). The requirement is "intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 631 (3d Cir. 1996). When the named plaintiffs challenge the same unlawful conduct that affects the putative class, the requirement is usually met "irrespective of the varying fact patterns underlying the individual claims." *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994).

Here, the typicality requirement is clearly met. Plaintiffs challenge Defendants' uniform failure to pay its Home Host Providers proper minimum wages and overtime premiums. Both John and Vivan Hagans and all of the putative class members were allegedly harmed by Defendants' policies whereby they misclassified them as independent contractors and thus failed to pay them the legally mandated wages due under New Jesey law. All of these claims are interrelated and will rely largely on the same legal theory: that the workers were employees under the NJWHL and were therefore entitled to at least minimum wage and proper overtime pay rates for the overtime hours they worked. The individual facts of each worker's activities and experiences do not destroy typicality. *See id.*; *compare Williams v. Sweet Home Healthcare, LLC*, 325 F.R.D. 113, 121 (E.D. Pa. 2018) (granting class certification of home health aides who contended that they were misclassified as independent contractors and denied overtime pay under nearly identical facts).

### v. Adequacy of Representation

The fourth and final prerequisite of Rule 23(a) is that "the representative parties . . . fairly and adequately protect the interests of the class." The Third Circuit has confirmed that "[a]dequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Hoxworth*, 980 F.2d at 923 (quoting *Weiss*, 745 F.2d at 811; internal quotation marks omitted); *see also Meyer*, 2006 WL 197122, at *19; *Wetzel*, 508 F.2d at 247. This dual analysis "tests the qualifications of class counsel and the class representatives. It also aims to root out conflicts of interest within the class to ensure that all class members are fairly and adequately represented in negotiations." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.2d 410, 428 (3d Cir. 2016).

Here, adequacy is satisfied. Class Counsel has substantial experience litigating similar

class/collective actions in the employee rights arena, particularly those alleging wage and hour violations pursuant to federal and state law. *See generally*, Declaration of Andrew R. Frisch ("Frisch Decl."), attached as **EXHIBIT C**.

Moreover, there are no conflicts of interest or other antagonisms between Plaintiff, on the one hand, and Class Members, on the other. All Class Members are current or former HHPs of Defendants who seek full and proper payment of their minimum wages and overtime premiums. All Class Members are current or former Mentor/Sevita HHPs who were impacted by the alleged employment practices at issue in an identical manner and, therefore, they have a mutual incentive to establish the alleged violations of the NJWHL and NJWPL. The named Plaintiffs have the same incentive as all Class Members to recover their minimum wages and overtime premiums allegedly owed.

Thus, the adequacy requirement of Rule 23(a)(4) is satisfied, here.

### c.  <u>The Putative Class Satisfies Each Prerequisite of Rule 23(b)(3).</u>

Rule 23(b) provides for three different categories of class action and sets forth the requirements for maintaining a class action. When seeking class certification, the plaintiff also bears the burden of proving that the action falls within one of the categories of Rule 23(b). *Baby Neal v. Casey,* 43 F.3d 48 (3d Cir.1994) (citing *Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239 (3d Cir.), *cert. denied,* 421 U.S. 1011 (1975)). As relevant to this case, Rule 23(b) provides in pertinent part:

> (a)      **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and, in addition:
>
>         * * * *
>
> (3)            the court finds that the questions of law or fact common to the members of the class predominate over any issues affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Here, Plaintiffs are seeking certification of their NJWHL and NJMWL subminimum wage and overtime claims under Rule 23 (b)(3). As such, they will demonstrate that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for the fair and These requirements are satisfied here.

> **i.    Common Questions Of Law And Fact Predominate Over Questions Affecting Only Individual Members Of The Class.**

In *Amchem*, the Supreme Court noted that the Rule 23(b)(3) predominance inquiry tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." 7A Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure*, §1777 (2d ed. 1986).

The Supreme Court summarized the predominance test as follows:

> The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal citations omitted). "To meet this requirement, it suffices to show 'that the plaintiffs' claims are capable of common proof at trial.'" *Hargrove*, 2023 WL 3943738, at *2 (quoting *In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 191 (3d Cir. 2020)).

Here, predominance is satisfied because, as discussed with respect to commonality,

Plaintiffs' pursuit of unpaid overtime wages is based on the same evidentiary record and legal principles as the claims of other Class Members.  Specifically, all members of the putative class are unified by common facts – that all HHPs were classified as independent contractors despite Defendants' exercising substantial control over every aspect of their work, and were not paid at least the New Jersey minimum wage compensation when their regular rate fell below the mandatory rate for each hour/week worked or overtime premiums for hours worked over forty in a workweek.  *See generally* ECF No. 36-7. These allegations of a common course of conduct "provide[] the 'single central issue'" required to ensure predomination of common questions over individual issues. *In re Prudential Ins. Sales Practice Litig.*, 962 F. Supp. 450, 511-512 n.45 (D.N.J. 1997) ("*Prudential I*") (collecting cases); *see also Rivet v. Off. Depot, Inc.,* 207 F. Supp. 3d 417, 432 (D.N.J. 2016) ("Here, the common traits and experiences held by ASMs vastly predominate over the minute and largely inconsequential differences relied upon by Office Depot."); *Doe v. Banc, Jack & Joe, LLC,* No. 17CV03843KSHCLW, 2020 WL 2832621, at *12 (D.N.J. June 1, 2020) (finding defendant's policy of classifying exotic dancers as independent contractors rather than employees, and the rules related to that practice, predominated over questions affecting individual members of class and could be proven on a class-wide basis);*Carr v. Flowers Foods, Inc.,* No. CV 15-6391, 2019 WL 2027299, at *20 (E.D. Pa. May 7, 2019) (finding predominance satisfied where distributors could rely on common evidence to prove essential elements of ABC Test and NJWHL overtime claims); *Hargrove v. Sleepy's LLC*, 2023 WL 3943738 at *2-3 (finding predominance in overtime lawsuit challenging common classifications of employees as independent contractors); *see also Troncone v. Velahos,* No. CIV. 10-2961 RBK/AMD, 2013 WL 1222630, at *6 (D.N.J. Mar. 25, 2013) (despite the fact that individual class member worked different hours and received a different amount of pay, predominance satisfied where court found plaintiffs would rely on common proof

not only to establish their prima facie case, but also to establish Defendant's liability through its alleged policy of not paying minimum wage and overtime premiums to class members, as required by the NJWHL).

> ii.   **A Class Action Is The Superior Method To Adjudicate The Claims At Issue.**

"In determining whether a class action is the superior form of handling a case, a court must 'balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication.'" *Id.* (quoting *Georgine v. Amchem Prods.,* 83 F.3d 610, 632 (3d Cir.1996)). Thus, Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

Fed. R. Civ. P. 23(b)(3). All four of these factors support certification, here.

> a.   **Most Class Members Have Insufficient Interest To Justify Individual Lawsuits**

Certification permits a class-wide adjudication of the claims of similarly situated claimants when individual prosecution would not be cost-effective. The Supreme Court has frequently noted the need for aggregate representation through certification if such claims are to be addressed. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). This clear theme in Supreme Court jurisprudence was reiterated in *Amchem*, wherein the Court stated:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this

> problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem*, 521 U.S. at 617 (further citation omitted).

Here, most, if not all, of the putative class members worked for Defendants prior to January 2016, and many continue to work for Defendants through the present time. Thus, class certification would serve to overcome not only the problem of small recoveries for those HHPs who have not worked for the duration of the class period, but also the concern by those HHPs who would not be inclined to pursue individual claims for fear of retaliation, but who would participate in litigation on a class-wide basis. *See Torres v. Gristede's Operating Corp.,* No. 04 CIV. 3316 (PAC), 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (quoting *Scott v. Aetna Servs., Inc.,* 210 F.R.D. 261, 268 (D. Conn 2002)) ("In addition, since some class members are still employees of Defendants', class members may fear reprisal and would not be inclined to pursue individual claims."). The class action mechanism is also likely to increase judicial efficiency and permit putative class members to litigate their claims in a cost-effective manner. Thus, on balance, this factor weighs in favor of class certification.

### b. The Extent And Nature Of Other Pending Class Actions Does Not Present Any Impediment To Certification.

Rule 23(b)(3)(B) requires courts to consider "the extent and nature of any litigation concerning the controversy already begun by" class members. Plaintiffs are unaware of any individual who is interested in "controlling the prosecution ... of separate actions" or of any other pending overtime lawsuits against Defendants by putative class members. Therefore, this factor supports settlement class certification.

### c. This Court Is The Appropriate Forum To Resolve The Claims At Issue

Rule 23(b)(3)(C) requires courts to consider the desirability of "concentrating the litigation

of the claims in a particular forum." Fed. R. Civ. P. 23(b)(3)(C). Here, a class action is far superior to litigating hundreds of individual claims without a class-wide liability inquiry. Numerous individual actions would waste judicial resources and create the danger of conflicting outcomes. Where, as here, there are questions of law and fact common to all employees of the class, it is more efficient to litigate the claims in one forum. *Torres,* 2006 WL 2819730, at *16 ("Given the question of law and fact common to class members, litigating in a common forum provides efficiency and a more suitable use of system resources than individual actions.") concentrationof all claims in this Court is desirable because Defendants operate within this District, and the Class Members worked/work in this judicial district. Thus, there is no question that this Court is the appropriate forum to resolve the claims at issue on a class-wide basis.

### d.    Manageability

Rule 23(b)(3)(D) requires the court to consider any "likely difficulties in managing the class action." Fed. R. Civ. P. 23(b)(3)(D). In sum, as discussed above, the Court "will likely be able to . . . certify the class."  Fed. R. Civ. P. 23(e)(1)(B)(ii).

Because on balance, three out of four superiority factors favor class certification, the superiority prong is satisfied, here.

### III.    CONCLUSION

Based on the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion and enter the attached, proposed Order.

Dated this 14th day of May 2024.

Respectfully submitted,
**MORGAN & MORGAN, P.A.**

By:    */s/ Andrew R. Frisch*
ANDREW R. FRISCH

FL Bar No.: 27777
8151 Peters Road, Suite 4000
Plantation, Florida 33324
Tel: 954 WORKERS
Fax: 954-327-3013
E-Mail: afrisch@forthepeople.com


*Trial Counsel for Plaintiff*

## <u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served via E-mail and U.S. Mail on this 14th day of May, 2024, to Monica T. Nugent, Esq., nugentm@ballardspahr.com, and Shannon D. Farmer, Esq., FarmerS@ballardspahr.com, Ballard Spahr, LLP, 700 East Gate Drive, Suite 330, Mount Laurel, NJ 08054-0015.

_/s/ **Andrew R. Frisch**_____
Andrew R. Frisch
MORGAN & MORGAN, P.A.
8151 Peters Road, Suite 4000
Plantation, Florida 33324
Telephone: (954) WORKERS
Facsimile: (954) 327-3013
E-mail: AFrisch@forthepeople.com
*Counsel for Plaintiffs*