# EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

### CIVIL ACTION NO: 1:22-cv-00128-KMW-SAK

JOHN HAGANS and VIVIAN
HAGANS, individually and on behalf of
all others similarly situated,

       Plaintiffs,

vs.

NATIONAL MENTOR HEALTHCARE,
INC., and NATIONAL MENTOR
HEALTHCARE, LLC,

       Defendants.

_____/

JURY TRIAL DEMANDED

Class and Collective Action

### SETTLEMENT AGREEMENT AND RELEASE

1.　　This Settlement Agreement and Release ("Settlement Agreement") is entered into between Plaintiffs John Hagans and Vivian Hagans ("Plaintiffs"), and Releasees (as defined below) and Defendants National Mentor Healthcare, Inc. and National Mentor Healthcare, LLC ("Defendants" or "NMH") (Plaintiffs and Defendants together, the "Parties").

#### RECITALS

2.　　Plaintiffs assert that NMH failed to pay proper minimum wages and overtime wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. and state laws related to the payment of wages arising from work Plaintiffs performed between January 11, 2019, and September 9, 2025 (the "Claims").

3.　　Plaintiffs filed suit against Defendants to recover for these claims on behalf of themselves and others who performed services as Host Home Providers for NMH in the above-captioned lawsuit (the "Lawsuit").

4.　　Releasees denied and continue to deny any liability associated with any and all of Plaintiffs' claims alleged in the Complaint and assert that Releasees complied at all times with all applicable state and federal laws. Releasees further assert that in good faith, Releasees relied on New Jersey law creating the program under which Plaintiffs hosted clients in their homes and what they believed to be relevant sections of the IRS code to determine that the 1099 treatment and payment to Plaintiffs complied with applicable laws, including wage and hour laws. Further, Releasees maintain that their classification of payments to Plaintiffs were correctly categorized as non-employee payments.  Therefore, Releasees assert that they have

numerous and complete legal and factual defenses against all claims asserted in the Lawsuit. Releasees assert that they acted in good faith at all times to ensure compliance with its legal obligations arising from the Host Home Provider programs, and therefore have no liability whatsoever under the FLSA and/or related state wage and hour laws for liquidated damages or penalties.

5.      After three and a half years of litigation, the Parties met and conferred and agreed to a stay of the Litigation in order to engage in an alternative dispute resolution ("ADR") process -- including additional informal discovery regarding pay and attendance data pertaining to all allegedly similarly situated workers -- and mediation, to attempt to resolve the claims alleged in the Lawsuit.

6.      Plaintiffs' Counsel conducted their own analysis of Defendants' pay and attendance data that was produced as part of the ADR process and conferred with Defendants concerning the data produced and related issues prior to engaging in mediation.

7.      On August 1, 2025, the Parties engaged in mediation overseen by an experienced wage and hour mediator, Hon. Thomas J. Rueter (Ret.).  Negotiations continued in the weeks thereafter and as a result of the arm's length negotiations process and with the assistance of the mediator, the Parties reached a settlement in principle on September 9, 2025.

8.      Though Releasees maintain denials to the allegations, they have concluded that in consideration of the costs, risks, and burdens of litigation, Releasees are willing to agree to the terms and conditions set forth in this Settlement Agreement. Neither this Settlement Agreement, nor any document referred to herein, nor any action taken to carry out this Settlement Agreement, may be used in any way as an admission, concession, or indication by or against Releasees of any fault, wrongdoing, or liability whatsoever.

9.      As a result of the Parties' arm's-length negotiations, the Parties have agreed to settle the Claims according to the terms of this Settlement Agreement.  Pursuant to the FLSA and relevant New Jersey law, the Court's approval of the settlement is required to effectuate the terms and conditions set forth in this Settlement Agreement, and the settlement will not become operative until the Court grants approval of it, the settlement becomes final, and the Effective Date as defined below is reached.

10.     The Parties have made a thorough and independent investigation of the facts and law relating to the allegations in the Claims. In entering into this Settlement Agreement, the Parties have considered: (a) the facts developed during discovery and the law applicable thereto; (b) the attendant risks of continued litigation and the uncertainty of the outcome of the claims alleged; and (c) the desirability of consummating this settlement according to the terms of this Settlement Agreement. The Parties have each concluded that the terms of this Settlement Agreement are fair, reasonable and adequate, and that it is in their best interests to settle the Claims pursuant to the terms set forth herein.

11.     The Parties acknowledge they have been represented by competent counsel throughout the negotiation of this Settlement Agreement and the Lawsuit.

12. In consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each party to the other, IT IS HEREBY AGREED, by and between the undersigned, subject to the conditions set forth herein, that Plaintiffs and the Class's Released Claims (as defined below) shall be finally and fully compromised, settled, and dismissed as to Releasees, in the manner and upon the terms and conditions set forth below.

DEFINITIONS

13. **Definitions**. The following terms used in this Settlement Agreement shall have the meanings ascribed to them below:

a. "Action" means the above-captioned Lawsuit.

b. "Administration Costs" means the reasonable fees and costs, if any, incurred by the Claims Administrator in administering this settlement, which shall include but not be limited to all fees and costs relating to the mailings described in this Settlement Agreement; reproducing the Notice of Class Action Settlement (the "Notice"); postage to send the Notice; tracking submitted Exclusion Letters; notifying the Parties of timely and untimely Exclusion Letters and objections; determining the validity of Exclusion Letters; and other fees reasonably incurred by the Claims Administrator and approved by the Parties. All Administration Costs shall be paid from the Gross Settlement Amount, as defined herein.

c. "Claims Administrator" refers to the third-party administrator, to be selected by the Plaintiffs, if they so elect, with the consent of Defendants which will perform the following duties: (i) mailing and re-mailing if need be the Notice to Class Members; (ii) mailing notices to respective authorities as required under the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. §§ 1332, 1453, 1711-15; (iii) tracking submitted Exclusion Letters and advising Class Counsel and Defense Counsel of same; (iv) notifying the Parties of timely and untimely Exclusion Letters; and (v) tracking Exclusion Letters mailed to the Administrator and determining validity of same.

d. "Claimants" means, collectively, the Class Representatives, the FLSA Collective, and the Rule 23 Class.

e. "Class Representatives" means Plaintiffs John Hagans and Vivian Hagans.

f. "Class Period" means the time period between January 11, 2019 and September 9, 2025.

g. "FLSA Collective" means those FLSA Collective members who have consented to join this settlement previously by filing their Consent to Join in the docket.

h. "Plaintiffs' Counsel" or "Class Counsel" means MORGAN & MORGAN, P.A.

Concord - Document ID: 032MxIO6aVNawgz5HbyKeN                    3-15

i.     "Putative Rule 23 Class" means those Host Home Providers, contracted with the New Jersey Department of Human Services ("NJDHS"), who provided services to NMH's clients in New Jersey, between January 11, 2019 and September 9, 2025.

j.     "Releasees' Counsel" means BALLARD SPAHR LLP.

k.     "Releasees" means National Mentor Healthcare, Inc. and National Mentor Healthcare, LLC and their past, present, and future parent companies, subsidiaries, predecessors, divisions, employees, owners, members, officers, directors, investors, legal representatives, accountants, trustees, executors, administrators, predecessors, successors, employees, attorneys, and insurers. Releasees does ***not*** include the State of New Jersey or the State of New Jersey Department of Human Services, or any related State entity and nothing herein is intended to waive any claims against such entities in whole or in part.

l.     "Rule 23 Class" means those Putative Rule 23 Class members who do not opt-out of this settlement.

m.     "Service Award" means the amount the Parties propose be paid to the Plaintiffs as a service award in recognition for serving as proposed Class Representatives in this Lawsuit.

n.     "Settlement Award" means the amounts the Parties propose be paid to each member of the Rule 23 Class pursuant to this Settlement Agreement.

### RELEASE

14.    **Release**. Upon the Effective Date, in consideration of the benefits received under this Settlement Agreement, the Claimants and the Rule 23 Class members release the Releasees under this Settlement Agreement as follows:

a.    The Class Representatives, the FLSA Collective members who cash their settlement checks as described below, the Rule 23 Class members, who cash their settlement checks as described below shall be deemed to have released and forever discharged Releasees from all claims, demands, rules or regulations, or any other causes of action of whatever nature, whether known or unknown, arising regarding only the following claims:

i.     All claims for unpaid wages, including but not limited to regular, minimum wages, and overtime wages in accordance with state or federal law, related to the timekeeping, or hours worked, or services performed, through September 9, 2025;

ii.    All claims for liquidated and/or penalty damages under the FLSA and/or any other applicable wage and hour law, related to the timekeeping or hours worked, including under New Jersey state law;

Concord - Document ID: 032MxIO6aVNawgz5HbyKeN       4-15

iii.    All claims for conversion, breach of contract, quantum meruit, unjust enrichment, theft of labor, or other common law cause of action related to any alleged failure to pay for work performed or to be performed;

iv.    All claims for attorneys' fees;

v.    All related claims for interest.

### SETTLEMENT IMPLEMENTATION

15.    **Approval of Settlement.** Within 14 calendar days of the execution of this Settlement Agreement, Plaintiffs shall file an Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement, submit this Settlement Agreement, and request a determination by the Court as to the settlement's fairness, adequacy, and reasonableness. Releasees may join in the motion, but shall not oppose a motion made under this section unless any provision is inconsistent with this Settlement Agreement.

a.    In the event that the Court does not require Plaintiffs to secure approval of the Settlement Agreement, Plaintiffs will move for, or the Parties shall stipulate to, the dismissal with prejudice of the Action.

b.    Plaintiffs' Counsel and Defendants' Counsel shall cooperate to secure the approval and dismissal with prejudice of the Action.

16.    **Stipulation for Certification**.

a.    The Parties stipulate, for settlement purposes only, to the following:

i.    The certification of the Putative Rule 23 Class, as defined above, pursuant to Federal Rule of Civil Procedure 23;

ii.    The appointment of the Class Representatives as class representatives of the Putative Rule 23 Class; and

iii.    The appointment of Plaintiffs' Counsel as Class Counsel.

b.    If the settlement is not approved, Releasees' stipulation pursuant to this paragraph shall be null and void, and may not be used or relied upon by Claimants for any purpose whatsoever in this Action, or any other judicial, administrative, or arbitral proceeding.

17.    **Effective Date**. The settlement shall become effective the first business day following the date on which all the following events have occurred:

a.    This Settlement Agreement has been executed by the Class Representatives and Releasees;

b.    The Court has preliminarily approved the settlement;

    c.  The Notice has been sent to the Putative Rule 23 Class Members;

    d.  The Court has entered a final order approving the Settlement and dismissing the Lawsuit; and

    e.  The later of:

        i.  If no objections are received, the day after the Court enters its Final Order of approval;

        ii.  If one or more objections are filed, but no appeal is filed, the expiration date of the time for the filing of a valid appeal from the Final Order; or

        iii.  If a timely appeal from the Final Order is filed, the day after the final resolution of the appeal (including any requests for rehearing and petitions for writ of certiorari) or the expiration of any time period for any further appeal or judicial review, resulting in the final judicial approval of this Settlement.

**18.** **Notice of Class Action Settlement**

    a.  Within fourteen (14) calendar days after entry of the Preliminary Approval Order, Releasees shall provide the Claims Administrator with a list, in electronic format, of the names, and last known physical addresses, email addresses, and phone numbers of all Putative Rule 23 Class Members ("Class List"), so that the Claims Administrator can engage in the processing and mailing of the Notices to all Putative Rule 23 Class members. A copy of the list shall be provided to Plaintiffs' Counsel solely for the purposes directly related to effectuating the settlement—for example, responding to inquiries made by any Putative Rule 23 Class member.

        The Claims Administrator will use all standard skip tracing devices to verify the accuracy of all physical addresses in the Class List before the initial mailing date to ensure to the extent reasonably practicable that the Notices are sent to all Putative Rule 23 Class Members at the physical addresses most likely to result in receipt of the Notice. It will be conclusively presumed that if an envelope so mailed has not been returned within 30 days of the mailing that the Putative Rule 23 Class Member received the Notice. With respect to returned envelopes, the Claims Administrator will use reasonable diligence to obtain a current address and re-mail the envelope to such address within 10 days of the receipt of the returned envelope. With respect to returned envelopes, the Notice shall be deemed received once it is mailed for the second time.

    b.  Within 10 days of receipt of the Class List, the Claims Administrator shall send to all Putative Rule 23 Class Members by first class mail the Notice in substantially the form of Exhibit B. On the date of mailing the Notices, the Claims Administrator shall certify in writing to counsel for the Parties that such mailing has been made and the date of such certification shall be the date of first mailing

Concord - Document ID: 032MxIO6aVNawgz5HbyKeN    6-15

of the Notices to the Putative Rule 23 Class Members. The Claims Administrator will not send any reminder notices to Putative Rule 23 Class Members about the exclusion process.

c.  Putative Rule 23 Class Members will have 45 days from the date of first mailing of the Notice to the Putative Rule 23 Class Members to exclude themselves from the Rule 23 Class by submitting an Exclusion Letter to the Claims Administrator. The Claims Administrator shall promptly deliver to Plaintiffs' Counsel and to Defense Counsel a copy of each Exclusion Letter submitted by a Putative Rule 23 Class Member opting out of the Rule 23 Class and shall promptly upon expiration of 45 days from the date of first mailing of the Notice deliver a list to Plaintiffs' Counsel and to Defense Counsel identifying all individuals who have timely submitted an Exclusion Letter. Any member of the Putative Rule 23 Class who does not timely opt-out of the Rule 23 Class by submitting an Exclusion Letter within 45 days after the date of first mailing of the Notice to the Putative Rule 23 Class Members, shall be a member of the Rule 23 Class and shall, as of the Effective Date, be deemed to release all claims described in paragraph 14.

d.  All fees and costs relating to sending the Notice shall be paid by the Claims Administrator as part of its fees and costs, which will be paid from the Gross Settlement Amount, as defined herein.

19.  **Exclusion from Settlement**. Putative Rule 23 Class Members who submit timely Exclusion Letters are not bound by or subject to this settlement. No Exclusion Letter will be honored if postmarked after the 45-day period.

a.  Each Exclusion Letter must include the following, unless otherwise mutually agreed upon by the Parties for good cause:

i.  The name and case number of this lawsuit (*Hagans v. National Mentor Healthcare, Inc., et al.*, Case No. 1:22-CV-00128);

ii.  the Putative Rule 23 Class Member's full name, mailing address, email address, and telephone number;

iii.  An explanation of why the Putative Rule 23 Class Member believes they are a Rule 23 Class Member;

iv.  The words "Notification of Exclusion," or other statement that the Putative Rule 23 Class Member wants to be excluded from the settlement; and

v.  The Putative Rule 23 Class Member's handwritten or electronically imaged written (e.g., "DocuSign") signature. An attorney's signature, or a typed signature, is not sufficient.

b.  "Mass" or "class" opt-outs made on behalf of multiple persons or classes of persons will be deemed invalid.

c. Putative Rule 23 Class Members are responsible for retaining a photocopy of the Exclusion Letter and record of proof of mailing.

d. Plaintiffs' Counsel shall file all completed Exclusion Letters with the Court no later than 14 calendar days prior to the final fairness hearing. Unless a timely and valid Exclusion Letter is filed consistent with the terms of this Agreement, the Putative Rule 23 Class Member shall be bound by this Agreement and the Released Claims in paragraph 14.

20.    **Objections**. Rule 23 Class members who wish to object to the settlement must file with the Court, no later than the Objection Deadline, a notice of objection, signed by the Rule 23 Class member or their counsel.

a. The notice of objection must state:

    i.    The Rule 23 Class Member's full name;

    ii.    The Rule 23 Class Member's current mailing and email addresses;

    iii.    The Rule 23 Class Member's current telephone number;

    iv.    The Rule 23 Class Member's dates of employment with Releasees during the Class Period;

    v.    The basis for any objection;

    vi.    The names and cause numbers of any class action settlement the Rule 23 Class Member objected to previously;

    vii.    Whether the Rule 23 Class Member intends to personally appear or testify at the final approval hearing; and

    viii.    The name and contact information of any attorney representing the Rule 23 Class Member.

b. The objecting Rule 23 Class Member must serve a copy of their notice of objection on Plaintiffs' Counsel and Defense Counsel by the Objection Deadline. The date of filing and the postmark date of service of the notice of objection shall be deemed the exclusive means for determining whether the notice of objection is timely. Rule 23 Class Members who fail to make objections in the manner specified above, as set forth in the Court-approved Notice, shall be deemed to have waived any objections and shall be foreclosed from making any objections (whether by appeal or otherwise) to the settlement.

c. Rule 23 Class Members who file and serve timely notices of objection will have the right to appear at the Court's hearing regarding final approval of the settlement, in order to have their objections heard by the Court. At no time shall any of the Parties seek to solicit or otherwise encourage Rule 23 Class Members to submit written

objections to the settlement or appeal from the Court's Final Order. The Class Representative shall instruct Plaintiffs' Counsel not to represent any Class Members with respect to any objection to this settlement.

19. **Final Approval Hearing.** Following the notice process set forth above, and two weeks prior to the Final Approval Hearing or at such other time as is ordered by the Court, Plaintiff shall file a Motion for Final Approval of Settlement Agreement, to request the issuance of a Final Approval Order, among other things:

> a. Reaffirming the Collective and Class as an FLSA collective action under 29 U.S.C. § 216(b) and as a class action under FED. R. CIV. P. 23(a) and (b)(3) for purposes of settlement only;

> b. finding that the Claims Administrator's dissemination of the Notice was accomplished as directed and met the requirements of due process;

> c. finally approving the settlement and its terms as fair, reasonable and adequate and as a fair and reasonable resolution of a bona fide dispute;

> d. directing that the settlement funds be distributed in accordance with the terms of this Settlement Agreement; and

> e. directing that the Lawsuit be dismissed and judgment entered consistent with the terms set forth herein. No person who opts out shall have the right to object.

SETTLEMENT FUNDS AND AWARD CALCULATION

20. **Gross Settlement Amount.**

a. **Gross Settlement Amount**. The total common fund settlement amount is $2,300,000.00 ("Gross Settlement Amount"). The Gross Settlement Amount shall include all amounts payable to Claimants, all Service Awards due hereunder, all attorneys' fees and costs/expenses due to Class Counsel, and all amounts payable to the Claims Administrator selected by the Parties.

b. **Funding of Settlement**. No later than 14 days after the Final Approval Order, Releasees shall cause to be deposited, the Gross Settlement Amount into an interest-bearing escrow account designated as a Qualified Settlement Fund pursuant to the Internal Revenue Code (the "QSF") and under the control of the Claims Administrator. The Claims Administrator shall establish the QSF within three (3) business days after the issuance of the Final Approval Order by the Court. The Claims Administrator shall be the only entity authorized to make withdrawals

or payments from the QSF. The Claims Administrator shall be responsible for establishing, administering, and otherwise operating the QSF, including preparing and filing federal and state tax returns with applicable government tax authorities, and remitting tax withholdings to the applicable government tax authorities.

Within 14 days after the Effective Date, the Claims Administrator, based on the data provided by Defendants as set forth herein, will provide Class Counsel and Defendants' Counsel with an Excel spreadsheet listing the names of all Claimants and their Settlement Payment amount.

      i.    If a Final Approval Order entered by the Court is set aside by a later order of the Court or an appellate court, the principal and interest in the QSF (the amount deposited plus interest, less any notice and administration costs that have been incurred) shall be returned to Releasees within 14 days of the entry of the Order, unless otherwise agreed in writing by the Parties.

21.    **Process for Issuing Settlement Checks to Class Members.** Within 21 days of the date on which Releasees fund the settlement per Paragraph 210.b., the Parties shall instruct the Claims Administrator to issue checks to Claimants via USPS mail to each Claimant's last known mailing address in the amounts designated by the Parties, including the Service Awards for the Class Representatives.

The checks mailed to each Claimant shall contain, in plain English, a statement that if the Claimant cashes their check, they will be releasing the claims described in paragraph 14, that they agree to be bound by this Settlement Agreement, and consent to be a party-plaintiff in the Lawsuit under the FLSA and/or applicable state law.

    a.    Within 45 days after the initial mailing of checks, the Claims Administrator shall mail a reminder postcard to all Claimants who have not cashed their checks within 30 days after the mailing of checks. For any Claimant that has not cashed their check within 60 days after the mailing of checks, the Claims Administrator will attempt to confirm the accuracy of their address and, if practicable for the amount of the check, perform a skip-trace of the Claimant and reissue a check, if warranted by the results of the skip trace.

    b.    Each check shall be valid for 180 days after issuance. In the event that a check expires, the Claimant may request, at any time within the following 90 days, that a replacement check be issued. Within 21 days of a request for reissuance, a check for the amount of the expired check shall be issued to the requesting Claimant, which shall be valid for at least 90 days after issuance.

22.    **Treatment of Settlement Awards**. The Settlement Award for each Rule 23 Class Member will by treated as 50% wages, for which a W-2 shall issue, and 50% liquidated damages for which a 1099 shall issue. The Claims Administrator will issue to each Claimant an IRS Form W2 and an IRS Form 1099 with respect to the portion of his/her Settlement

Concord - Document ID: 032MxIO6aVNawgz5HbyKeN          10-15

Award, and all settlement payments shall be treated as earned during the year in which the payments are made.

23.    **Employer-Side Taxes to Be Paid Outside the Fund.**  Any taxes that Defendants are required to pay on the W-2 portion of the Settlement Awards shall be borne exclusively by Defendants and shall not be paid out of the QSF.

24.    **Plaintiff's attorneys' fees and costs**.

   a.  Plaintiff and/or Plaintiff's Counsel may petition the Court for an award of attorneys' fees in conjunction with the Parties' settlement in an amount not to exceed 1/3 of the total Gross Settlement Amount, plus reimbursement of their reasonable expenses/costs. Releasees shall not oppose a request for fees and expenses consistent with this paragraph.

   b.  The settlement is not conditioned on approval of Plaintiff's Counsel's attorneys' fees and expenses. To the extent that the attorneys' fees and expenses are not approved by the Court, the amounts of the application that are not approved shall be reallocated for the benefit of the FLSA Collective and Rule 23 Class Members.

   c.  The funds for the payment of approved attorneys' fees and expenses shall be paid to Plaintiffs' Counsel by the Claims Administrator from the QSF on the same date as the settlement checks are mailed to Claimants.

   d.  The attorneys' fees and costs paid by Plaintiffs from the QSF shall constitute full satisfaction of Plaintiffs' obligations to pay amounts to any person, attorney or law firm for attorneys' fees or costs in the Lawsuit on behalf of Plaintiffs, and shall relieve Releasees from any other claims or liability to any other attorney or law firm for any attorneys' fees or costs to which any of them may claim to be entitled on behalf of Plaintiffs or Claimants.

   e.  An IRS Form 1099 shall be provided to Plaintiffs' Counsel by the Claims Administrator for the payments made to Plaintiffs' Counsel from the QSF.

25.    **Settlement Awards**. Claimants shall be paid a Settlement Award from the Gross Settlement Amount. The formula for distribution of the Gross Settlement Amount is set forth in Exhibit A.

26.    **Service Awards**. In exchange for signing a General Release releasing all claims against Releasees, which is set forth below, Plaintiffs will seek approval of a service award not to exceed Ten Thousand Dollars ($10,000.00) to the Class Representatives. This Service Award is in addition to the Class Representatives' individual Settlement Awards. Releasees agree not to object to such application. The Service Awards shall be treated as non-wage penalties and liquidated damages, to be reported on an IRS Form 1099 (box 3), and shall not be subject to FICA and FUTA withholding taxes. The Service Awards shall be paid from the Gross Settlement Amount.

In exchange for payment of a Service Award, Plaintiffs release the Releasees from all claims or disputes made (or that could have been made) under federal, state or local law, common law, statute or regulation, including, but not limited to: (1) any and all wage-and-hour claims of any nature whatsoever, including claims for alleged misclassification, salary basis violations, overtime pay, minimum wages, non-payment of wages, meal or rest periods, paid and unpaid time off, waiting time penalties, unfair business practices, and any other pay practices of any kind, including retaliation; (2) any and all claims of discrimination, harassment or retaliation including, but not limited to, claims for age discrimination under the Age Discrimination in Employment Act ("ADEA"), disability claims, retaliation claims, employee benefits claims; and (3) any claim, dispute, damages, or allegation of any nature whatsoever arising under any federal, state or local common law, regulation, constitution, or statute against any of the Releasees based on facts or circumstances existing up through and including the date of this Agreement. Excluded from this general release are any claims that cannot be waived as a matter of express law, including the right to file a charge with or participate in an investigation conducted by the Equal Employment Opportunity Commission or any equivalent federal, state, or local or fair employment practice agency or government agency; provided, however, that Plaintiffs waive any right to recover any monetary damages or other relief for any claim waived by this general release should any agency pursue a claim on her behalf.

27.    **No claim based upon distributions or payments in accordance with this Settlement Agreement**. No person shall have any claim against Releasees, Plaintiffs, Plaintiffs' Counsel, or Releasees' Counsel based on distributions or payments made in accordance with this Settlement Agreement.

28.    **Reporting by Claims Administrator**.  On a weekly basis, the Claims Administrator shall provide Class Counsel and Releasees' Counsel with a detailed written report and accounting of all settlement-related statistics, including, without limitation, (a) the number of Notices of Settlement mailed; (b) the number of Notices of Settlement returned as undeliverable, and remailed; (c) the number of requests for exclusion received; (d) the number of objections received; and (e) any other pertinent information requested by Class Counsel and/or Releasees' Counsel. The Claims Administrator shall immediately email to Class Counsel and Releasees' Counsel any requests for exclusion and/or objections received, including their postmark date. The Claims Administrator shall prepare declarations at the request of Class Counsel or Releasees' Counsel at any time, including a declaration to be submitted to the Court as an exhibit to Plaintiffs' Motion for Final Approval of Settlement Agreement, setting forth that the Claims Administrator fulfilled its duties under this Agreement. Within 30 days following the date that all settlement checks have ben cashed or expired, the Claims Administrator shall provide a final report to Class Counsel and Releasees' Counsel which will include the following: (i) The total Administration Costs; (ii) The total amount of the cashed and/or deposited settlement checks (the "Claimed Collective Settlement Amount"); (iii) the names of FLSA Collective Members who cashed their Settlement Award; and (iv) the total amount of the Gross Settlement Amount remaining unclaimed in the QSF.

Concord - Document ID: 032MxIO6aVNawgz5HbyKeN                    12-15

29.    **Unclaimed checks**. Any portion of the Gross Settlement Amount that is unclaimed by members of the Settlement Classes shall be paid to Cy Pres, National Employment Law Project (NELP).  No amount of the settlement payments shall revert to Defendants.

MISCELLANEOUS

30.    **Releasees' legal fees**. Releasees' legal fees, costs, and expenses in the Lawsuit shall be borne by Releasees.

31.    **Nullification of the Settlement Agreement**. In the event the settlement does not become final for any reason, this Settlement Agreement shall be null and void, and the Parties shall be returned to their respective statuses as of the date immediately prior to the execution of this Settlement Agreement. If this occurs, the Parties shall proceed in all respects as if the Settlement Agreement had not been executed.  In addition, upon voiding of the Settlement Agreement, the entire Gross Settlement Amount will be returned to Defendants.

31.    **Severability**. If for any reason any term or provision of this Settlement Agreement is held to be invalid or unenforceable to any extent, then (a) such term or provision will be interpreted, construed, or reformed to the extent reasonably required to render the same valid, enforceable, and consistent with the original intent underlying such provision; (b) such term or provision will remain in effect to the extent that it is not invalid or unenforceable; and (c) such invalidity or unenforceability will not affect any other term or provision of this Settlement Agreement except that the paragraphs governing the Releases and Gross Settlement Amount are material terms whose inclusion is essential to this Settlement Agreement. If any part of those paragraphs is held to be invalid or unenforceable to any extent, or if any part is edited or reformed in any way, then this Settlement Agreement shall be invalidated. The Parties agree to cooperate and resolve any such issues as they arise, and to use reasonable, good faith efforts to uphold the settlement reached by the Parties.

32.    **Inadmissibility of Settlement Agreement**. Except for purposes of (a) settling the Lawsuit or (b) enforcing this Agreement, neither this Settlement Agreement, nor its terms, nor any document, statement, proceeding or conduct related to this Settlement Agreement, nor any reports or accounts thereof, shall be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Parties, including, without limitation, evidence of a presumption, concession, indication or admission by any of the Parties of any liability, fault, wrongdoing, omission, concession or damage.

33.    **Computation of time**. For purposes of this Settlement Agreement, if the prescribed time period in which to complete any required or permitted action expires on a Saturday, Sunday, or legal holiday (as defined by Federal Rule of Civil Procedure 6(a)(6)), such time period shall be continued to the following business day.

34.    **Amendment or modification**. This Settlement Agreement may be amended or modified only by a written instrument signed by the Parties or their successors in interest, or by duly authorized counsel for such persons or entities.

35. **Entire Settlement Agreement**. This Settlement Agreement constitutes the entire agreement between the Parties, and no oral or written representations, warranties or inducements have been made to any Party concerning this Settlement Agreement other than the representations, warranties, and covenants contained and memorialized in such documents. All prior or contemporaneous negotiations, memoranda, agreements, understandings, and representations, whether written or oral, are expressly superseded hereby and are of no further force and effect. Each of the Parties acknowledges that, in entering into this Settlement Agreement, they have not relied on any promise, representation or warranty, express or implied, not contained in this Agreement.

36. **Binding on successors and assigns**. This Settlement Agreement shall be binding upon, and inure to the benefit of Class Representatives, Claimants, Releasees, and each of their heirs, beneficiaries, executors, administrators, successors, transferees, successors, or assigns.

37. **Counterparts**. This Settlement Agreement may be executed in one or more counterparts, including by electronic signature, facsimile, or email. All executed counterparts and each of them shall be deemed to be one and the same instrument.

38. **Cooperation and drafting**. The Parties have cooperated in the drafting and preparation of this Settlement Agreement; hence the drafting of this Settlement Agreement shall not be construed against any of the Parties. The Parties agree that the terms and conditions of this Settlement Agreement were negotiated at arm's-length and in good faith by the Parties, and the terms and conditions reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel, or the full and unimpeded opportunity to consult with such legal counsel.

39. **Bona fide dispute**. The Parties agree this Settlement Agreement is a bona fide resolution of disputed claims. Nothing in this Settlement Agreement is a concession that Releasees violated any law.

40. **Captions**. The captions or headings of the sections and paragraphs of this Settlement Agreement have been inserted for convenience of reference only and shall have no effect on the construction or interpretation of any part of this Settlement Agreement.

41. **Authority of Defendants' signatories**. By executing this Settlement Agreement, Defendants represent and warrant that they are in good standing under the laws of their states of formation, and that the person executing this Settlement Agreement on their behalf is fully authorized to bind them. The person executing this Settlement Agreement on Defendants' behalf likewise represents and warrants that they have been authorized to execute and enter into this Settlement Agreement on Defendants' behalf.

42. **Signature**. An electronic or facsimile signature shall be deemed to be an original for all purposes.

43. **Choice of law and venue of disputes**. This Settlement Agreement shall be construed under New Jersey law, without regard to any choice of law principles, except to the extent

Concord - Document ID: 032MxIO6aVNawgz5HbyKeN                    14-15

any law of the United States governs any matter set forth, in which case federal law shall govern. Any dispute arising under this Settlement Agreement shall have venue exclusively in the United States District Court for the District of New Jersey.

44.    **Acknowledgment.** Each party executing this Settlement Agreement confirms they are doing so voluntarily and that they have read this Settlement Agreement, have understood it, and have entered into it after being advised by their respective attorneys, or with the complete opportunity to do so.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as follows:


_____                    Date: 1/30/2026
John Hagans
individually and on behalf of the collective members


_____                    Date: 1/30/2026
Vivian Hagans
individually and on behalf of the collective members

Gina Martin
_____
Feb 5, 2026, 5:58 PM EST                            Date: 2/5/2026
_____
National Mentor Healthcare, Inc.

  Gina Martin
_____
Name

  Chief Legal Officer, GC & Sec
_____
Title

Philip Kaufman
_____
Feb 6, 2026, 9:47 AM EST                            Date: 2/6/2026
_____
National Mentor Healthcare, LLC

  Philip Kaufman
_____
Name

  Chief Executive Officer
_____
Title

#4935-0232-6665 v2                    15

# **EXHIBIT A**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOHN HAGANS and VIVIAN
HAGANS, individually and on behalf
of all others similarly situated,

       Plaintiffs,

vs.

NATIONAL MENTOR
HEALTHCARE, INC., and
NATIONAL MENTOR
HEALTHCARE, LLC,

      Defendants.            /

CIVIL ACTION
CASE NO.: 1:22-CV-00128-KMW-SAK

## **FORMULA FOR DISTRIBUTION OF SETTLEMENT FUNDS**

      The Settlement Agreement provides for a maximum Gross Settlement Amount of $2,300,000.00, including all payments to Settlement Class and Collective Members, attorneys' fees and litigation expenses, costs of notice and claims administration of the settlement, and general release payments to J. Hagans and to V. Hagans (the "Gross Settlement Amount").

      There are forty-five (45) FLSA Collective and Rule 23 Class Members (the "Class"). Each Class Member who timely cashes his or her settlement check will be paid based on the pro rata share of their allegedly unpaid minimum wages and/or overtime wages amounts, from January 11, 2019 to September 25, 2025, based on Defendants' provider payment data, provided to Plaintiffs' Counsel and as calculated by Plaintiffs' accounting expert. Each Class Member's pro rata share will be equally divided between wage payment and payment for liquidated damages. Defendants shall be responsible for any employer payroll taxes due on payments, and such amounts shall be paid in addition to, and outside of the common fund.

# EXHIBIT B

NOTICE OF SETTLEMENT OF WAGE CLAIMS FOR NJ MENTOR HOME HOST PROVIDERS

**TIME-SENSITIVE, COURT-AUTHORIZED NOTICE**

**\* \* \* This is not an advertisement from a lawyer. \* \* \***

**You have an opportunity to claim money, participate in a class action settlement, object or remove yourself from a proposed class action legal settlement with National Mentor Healthcare, Inc. and National Mentor Healthcare, LLC for services you provided between January 11, 2019 and September 9, 2025.**
**This Notice explains your legal rights regarding the settlement.**
**Your rights may be affected even if you do nothing.**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

### CIVIL ACTION NO: 1:22-cv-00128-KMW-SAK

JOHN HAGANS and VIVIAN
HAGANS,
individually and on behalf of all others
similarly situated,

      Plaintiffs,

vs.                                       Class and Collective Action

NATIONAL MENTOR
HEALTHCARE, INC., and
NATIONAL MENTOR
HEALTHCARE, LLC,

      Defendants.

_____

### NOTICE OF SETTLEMENT OF WAGE CLAIMS FOR
### HOME HOST PROVIDERS

**You are entitled to money under a proposed legal settlement with NATIONAL MENTOR HEALTHCARE ("NMH") for wage claims beginning on or after January 11, 2019.**

**This Notice explains your legal rights regarding the settlement.**
**<u>Your rights may be affected even if you do nothing.</u>**

**TO:**      **All Home Host Providers through NMH who contracted with the New Jersey Department of Human Services ("NJDHS") and provided services to NMH's clients in New**

Jersey, during the time period between January 11, 2019 and
September 9, 2025.

1.      RE:   LAWSUIT   BY   HOME   HOST   PROVIDERS
        ALLEGING VIOLATIONS OF FEDERAL AND STATE
        WAGE LAWS AGAINST NMH

## 1.      What is this about?

A lawsuit was filed against NATIONAL MENTOR HEALTHCARE, INC. and NATIONAL
MENTOR              HEALTHCARE,              LLC              (
"NMH") for unpaid minimum wages and overtime under a federal law, the Fair Labor Standards
Act (FLSA), 29 U.S.C. § 201 *et seq*. and under New Jersey state law (the New Jersey Wage and
Hour Law and New Jersey Wage Payment Law). The case is *Hagans v. National Mentor
Healthcare, Inc., et al.,* Case No. 1:22-cv-00128-KMW-SAK, in the United States District Court
for the District of New Jersey.

The lawsuit involves Home Host Providers ("HHPs"), who contracted with the New Jersey
Department of Human Services ("NJDHS") and  provided services to NMH's clients in New
Jersey, during the time period between January 11, 2019 and September 9, 2025.

The lawsuit was filed by two Host Home Providers  who provided services to NMH's clients  and
believe that they and other Host Home  Providers were misclassified as independent contractors,
and not paid legally-mandated federal and state minimum wages and/or overtime wages for all
weeks/hours worked between January 11, 2019 and September 9, 2025 as a result.

The Court has not determined that NMH is liable or did anything wrong. Instead, Plaintiffs and
NMH reached a settlement to resolve the case without further litigation. The Court overseeing the
lawsuit has approved that settlement. As a result, certain Host Home Providers who provided
services for  NMH during the covered period may join the settlement and are eligible to receive a
payment.

## 2.      Why am I getting this notice?

You have been identified from NMH's records as a Host Home Provider during the covered period
and who is eligible to recover money from the settlement. To be eligible to participate in this
settlement, you must have performed services as a Host Home Provider during the time period of
January 11, 2019 to September 9, 2025.  If you wish to participate in the settlement, you do not
need to do anything at this time.  You are automatically included in the settlement, unless you
choose to exclude yourself from the settlement.

## 3.      What is the settlement?

Each Host Home Provider eligible to participate in this settlement will receive two checks.  One
check shall represent  wages/overtime and one check shall represent "liquidated damages," which

is a proportional amount of your allegedly unpaid wages/overtime from the total maximum settlement fund of $2,300,000.00 ("Gross Settlement Amount").

| **4.** | **Why is there a settlement?** |
|---|---|

Based upon their analysis and evaluation of this information, relevant law, and the substantial risks of continuing the case in court, including the possibility that the case, if not resolved now, might not result in any payment to the Host Home Providers, or might end with a result that is less favorable and that would not occur for several years, the Host Home Providers and their lawyers entered into this proposed settlement. The Court has not decided in favor of the Host Home Providers (like Plaintiffs) or NMH (the Defendants). The Host Home Providers who brought this case  and the attorneys who represent  them and the class members in this case believe the settlement is in the best interests of the class members.

| **5.** | **Why is this a class and collective action?** |
|---|---|

In a class or collective action, one or more people file a lawsuit to assert legal claims on behalf of themselves and other persons who have experienced the same or similar circumstances. Here, two Host Home Providers who provided services for NMH began this lawsuit and will serve as the "Class Representatives" to represent not only their personal interests, but also the interests of all the FLSA Collective and New Jersey law Class members. Because this is a class and collective action, even persons who did not file their own lawsuit can recover for the alleged wage violations asserted against NMH.

| **6.** | **What is the difference between the FLSA Collective and the  Class?** |
|---|---|

The lawsuit involves two groups of employees: (1) the "FLSA Collective," which is a "Collective" under a federal law, the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(b), which consists of all eligible NMH Host Home Providers who provided services during the relevant time period and previously joined the case by filing a Consent to Join; and (2) a "Class" under Federal Rule of Civil Procedure 23, which consists of current or former Host Home Providers who provided services in New Jersey through NMH during the relevant time period.

Federal Rule of Civil Procedure 23 allows Host Home Providers to pursue their claims, and this settlement, under a "Class" format. However, no group of Host Home Providers will be given preferential treatment. The FLSA Collective and Class members will be treated the same under the settlement.

| **7.** | **What are my options?** |
|---|---|

| **CASH YOUR CHECK** | If you do nothing, following final settlement approval, you will receive your settlement award once the settlement is paid out. In exchange, you will give up your rights to assert any other claim or lawsuit against NMH regarding your wages, | Deadline: 180 days after checks are sent |
|---|---|---|

| | | |
|---|---|---|
| | including overtime pay, during the dates at issue in the lawsuit as explained in Question 10. | |
| **OBJECT TO THE SETTLEMENT** | Any Class Member may object to: the settlement; the amount of attorneys' fees, costs, and expenses; or the Class Representative's service award and general release payment. You may do so by writing to the Court and saying why you don't think the settlement should be approved, or why the amount of attorneys' fees, costs, expenses, or service award and general release payment is improper. | Deadline: 45 days from the date of first mailing of the Notice |
| **GO TO THE "FINAL FAIRNESS" HEARING** | You may, but are not required to, attend the Final Fairness Hearing where the Court may hear arguments concerning the approval of the settlement. If you wish to speak at the Final Fairness Hearing, you must make a request to do so in your written objection or comment. | Deadline: 45 days from the date of first mailing of the Notice |
| **EXCLUDE YOURSELF FROM THIS SETTLEMENT** | If you are a Class Member, you can exclude yourself from the Settlement by informing the Claims Administrator that you want to "opt-out" of the settlement. If you "opt-out," you will not recover any money from the settlement. However, if the settlement becomes final, this is the only option that allows you to keep your rights to sue NMH for claims related to your alleged wages during the relevant time period, including overtime pay under any applicable New Jersey law.<br><br>If you are a Collective Member, you can exclude yourself from the settlement by not cashing your settlement check. | Deadline: 45 days from the date of first mailing of the Notice |

## 8.    What is my share of the Settlement?

Your settlement payment is based on the time period that you provided services to NMH and the amount you were paid during that time during the period relevant to your claims (January 11, 2019 to September 9, 2025).

## 9.    Can I be retaliated against for participating in the Settlement?

No. It is a violation of federal and state law for NMH or anyone else to retaliate against you for taking part in this case.

## 10.    Do I have a lawyer in the case?

Yes. The Court appointed the following lead attorneys as "Class Counsel":

Andrew R. Frisch

Allison Rattet
MORGAN & MORGAN, P.A.
8151 Peters Road | Plantation, FL 3324
Phone  954 318 0268
afrisch@forthepeople.com
arattet@forthepeople.com

If you want to be represented by your own lawyer, you may hire one at your own expense.

| **11.** | **How will Class Counsel be paid?** |
|---|---|

Class Counsel will make an application to the Court to be paid from the Gross Settlement Amount, which must be approved by the Court. Class Counsel will apply for an attorneys' fee award of no more than 33 and 1/3% of the Gross Settlement Amount ($2,300,000), plus their costs and expenses. If you wish, you may object to the amount of attorneys' fees, costs, and expenses.

Class Counsel will also ask the Court to approve a service award and general release payment of up to $10,000 to compensate the Class Representatives in exchange for their work performed on behalf of the Collective and Class and for their complete release of claims against NMH. If you wish, you may object to the service award and general release payment.

The Court will decide the attorneys' fees, costs, and expenses, and service award and general release payment to be awarded.

| **12.** | **What if my contact information changes?** |
|---|---|

If your mailing address, email, or phone number changes, it is your responsibility to notify the Claims Administrator and provide updated contact information.

| **13.** | **What happens if some of the settlement money is not claimed?** |
|---|---|

Any unclaimed funds will revert to Defendant.

| **14.** | **What am I giving up to stay in the settlement class?** |
|---|---|

If you are a FLSA Collective Member, when the settlement becomes final, you will receive a settlement payment. By cashing or depositing your settlement payment, you will release all claims that you have against NMH for unpaid wages, overtime pay, interest, liquidated damages, or other penalties for unpaid wages, overtime, and related record keeping violations, under federal, state and local laws, including all claims under the FLSA, including those claims that you may not be fully aware of.

If you are a Class Member, you will remain a Class Member unless you exclude yourself. That means when the proposed settlement becomes final, you will receive a settlement payment.  In

exchange for the settlement payment, you will give up your right to sue NMH and fully release all claims that you have against NMH from all New Jersey and FLSA wage and hour claims asserted in this lawsuit, including for unpaid wages, overtime pay, interest, liquidated damages, or other penalties for unpaid wages, overtime, and related record keeping violations, as well as those claims that you may not be fully aware of under New Jersey and FLSA wage and hour laws. Unless you take yourself out of this case, you cannot sue, continue to sue, or be part of any other case against NMH regarding any of the wage and hour claims brought in this case and that the Court's orders will apply and legally bind you. To be clear, if you do nothing, you are still releasing your claims against NMH under New Jersey law.

If you are a member of both the FLSA Collective and the Class, you will release claims under both New Jersey law and the FLSA, as explained above.

| 15. | How do I tell the Court if I don't like the settlement? |
| --- | --- |

If you are a Class Member and do not exclude yourself, you can object to the settlement, attorneys' fees, costs, expenses, or the service award and general release payment for the Class Representative if you do not believe they are fair.

Filing an objection means asking the Court to deny approval of the settlement. You can't ask the Court to order a different settlement—it can only approve or reject the proposed settlement. If the Court denies approval of the settlement, no settlement payments will be paid, all the FLSA Collective and Class members will not receive any money from the settlement, and the lawsuit will continue. If that is what you want to happen, you have the right to object.

Any objection must be in writing and contain the following:
a. The name and case number of this lawsuit (*Hagans v. National Mentor Healthcare, Inc., et al.,* Case No. 1:22-cv-00128-KMW-SAK (D.N.J.));
b. Your full name, mailing address, email address, and telephone number;
c. An explanation of why you believe you are a Class Member;
d. All reasons for your objection and whether it is specific to you or applies to any other person(s);
e. A statement identifying the class action settlements you have previously objected to;
f. Whether you intend to personally appear or testify at the Final Approval Hearing;
g. The name and contact information of any attorneys representing, advising, or assisting you, including any counsel who may be entitled to compensation for any reason related to your objection or comment;
h. Whether any attorney will appear on your behalf at the Final Approval Hearing, and if so the identity of that attorney;
i. The identity of any persons who wish to be called to testify at the Final Approval Hearing; and
j. Your handwritten or electronically imaged written (e.g., "DocuSign") signature. An attorney's signature, or a typed signature, is not sufficient.

To be considered by the Court, your objection must be submitted by mailing it to the Claims Administrator, ILYM Group, Inc., PO Box 2031, Tustin, CA 92781. Any objection must be filed or postmarked on or before 45 days from the date of first mailing of the Notice.

| 16. | What is the difference between objecting and excluding myself? |

You object to the settlement when, as a Class member, you disagree with some aspect of the settlement and want to request that the Court should not give Final Approval to the settlement. An objection allows your views to be heard in court. Any Class Member who does not exclude themselves can object to the settlement.

Excluding yourself as a Class Member means that you are no longer a Class Member and don't want the settlement to apply to you. Once you are excluded, you lose any right to receive any payment from the settlement or to object to any aspect of the settlement because the case no longer affects you. Only Class Members can exclude themselves from the class action settlement. FLSA Collective members who do not want to accept the settlement may simply not cash or deposit their settlement checks.

| 17. | When and where will the Court decide whether to approve the settlement? |

The Court will hold the Final Fairness Hearing at «Time and Date» before Judge Karen M. Williams at the Mitchell H. Cohen *Building* & U.S. *Courthouse* 4th & Cooper Streets, Camden, NJ 08101. The hearing may be held remotely by telephone or videoconference, at the Court's discretion. The hearing may be changed to a different date or time or location without notice. Please check Judge Williams' calendar for any updates about the settlement or the Final Fairness Hearing. If the date or time of the Final Fairness Hearing changes, an update to the Court's calendar will be the only way you will be informed of the change.

At the Final Fairness Hearing, the Court will decide whether to approve the settlement. It will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court may listen to people who appear at the hearing and who have provided notice of their intent to appear at the hearing. The Court may also consider Class Counsel's application for attorneys' fees, costs, and expenses, and the Class Representative's service award and general release payment.

| 18. | Do I have to go to the hearing? |

No. Class Counsel will answer any questions the Court may have. If you submit a written objection, you do not have to come to Court to talk about it. As long as you submitted your written objection on time, the Court will consider it. You may attend at your own expense if you wish. You may also pay your own lawyer to attend, but it is not required.

**19.    How do I exclude myself from the settlement?**

If you do not want to take part in the settlement and want to keep the right to sue NMH based on claims resolved by the settlement, to the extent such claims are timely, must take steps to exclude yourself from Class (sometimes called "opting out").

To exclude yourself from the settlement, you must send an Exclusion Letter by mail saying that you wish to do so. Your Exclusion Letter must state:

    a.  The name and case number of this lawsuit (*Hagans v. National Mentor Healthcare, Inc., et al.,* Case No. 1:22-cv-00128-KMW-SAK (D.N.J.));

    b.  Your full name, mailing address, email address, and telephone number;

    c.  An explanation of why you believe you are a Class Member;

    d.  The words "Notification of Exclusion," or other statement that you want to be excluded from the Settlement; and

    j.  Your handwritten or electronically imaged written (e.g., "DocuSign") signature. An attorney's signature, or a typed signature, is not sufficient. Your Exclusion Letter must be signed by you, personally, and not your lawyer or anyone else acting on your behalf. "Mass" or "class" opt-outs made on behalf of multiple persons or classes of persons will be deemed invalid.

You cannot exclude yourself by telephone or email. You must mail your Exclusion Letter to the Claims Administrator, ILYM Group, Inc., PO Box 2031, Tustin, CA 92781, postmarked on or before 45 days from the date of first mailing of the Notice. You cannot exclude yourself by mailing a notification to any other person or place. You cannot exclude yourself after the deadline of «Date».

If you are a Class Member who submits an Opt-In Form under the FLSA, and you also submit an Exclusion Letter, the Exclusion Letter will be deemed invalid.

**20.    If I do not exclude myself, can I sue NMH for the same thing later?**

No. If you are a Class Member, unless you exclude yourself, you give up the right to sue NMH for the claims that this settlement resolves. If you are an FLSA Collective Member and you cash or deposit your check, you give up the right to sue NMH for the claims that this settlement resolves.

**21.    If I exclude myself, can I still get money from the settlement?**

No. You will not be eligible to receive any money from the settlement if you exclude yourself.

**22.    If I exclude myself, am I still represented by Class Counsel?**

No. Class Counsel represents all Class Members. If you exclude yourself as a Class Member, you are not represented by Class Counsel.

| **23.** | **How do I get more information?** |
|---|---|

This notice summarizes the proposed settlement. More details are in the settlement agreement itself. You can get a copy of the settlement agreement, view other case documents, and get additional information and updates by contacting Class Counsel, who are listed in the answer to Question #10.

All the case documents that have been filed publicly in this case are also available online through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.njd.uscourts.gov. This case is called *Hagans v. National Mentor Healthcare, Inc., et al.,* Case No. 1:22-cv-00128-KMW-SAK (D.N.J.). You may also obtain case documents by visiting the office of the Clerk of the Court for the United States District Court for the District of New Jersey, Camden Division, between 9:00 a.m. and 3:00 p.m., Monday through Friday, excluding Court holidays.

You can also get additional information or request a copy of the Settlement Agreement by contacting the Claims Administrator:

**<u>NMH Wage Lawsuit</u>**
ILYM Group, Inc.
PO Box 2031
Tustin, CA 92781
(888) 250-6810

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THE SETTLEMENT OR THE NOTICE PROCESS.**