UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CIVIL ACTION NO: 1:22-cv-00128-KMW-SAK

**JOHN HAGANS and VIVIAN HAGANS**, individually and on behalf of all others similarly situated,

    Plaintiffs,

vs.

NATIONAL MENTOR HEALTHCARE, INC. and NATIONAL MENTOR HEALTHCARE, LLC,

    Defendants.
_____/

JURY TRIAL DEMANDED

Class and Collective Action

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND OTHER RELATED RELIEF**

Plaintiffs, JOHN HAGANS ("J. Hagans") and VIVIAN HAGANS ("V. Hagans") (collectively, the "Plaintiffs"), by and through undersigned counsel of record, hereby move for ("Motion") preliminary approval of the Parties' Settlement Agreement ("Settlement Agreement"), attached hereto as **EXHIBIT A**.

I. **INTRODUCTION**

The Parties have agreed to settle these claims on a class basis, pursuant to Federal Rule of Civil Procedure 23, and a collective basis, under the Fair Labor Standards Act 29 U.S.C. § 201 et. seq. (the "FLSA"), § 216(b)[1], for the Gross Settlement Amount listed in the Settlement Agreement, which is the maximum total gross settlement inclusive of attorney's fees, litigation costs, claims administration expenses, and a general release payment to the named Plaintiffs. The settlement is

---

[1] In the Motion for Final Approval, the Parties will further address why this settlement is also fair and reasonable under the FLSA.

the result of extensive arms' length negotiations between the Parties, including mediation before an experienced class/collective action mediator, Hon. Thomas J. Rueter (Ret.).

As discussed herein, the settlement meets all the criteria for preliminary approval. To effectuate the settlement and distribute funds to settlement class members, the Parties request that the Court: (1) preliminarily approve the Settlement Agreement; (2) certify the proposed class for settlement purposes only; (3) sign the proposed Preliminary Approval Order (attached as **EXHIBIT B**); (4) approve and authorize mailing/emailing of the proposed Class Notice of Proposed Class Action Settlement (attached as **EXHIBIT C**); and (5) set a date for a final approval hearing approximately 75 days after the order granting Preliminary Approval is entered.

## II. STATEMENT OF FACTS

### A. Summary

Plaintiff requests that the Court approve the settlement reached in this matter involving claims under the FLSA and New Jersey law. The Settlement Agreement represents the Parties' investigation and ultimate resolution of the disputed claims. The Settlement Agreement completely resolves Plaintiffs' and the proposed Collective/Class Members' claims at issue in this lawsuit. The Parties' Settlement Agreement provides Plaintiffs and the proposed Collective/Class with a reasonable recovery in light of the risks inherent of litigation and trial. Defendants deny any wrongdoing, the violation of any federal or state wage and hour law, and any damages claimed. For these reasons, settlement of this matter is in the best interest of Plaintiffs and the proposed Collective/Class Members.

### B. Procedural And Litigation History

This action, which began on January 11, 2022, is a hybrid wage and hour collective action under the FLSA and class action under the New Jersey Wage and Hour Law ("NJWHL") and New Jersey Wage Payment Law ("NJWPL"), against National Mentor Healthcare Inc. and National

2

Mentor Healthcare, LLC (collectively, the "Defendants"). Plaintiffs allege that Defendants failed to pay them and other similarly situated Home Host Providers ("HHPs") all minimum wages and overtime wages due to them under the FLSA and New Jersey law, due to their misclassification of HHPs as independent contractors rather than employees. Defendants deny any wrongdoing, the violation of any federal or state wage and hour law, and any damages claimed.

Plaintiffs' FLSA claims were conditionally certified on March 17, 2023. ECF No. 78. On January 8, 2025, the Court granted Plaintiffs' Motion for Class Certification of the NJWHL and NJWPL claims under Federal Rule of Civil Procedure 23. ECF No. 172. Following the Court's bench order granting class certification, the Parties moved to stay the proceedings for the purpose of attending mediation. In accordance with the Court's stay, the Parties postponed further discovery, including approximately a dozen depositions or more, until after the mediation.

On August 1, 2025, after Defendants produced a significant amount of information relevant to the services rendered by Plaintiffs and the HHPs, the Parties participated in a full-day mediation with Hon. Thomas J. Rueter (Ret.), a highly regarded mediator with significant experience in class and collective action wage and hour litigation. Negotiations continued in the weeks thereafter, and the Parties were able to reach a settlement in principle on September 9, 2025. Since that time, after substantial further work and negotiations on the settlement terms, the Parties were able to reach a final Settlement Agreement.

The Parties recognize and acknowledge the benefits of settling this case and the risks of not settling this case. Plaintiffs believe that the claims asserted in this case have merit and that the evidence developed to date supports the claims on a class/collective basis. Despite the strength of their case, Plaintiffs are mindful of the arguments that will be raised by Defendants' able counsel. Plaintiffs further recognize and acknowledge the expense and length of time that proceedings

3

necessary to prosecute this matter as a class action against Defendants, post-trial proceedings, and any appeals would take. Counsel for Plaintiffs has taken into account the uncertain outcome and risks of the litigation, as well as the difficulties and delays inherent in such litigation. Counsel for Plaintiffs has, therefore, determined that the Settlement set forth in the Settlement Agreement is fair, reasonable, and adequate. The Settlement confers substantial benefits upon, and is in the best interests of, Plaintiffs and the Settlement Class and Collective (hereafter defined) and as further explained below.

Defendants maintain that they have a number of meritorious defenses to the claims asserted in this action, including defenses to the merits, defenses to the certification of the case as a class action, defenses to conditional certification, as well as arguments for future decertification. Nevertheless, Defendants recognize the risks and uncertainties inherent in litigation, the significant expense associated with defending a potential class action, the costs of any appeals, and the disruption to business operations arising out of class action litigation. Accordingly, Defendants believe that the Settlement set forth in the Settlement Agreement is likewise in its best interests.

### III.   SUMMARY OF THE SETTLEMENT

The Settlement Agreement defines the Rule 23 Class as:

> those Home Health Providers, contracted with the NJDHS, who provided services to Defendants' clients in New Jersey, between January 11, 2019 and September 9, 2025.

There are 45 Rule 23 Class Members, who are also current or Putative FLSA Collective Members.[2]

The Settlement Agreement provides for a maximum Gross Settlement Amount of $2,300,000.00, including all payments to Settlement Class and Collective Members, attorney's

---

[2] To release their FLSA claims, Rule 23 Class members must sign, cash, or deposit their settlement check as set forth in the Settlement Agreement.

fees and litigation expenses, costs of notice and claims administration of the settlement, and general release payments to J. Hagans and to V. Hagans (the "Gross Settlement Amount"). Plaintiffs' counsel has agreed to seek no more than Seven Hundred Fifty-Nine Thousand Dollars ($759,000.00), which represents one-third (33.3%) of the Gross Settlement Amount, plus reimbursement of their costs/expenses and Defendant agrees that it will not oppose this request. The Parties further agree that Plaintiffs J. Hagans and V. Hagans each will receive $10,000.00 to be paid from the Gross Settlement Amount, in consideration for executing a General Release of Claims to be paid from the Qualified Settlement Fund ("QSF").

   The Parties agree to enlist the services of a Settlement Administrator to administer the settlement whose services will be paid from the Gross Settlement Amount. The Settlement Administrator will send a notice of preliminary approval and settlement to each Settlement Class/Collective Member.  Settlement Class Members will each be afforded: (i) 45 days after mailing of the notice to choose to cash, deposit, or otherwise negotiate a settlement check and opt-into the settlement; (ii) 45 days after mailing of the notice to choose to opt-out or file objections; and (iii) an opportunity to appear at the final approval hearing to be set by the Court and to be held at least 75 days following entry of the preliminary approval Order. The amount allocated to settlement payments to Class/Collective Members will be distributed as follows:

> Each Claimant shall be paid their pro-rata share of their allegedly underpaid amount.

Any and all claims of any Rule 23 Class Member under New Jersey law who does not affirmatively opt-out of the Action will be forever released against Defendants and their subsidiaries, as described more fully in the Settlement Agreement.  In addition, any Putative FLSA Collective member who signs, deposits and/or cashes their Settlement check shall be deemed an opt-in party under the FLSA, and thereby release related claims as defined in the Settlement

Agreement. Further, in recognition of their receipt of the General Release Payment, any and all claims of any kind of the named Plaintiffs will also be forever released against Defendants and their related entities and persons, as described more fully in the Settlement Agreement.

## I. ARGUMENT

### A. Preliminary Approval of Class Action Settlements.

Class action settlements must be approved by the Court as fair. *See* Fed. R. Civ. P. 23(e)(2). This judicial approval process entails three steps: (1) the Court decides whether to "preliminarily approve" the settlement; (2) if the settlement is preliminarily approved, notice is issued to class members so they can decide whether to object to or exclude themselves from the proposed settlement; and (3) after the notice period has expired, the Court conducts a fairness hearing and makes a final approval decision. *See Hill v. Udren L. Offs., P.C.*, No. CV 13-419, 2020 WL 6785537, at *5 (W.D. Pa. Nov. 18, 2020); *see generally Manual for Complex Litigation, Fourth*, at §21.63 (Federal Judicial Center 2008).

We are at the preliminary approval stage. Rule 23(e)(1) – entitled "Grounds for Decision to Give Notice" – addresses the pertinent standard:

> (e) Settlement, Voluntary Dismissal, or Compromise. The claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> *(1) Notice to the Class.*
>   (A) *Information That Parties Must Provide to the Court.* The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.
>   (B) *Grounds for a Decision to Give Notice.* The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.

Fed. R. Civ. P. 23(e)(1); *see, e.g., Hall v. Accolade, Inc.*, No. CV 17-3423, 2019 WL 3996621, at *2 (E.D. Pa. Aug. 23, 2019).

## B. Preliminarily Approval is Warranted.

As noted above, Rule 23(e)(1)(B) establishes that, at the "preliminary approval" stage, a district court must address two questions: (i) whether it "will likely be able to . . . approve the proposal under Rule 23(e)(2)" and (ii) whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal." Here, both requirements are satisfied.

### 1. The Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)."

To determine whether the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)," we must look to Rule 23(e)(2)'s approval factors. These factors appear under the heading "Approval of the Proposal":

> (2) *Approval of the Proposal.* If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

As discussed below, each of these factors is likely to be satisfied:

- ***Rule 23(e)(2)(A) – Whether John Hagans, Vivian Hagans and Morgan & Morgan "have adequately represented the class":***

This factor focuses "on the actual performance of counsel acting on behalf of the class." *Hall*, 2019 WL 3996621, at *4 (internal quotations omitted); *see also In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016) (class counsel should "develop[] enough information about the case to appreciate sufficiently the value of the claims").

Here, this factor is satisfied. Prior to reaching settlement, Morgan & Morgan obtained pertinent discovery, developed comprehensive damages modelings, and analyzed the pertinent legal and damages issues.

- ***Rule 23(e)(2)(B) – Whether the settlement "was negotiated at arm's length":***

This factor is satisfied where, as here, the Parties reached settlement after a full-day mediation, where follow-up negotiations continued in the weeks thereafter and were overseen by an experienced third-party mediator. *See Hall*, 2019 WL 3996621, at *4.

- ***Rule 23(e)(2)(C)(i) – Whether the relief "is adequate, taking into account the costs, risks, and delay of trial and appeal":***

This factor "balances the relief that the settlement is expected to provide to class members against the cost and risk involved in pursuing a litigatedoutcome." *Hall*, 2019 WL 3996621, at *4 (internal quotation omitted). Such analysis "cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure." *Id.* (internal quotation omitted). As the Third Circuit has observed, "[t]he role of a district court is not to determine whether the settlement is the fairest possible resolution – a task particularly ill-advised given that the likelihood of success at trial . . . can only be estimated imperfectly." *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 173-74 (3d Cir. 2013).

Here, this factor is likely to be satisfied. Absent settlement, Plaintiffs and the Class/Collective Members risk adverse findings, including that: Defendants' delays in paying wages, if any, were in "good faith"; Plaintiffs and the Class/Collective Members were not misclassified and therefore not entitled to the legally mandated minimum wage rate and overtime premium pay; and class and collective action certification is not warranted. Importantly, the litigation risks are amplified where, as here, Defendants are represented by skilled and well-prepared lawyers.

Moreover, undersigned counsel's analysis of the pertinent payroll data reveals that the total underpaid wage exposure ranged from **$1,900,000.00 to $13,500,000.00** (unliquidated), depending on the number of hours per day Plaintiffs and the Class/Collective Members were found to have worked.[3] The calculation of each potential settlement payment credits each Class/Collective Member with his or her pro rata share associated with the claims in the litigation. In other words, after fees/costs are paid, each Class/Collective member will still stand to receive their pro rata share according to the distribution formula set forth in Exhibit A to the Settlement Agreement. Such a recovery represents an excellent value when viewed against the inherent litigation risks here.

In addition, continued litigation would require additional discovery, including approximately a dozen depositions or more, and Defendant would seek same in order to develop arguments against certification and/or for decertification. In addition, the Court would be required to resolve Plaintiffs' anticipated class certification and summary judgment motions, and

---

[3] The Settlement Amount encompasses claims for liquidated damages, statutory penalties, attorneys' fees and costs, and related expenses.

Defendants' anticipated decertification and summary judgment motion, making it likely this matter would not be "trial ready" until late next year, at the earliest.

- ***Rule 23(e)(2)(C)(ii) – Effectiveness of the "proposed method of distributing relief" and "the method of processing class-member claims":***

Under this factor, the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." *See Hall*, 2019 WL 3996621, at *5 (citing Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018)). This factor is satisfied where, as here, each Class/Collective Member will receive a Notice to Class Members and be deemed a member of the Rule 23 Class unless he or she timely requests to be excluded. There are no onerous requirements to prove dates of employment, hours, or any other entitlement to damages. Any Class/Collective Member who does not request to be excluded will receive his or her payment.

### *Rule 23(e)(2)(C)(iii) – The terms and timing of any proposed attorney's fee award:*

This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." Advisory Committee Notes. Here, Plaintiff's counsel will seek 33.3% of the settlement fund as its combined attorneys' fees/costs. This is well within the norm for the Third Circuit and this District in class/collective action cases. *See Hall*, 2019 WL 3996621, at *5 (citing authority for proposition that "the average attorney's fees percentage in [surveyed class action] cases was 31.71% and that the median fee award was 33.3%).

At the final approval stage, Plaintiffs will fully brief the fairness and reasonableness of the requested attorneys' fees under the Third Circuit's *Gunter* factors. *See, e.g., Tumpa*, 2021 WL 62144, at *10-12. However, such detailed analysis is not necessary at the preliminary approval stage, *see, e.g., Hall*, 2019 WL 3996621, at *5.

- *Rule 23(e)(2)(C)(iv) – Any agreement required to be identified under Rule 23(e)(3)*:

Rule 23(e)(3) requires settling parties to "file a statement identifying any agreement made in connection with the proposal." Here, this factor will be satisfied because the accompanying Settlement Agreement is the *only* agreement connected to the subject matter of this lawsuit or settlement.

- *Rule 23(e)(2)(D) – Whether the settlement treats class members equitably relative to each other*:

This factor seeks to prevent the "inequitable treatment of some class members *vis-a-vis* others." *Fed. R. Civ. P. 23, Advisory Committee Notes to December 1, 2018 Amendments*. Here, this factor is satisfied because each Class/Collective Member's share of the settlement proceeds is based on a uniform formula tied expressly to each Member's alleged underpayment that forms the basis for the lawsuit. *See* Settlement Agreement (Exhibit A).

In sum, as discussed above, the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B)(i).[4]

### 2. The Court "will likely be able to certify the class."

Having determined that the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)," we turn to the second half of the preliminary approval inquiry: whether the Court "will likely be able to . . . certify the class." Fed. R. Civ. P. 23(e)(1)(B)(ii). Here, Plaintiffs ask

---

[4] As indicated earlier, the settlement anticipates that each of the named Plaintiffs will receive a $10,000 service award. This award compares favorably to awards in class actions relating to employee rights. *See, e.g., Hall v. Accolade, Inc.*, 2020 WL 1477688, *10 (E.D. Pa. Mar. 25, 2020) (approving $10,000 and noting that other courts have approved $20,000); *Foster v. Kraft Foods Grp. Inc.*, Nos. 09-00453,12-00205, 2013 WL 440992, at *2 (W.D. Pa. Jan. 15, 2013) (approved seven service awards of $15,000); *Godshall v. Franklin Mint Co.*, No. 01-6539, 2004 WL 2745890, *4 (E.D. Pa. Dec. 1, 2004) ($20,000 incentive approved each to two named plaintiffs). Regardless, courts generally defer assessments of service awards until the final approval stage. *See Hall*, 2020 WL 1477688, at *10.

the Court to certify a settlement class comprised of the 45 individuals covered by the Settlement Agreement, "those Home Health Providers, contracted with the NJDHS, who provided services to Defendants' clients in New Jersey, between January 11, 2019 and September 9, 2025," who have not timely and validly excluded themselves from the Settlement. Agreement, ¶ 11(k) (defining "Rule 23 Class").

To obtain class certification, Plaintiffs must satisfy Rule 23(a)'s four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015). Next, they must satisfy Rule 23(b)(3)'s two further requirements: (5) common questions of law or fact must "predominate over any questions affecting only individual members" and (6) "a class action [must be] superior to otheravailable methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

As discussed below, Plaintiffs are likely to satisfy the six Rule 23 requirements:

**Numerosity:** Rule 23(a)(1)'s numerosity requirement is generally satisfied where, as here, the Class includes approximately 45 members. *See Galt v. Eagleville Hospital*, 310 F. Supp. 3d 483, 490 (E.D. Pa. 2018) (citing cases); *see also* H. Newberg & A. Conte, *Newberg on Class Actions*, § 3.05, at 3-25 (1992) ("In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone."); *Troncone v. Velahos,* No. CIV. 10-2961 RBK/AMD, 2012 WL 3018061, at *4 (D.N.J. July 23, 2012) ("In the Third Circuit, a plaintiff who demonstrates that the potential number of plaintiffs exceeds 40 satisfies the numerosity requirement.")(quoting *Stewart v. Abraham,* 275 F.3d 220 (3d Cir.2001) (citing 5 James Wm. Moore et al., Moore's Federal Practice § 23.22[3] [a] (3d ed.1999))).

12

**Commonality:** The commonality "bar is not a high one," *Rodriguez v. National City Bank*, 726 F.3d 372, 382 (3d Cir. 2013), and "is easily met," *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Commonality "does not require perfect identity of questions of law or fact among all class members." *Reyes*, 802 F.3d at 486. Since "'even a single common question will do,'" *id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)), commonality is satisfied if "'plaintiffs share at least one question of fact or law with the grievances of the prospectiveclass,'" *id.* (quoting *Rodriguez*, 726 F.3d at 382).

Here, the commonality requirement is likely to be satisfied because Plaintiffs' pursuit of unpaid wages and overtime premiums is based on the same evidentiary record and legal principles as the claims of other Class Members who were also classified as independent contractors and subject to the same payroll policies. Specifically, Class Members: (1) are/were compensated solely by a fixed day rate; (2) allege that they routinely worked hours over forty (40) in a single workweek; (3) are/were classified as independent contractors; (4) were not paid overtime for all hours worked over forty (40) in a workweek; and (5) were not paid at least the New Jersey minimum wage compensation when their regular rate fell below the mandatory rate for each hour/week worked during their employment.

Plaintiffs' Amended Complaint also lists, specifically, the common issues implicated by their claims. *See* ECF No. 139 (Complaint), at ¶119. Courts within the Third Circuit and the Third Circuit itself have routinely found such allegations to be "common" for purposes of class certification. *See, e.g., Hargrove v. Sleepy's LLC*, No. 22-2040, 2023 WL 3943738, at *2 (3d Cir. June 12, 2023) ("The ABC test often turns on evidence of an employer's policies and practices, and so often presents a common issue."), citing *Williams v. Jani-King of Phila., Inc.*, 837 F.3d 314, 321 (3d Cir. 2016) (employer's control was common issue); *Hall v. Accolade, Inc.,* 2020 WL

13

1477688, at *5 (E.D. Pa. Mar. 25, 2020) ("the core disputed issue is whether [defendant] (mis)classified every single class member as overtime-exempt … This creates a common legal issue: whether the exemption was proper under the PMWA."); *Atis v. Freedom Mortg. Corp.,* No. CV 15-3424 (RBK/JS), 2016 WL 7440465, at *6 (D.N.J. Dec. 27, 2016) (class certification granted where assistant vice presidents of sales held the same job title, had overwhelmingly the same the job responsibilities, and proving misclassification would require evidence common to the class as opposed to individualized proofs). The numerous common questions alleged in the pleadings likely satisfy the commonality requirement of Rule 23(a)(2).

**Typicality:** Rule 23(a)(3)'s typicality requirement "is intended to assess whether the action can be efficiently maintained as a class action and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Neal*, 43 F.3d at 57; *accord Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001). Lawsuits challenging the same conduct which "affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Baby Neal*, 43 F.3d at 58. "[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Id.*; *accord Stewart*, 275 F.3d at 227-28.

Here, typicality is likely to be found because Plaintiffs and each Class Member share the same interest of recovering unpaid wages and overtime premiums based on Defendants' pay practices. Plaintiffs and all Class Member were subject to Defendants' uniform policies and classified as independent contractors. All of these claims are interrelated and rely largely on the same legal theory: Plaintiffs and all Class Member were employees under the NJWHL and were

therefore entitled to at least minimum wage and overtime pay rates for the overtime hours they worked. In sum, Plaintiffs' interests and legal claims are entirely aligned with those of the Class.

**Adequacy:** This requirement is satisfied if both: "(a) the plaintiff's attorney [is] qualified, experienced, and generally able to conduct the proposed litigation, and (b) the Plaintiff[does] not have interests antagonistic to those of the class." *Weiss v. York Hospital*, 745 F.2d 786, 811 (3d Cir. 1984) (internal quotations omitted).

Here, adequacy is likely to be satisfied. Morgan & Morgan has substantial experience litigating class action lawsuits in the employee rights arena, and particularly with respect to wage and hour class and collective actions. *See generally*, Declaration of Andrew R. Frisch ("Frisch Decl."), attached as **EXHIBIT D**. As for Plaintiffs, they do not have any interests that are antagonistic to the Class.

**Predominance:** Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The Supreme Court recently summarized the predominance test as follows:

> The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation- defeating, individual issues." When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be consideredproper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal citations omitted).

Here, predominance is satisfied because, as discussed with respect commonality, Plaintiffs' pursuit of unpaid overtime wages is based on the same evidentiary record and legal principles as the claims of other Class Members who similarly were classified as independent contractors and allege that they were not paid at least the New Jersey minimum wage compensation when their

15

regular rate fell below the mandatory rate for each hour/week worked or overtime premiums for hours worked over forty in a workweek.

**Superiority:** Rule 23(b)(3) also requires the Court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication," *In re Prudential Insurance Co. America Sales Practice Litig.*, 148 F.3d 283, 316 (3d Cir. 1998), and "sets out several factors relevant to the superiority inquiry," *id.* at 315-16. These factors favor class certification, here.

First, Rule 23(b)(3)(A) requires courts to consider class members' "interests in individually controlling the prosecution or defense of separate actions." This requirement is intended to protect against class certification where individual class members have a strong interest in "individually controlling" the litigation because, for example, the individual claims are emotionally charged or involve significant damages amounts. *See* William Rubenstein, Alba Conte, and Herbert B. Newberg, *Newberg on Class Actions* at §4:69. As a general matter, this is not such a lawsuit.

Second, Rule 23(b)(3)(B) requires courts to consider "the extent and nature of any litigation concerning the controversy already begun by" class members. This factor is not relevant because no such litigation exists by other Class Members, here.

Third, Rule 23(b)(3)(C) requires courts to consider the desirability of "concentrating the litigation of the claims in a particular forum." Fed. R. Civ. P. 23(b)(3)(C). Here, concentration of all claims in this Court is desirable because Defendants operate within this District, and the Class Members provided services in this judicial district.

Fourth, Rule 23(b)(3)(D) requires the court to consider any "likely difficulties in managing the class action." Fed. R. Civ. P. 23(b)(3)(D). This requirement is automatically satisfied when a

16

case is certified for settlement purposes. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

In sum, based on the four superiority factors, the Court "will likely be able to . . . certify the class." Fed. R. Civ. P. 23(e)(1)(B)(ii).

### 3. The proposed notice satisfies Rule 23(c)(2)(B).

When a class action lawsuit is settled, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23 requires "the best notice that is practicable under the circumstances, including individual notice to all class members who can be identified through reasonable effort." *Id.* at 23(c)(2)(B). Such notice can be effectuated through "United States mail, electronic means, or other appropriate means." *Id.* Also, any notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed R. Civ. P. 23(c)(2)(B).

Here, all the above requirements are satisfied. ILYM Group, an experienced and respected third-party settlement administrator, will mail to each Class Member a package containing the notice form. *See* Settlement Agreement. Individuals will have 45 days from the preliminary approval date to exclude themselves from or object to the settlement. *Id.*

Moreover, the notice form is written in clear language and accurately describes the nature of the action, the settlement, the scope of the release, and the process Class Members must follow to exclude themselves from or object to the settlement. *See id* at **Ex. 1** (Proposed Notice).

### C. M&M should be appointed Interim Class Counsel.

Here, the Court previously granted Plaintiffs' Motion for Class Certification, and in so doing appointed Plaintiffs' counsel as class counsel. ECF No. ___. However, even if it had not previously done so, where, as here, a class action lawsuit is settled prior to class certification, the Court "maydesignate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." *See* Fed. R. Civ. P. 23(g)(3). Then, at the final approval stage, these lawyers can seek to be appointed class counsel in conjunction with the certification of the settlement class. *See id.* at 23(g)(1).

To the extent that the Court's prior oral Order did not already do so (and the Parties understand that it did), Morgan & Morgan respectfully asks the Court to appoint it class counsel based on their experience litigating class action lawsuits on behalf of workers. *See generally* Frisch Decl., **Exh. D**. As detailed more fully therein, undersigned counsel has been appointed class counsel in many similar actions and has the experience and resources to effectively serve the class in this matter. *Id.*

## II. CONCLUSION

For the above reasons, the Court should grant this Motion and enter the attached proposed Order.

Dated this 13th day of February 2026.

                              Respectfully submitted,
                              **MORGAN & MORGAN, P.A.**

By:   */s/ Andrew R. Frisch*
       ANDREW R. FRISCH
       FL Bar No.: 27777
       8151 Peters Road, Suite 4000
       Plantation, Florida 33324
       Tel: 954 WORKERS

                                                Fax: 954-327-3013
                                                E-Mail: afrisch@forthepeople.com

                                                *Trial Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that a true and correct copy of the foregoing was filed using the CM/ECF system on this 13th day of February 2026, which I understand will send notification of same to all counsel of record.

                                                */s/ Andrew R. Frisch*
                                                ANDREW R. FRISCH