**[ECF No. 195]**

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| **JOHN HAGANS, ET AL.,**<br>**Plaintiffs,**<br>**v.**<br>**NATIONAL MENTOR HEALTHCARE, INC.; et al.,**<br>**Defendants.** | **Civil No. 22-128 (KMW/SAK)** |

**OPINION AND ORDER**

This matter comes before the Court by way of Plaintiffs'[1] unopposed motion seeking: (1) preliminary approval of the parties' proposed settlement agreement ("Settlement Agreement") pursuant to Federal Rule of Civil Procedure 23(e) and the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"); and (2) certification of the proposed collective for purposes of settlement pursuant to the FLSA. *See* Pls.' Mot. [ECF No. 195]. The parties consented to the jurisdiction of the Magistrate Judge to enter a final order on Plaintiffs' motion pursuant to 28 U.S.C. § 636(c)(1), Federal Rule of Civil Procedure 73(b), and Local Civil Rule 73.1. *See* Consent Order [ECF No. 202]. The Court considered Plaintiffs' submissions [ECF Nos. 195, 196] and exercises its discretion to decide Plaintiffs' motion without oral argument. *See* FED. R. CIV. P. 78; L. CIV. R. 78.1. For the reasons to be discussed, Plaintiffs' motion is **GRANTED**.

[1] John Hagans and Vivian Hagans are referred to as "Plaintiffs" or "Representative Plaintiffs," while those who have opted into this action under 29 U.S.C. § 216(b) are referred to collectively as "Opt-in Plaintiffs."

## I. BACKGROUND

Plaintiffs John Hagans and Vivian Hagans filed this action against National Mentor Healthcare, Inc., and National Mentor Healthcare, LLC ("NMH" or "Defendants")[2] on behalf of themselves and other similarly situated persons. Plaintiffs, who worked as "Home Host Providers" ("HHPs") for Defendants' in-home healthcare service company, allege violations of the FLSA, the New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. § 34:11-56a, *et seq*., and the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. Ann. § 34:11-4.1, *et. seq*. *See* Am. Compl. [ECF No. 139]. Representative Plaintiffs allege, *inter alia*, that they and similarly situated persons were not fully compensated for time worked in excess of forty hours per week, due to their classification as independent contractors rather than employees. *Id.* ¶¶ 1–7. Defendants denied these allegations, contending they properly compensated Representative Plaintiffs and other HHPs. *See* Defs.' Answer to Am. Compl. [ECF No. 150].

The Court conditionally granted collective certification of Plaintiffs' FLSA claims, and approved the related Notice and Consent form. *See* Order Conditionally Certifying Collective [ECF No. 78]. Following this conditional certification, multiple workers opted into this action under 29 U.S.C. § 216(b), the opt-in provision of the FLSA. *See* Notices of Consent to Join [ECF Nos. 83–100]. The Court also granted class certification under Rule 23 for Plaintiffs' NJWHL and NJWPL claims. Pl.'s Mot. to Certify Class [ECF No. 130]; Minute Entry [ECF No. 172]; Tr. of Oral Argument [ECF No 184]. A total of 45 HHPs, including Representative Plaintiffs, are both Rule 23 class members and FLSA collective members. *See* Pls.' Br. at 4 [ECF No. 196 at 4]. The instant motion seeks preliminary approval of the Settlement Agreement, and certification of the

---

[2] The New Jersey Department of Human Services, a named defendant in the initial Complaint [ECF No. 1], was dismissed without prejudice by stipulation of the parties [ECF No. 170].

FLSA collective for purposes of settlement only. The Settlement Agreement addresses both state wage law claims asserted by the Rule 23 class and the FLSA claims asserted by the collective, and is therefore a proposal to entirely resolve what has proceeded as a "hybrid" action.[3]

## II. RULE 23 CLASS CERTIFICATION

Rule 23(e) provides that the claims, issues, or defenses of a certified class may be settled only with the court's approval. FED. R. CIV. P. 23(e). When a district court is presented with a class settlement agreement, it must at the outset determine whether class certification is appropriate under Federal Rule of Civil Procedure 23(a) and (b). *See In re Nat. Football League Players Concussion Inj. Litig.*, 775 F.3d 570, 581 (3d Cir. 2014). If class certification is determined to be appropriate, then the Court may reach the issue of whether the settlement agreement is fair. *Id.* Courts may certify a Rule 23 class for the sole purpose of settlement. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 786 (3d Cir. 1995). Here, the Court granted class certification following oral argument on Plaintiffs' Motion to Certify the Class. [ECF Nos. 130, 172, 184]. However, prior to a Certification Order being entered, the parties reached a

[3] Rule 23 was intended in part to facilitate suits that "challenge widespread rights violations of people who are individually unable to vindicate their own rights." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 64 (3d Cir. 1994). Congress enacted the FLSA to "protect all covered workers from substandard wages and oppressive working hours[.]" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). In a Rule 23 class action, a prospective party plaintiff is automatically included in the class unless he or she opts-out of the class upon notice of the action. *Bredbenner v. Liberty Travel, Inc.*, No. 09-1248, 2011 WL 1344745, at *18 (D.N.J. Apr. 8, 2011). Contrastingly, collective members in a FLSA collective action must affirmatively opt-in to be bound by any judgment. *Id.* Those cases wherein plaintiffs have sought both class certification under Rule 23 for claims arising under state wage laws and collective certification of FLSA claims have come to be known as "hybrid" actions. *See, e.g.*, *Lundeen v. 10 W. Ferry St. Operations, LLC*, 156 F.4th 332, 336, 339 (3d Cir. 2025). The Third Circuit has "endorsed the use of 'hybrid' actions . . . where an FLSA collective and a Rule 23(b)(3) class proceed side by side in the same case." *Id.* at 339 (citing *Knepper v. Rite Aide Corp.*, 675 F.3d 249, 261–62 (3d Cir. 2012).

settlement. Consistent with Rule 23(c)(1)(B)'s requirement that the Certification Order define the class, the Court notes the proposed class is defined as "[a]ll Home Host Providers through NMH who contracted with the New Jersey Department of Human Service ("NJDHS") and provided services to NMH's clients in New Jersey, during the time period between January 11, 2019 and September 9, 2025." *See* Notice of Settlement [ECF No. 196-1 at 20]; Settlement Agreement ¶ 13i [ECF No. 196-1 at 5]. Also consistent with Rule 23(c)(1)(B)'s requirement that class counsel be appointed and Rule 23(a)'s requirement that class representatives be appointed, the Court now considers these appointments.

**A. Appointment of Class Representatives**

Rule 23(a) requires the representative parties to "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). At a hearing on Plaintiffs' motion for class certification, Honorable Karen M. Williams, U.S.D.J., previously found that John and Vivian Hagans fairly represent the class interests. [ECF 184 at 52:12–14]. This Court further notes that the requirement that class representatives "must represent a class capably and diligently" is a low bar necessitating only a "minimal degree of knowledge about the litigation." *In re Nat'l Football League Players,* 821 F.3d at 430 (quoting *New Directions Treatment Servs. v. City of Reading,* 490 F.3d 293, 313 (3d Cir. 2007)). This Court is also satisfied that the interests of the named plaintiffs and the class members are aligned—both seek to recover unpaid wages and overtime premiums. Additionally, Plaintiffs have capably pursued this shared interest by retaining counsel and cooperating with counsel throughout this litigation and related negotiation. Frisch Cert. ¶¶ 19-24 [ECF 196-4 at 8-9]. The Court therefore will preliminarily appoint John Hagans and Vivian Hagans as representatives of the settlement class.

### B. Appointment of Class Counsel

The appointment of class counsel is governed by Rule 23(g). This rule provides a non-exhaustive list the Court should consider in appointing class counsel. Factors include: (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. FED. R. CIV. P. 23(g). Here, proposed class counsel, Andrew R. Frisch, Esquire, and Allison Rattet, Esquire, of Morgan & Morgan, P.A., are capable of "fairly and adequately protect[ing] the interests" of the class. FED. R. CIV. P. 23(g)(1)(B). They possess adequate experience, with decades of practice history and a record of serving as lead counsel and being found to be adequate class counsel in class action litigation concerning various states' wage and hour laws. Frisch Cert. ¶¶ 11–13 [ECF 196-4 at 3–7]. Proposed class counsel have vigorously prosecuted this action, and committed adequate resources to it for over four years. They have worked with defense counsel to exchange discovery regarding the payroll policies at the center of this case as well as pay and attendance data pertaining to the class. They have also navigated discovery disputes, and engaged in motion practice. Further, proposed class counsel have pursued this action against Defendants at arm's length, by participating in mediation under the direction of Judge Thomas J. Reuter, Ret. Therefore, the Court finds the considerations of Rule 23(g) are satisfied and will provisionally appoint Andrew R. Frisch, Esquire, and Allison Rattet, Esquire, of Morgan & Morgan, P.A. as class counsel.

## III. <u>FLSA COLLECTIVE CERTIFICATION FOR PURPOSES OF SETTLEMENT</u>

A court certifies an FLSA collective in two steps. First, an initial preliminary certification is based on a court determination that "one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Payton-Fernandez*, 671 F. Supp. 3d

at 521 (D.N.J. 2023). This requires a "modest factual showing" involving some evidence "beyond pure speculation" of a factual nexus between the manner that an employer's policy affected the representative plaintiff and the manner in which it affected collective employees. *Id.* After preliminary certification, counsel disseminates notice to potential collective members. Here, the Court conditionally certified this collective on March 17, 2023. *See* Order Conditionally Certifying Class [ECF No. 78]. Following this conditional certification, multiple workers opted into this action under 29 U.S.C. § 216(b), the opt-in provision of the FLSA. *See* Notices of Consent to Join [ECF Nos. 83–100].

Plaintiffs now seek final certification of the collective for settlement purposes only. To obtain certification, Plaintiffs must establish by a preponderance of the evidence that they and collective members were "similarly situated." *Rivet v. Off. Depot, Inc.*, 207 F. Supp. 3d 417, 423 (D.N.J. 2016). To determine whether the collective members and Representative Plaintiffs are similarly situated, courts consider relevant factors, including: "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 526, 536–37 (3d Cir. 2012).

Here, the Court finds by a preponderance of the evidence that Plaintiffs and collective members are similarly situated. All members of this action were HHPs for Defendants' home healthcare services company and were compensated solely by a fixed day rate. Pls.' Br. at 13 [ECF No. 196 at 13]. Further, all members advance the same claims, seek the same relief, and are subject to the same corporate policies and procedures at issue in this case. Specifically, they allege that they routinely worked more than forty hours per week, were classified as independent

contractors, were not paid overtime for all time worked over forty hours per week, and were not paid at least the New Jersey minimum wage compensation. *Id.* As evidenced by the parties' discovery exchange of time and payroll records, resolution of members' claims involves common factual investigation and arguments. Finding that the collective members are similarly situated and their claims may be collectively resolved under the Settlement Agreement, the Court will certify the collective for purposes of settlement approval.

## IV. PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT

### A. The Settlement Agreement

Pursuant to the proposed Settlement Agreement, Defendants will pay $2,300,000 as a "Gross Settlement Amount"[4] for the claims asserted in this action. *See* Settlement Agreement ¶ 20 [ECF No. 196-1 at 10]. The Settlement Agreement proposes that the Gross Settlement Amount be deposited into an interest-bearing escrow account and designated as the Qualified Settlement Fund. *Id.* Following final approval of the settlement and at the direction of the parties, Settlement Awards will be distributed to each Opt-in Plaintiff by the claims administrator. *Id.* The proposed claims administrator is ILYM Group, Inc. ("ILYM" or "Claims Administrator"), a third-party administrator tasked with, *inter alia*, mailing notice to class members and to respective authorities, and tracking submitted exclusion letters to advise counsel of same. *Id.* ¶ 13c; Notice of Settlement ¶ 23 [ECF No. 196-1 at 28]. From the Qualified Settlement Fund, Plaintiffs will each receive a settlement payment amount based on their pro rata share of the alleged unpaid minimum wage and/or overtime wage amounts from January 11, 2019 to September 25, 2025. *See* Settlement

---

[4] The Gross Settlement Amount includes all service awards, attorneys' fees, expenses due to class counsel, and amounts payable to the claims administrator. *See* Settlement Agreement ¶ 20 [ECF No. 196-1 at 10].

Agreement ¶ 20 [ECF No. 196-1 at 10]; *see also* Formula for Distribution at 1 [ECF No. 196-1 at 18]. Pursuant to the Settlement Agreement, class representatives would also receive, in addition to their proportional settlement payment amount, a Service Award, not to exceed $10,000.00. *See* Settlement Agreement ¶ 26 [ECF No. 196-1 at 12]. The Service Award recognizes the named Plaintiffs' bringing this action and is "[i]n exchange for signing a General Release releasing all claims against Releasees." *Id.*

Pursuant to the Settlement Agreement, within fourteen calendar days after entry of the Preliminary Approval Order, Releasees are required to provide the Claims Administrator with a list of all class members and their contact information. *Id.* ¶ 18. Within 10 days of receipt of this list, the Claims Administrator is required to send the class members a Class Notice of Proposed Class and Collective Action Settlement ("Notice of Settlement"), which explains how they may individually exclude themselves from the settlement. *Id.* By cashing their settlement checks, the class representatives, class members, and FLSA collective members agree to release Defendants from, *inter alia*, claims for unpaid wages related to hours worked through September 9, 2025 and liquidated damages. *Id.* ¶ 14. Specifically, the release is limited to: (1) "[a]ll claims for unpaid wages, including but not limited to regular, minimum wages, and overtime wages . . . through September 9, 2025;" (2) "[a]ll claims for liquidated and/or penalty damages under the FLSA and/or any other applicable wage and hour law . . . .;" (3) "[a]ll claims for conversion, breach of contract, quantum meruit, unjust enrichment, theft of labor, or other common law cause of action . . . ;" (4) "[a]ll claims for attorneys' fees;" and (5) "[a]ll claims for interest." *Id.*

**B. Rule 23(e) Preliminary Approval**

Pursuant to Rule 23(e), a court may preliminarily approve a settlement "on finding that [the settlement] is fair, reasonable, and adequate." *In re Nat'l Football League Players,* 961 F. Supp.

2d at 713. Review of a proposed class settlement typically proceeds in two stages. At the first or preliminary approval stage, the court performs a "preliminary fairness evaluation" to determine "whether the proposed settlement is 'likely' to be approved under Rule 23(e)(2)." *Wood v. Saroj & Manju Invs. Phila. LLC*, No. 19-2820, 2020 WL 7711409, at *10 (E.D. Pa. Dec. 28, 2020) (quoting Fed. R. Civ. P. 23(e)(1)(B)). If preliminary approval is granted, the court then directs that notice of the settlement be provided to all class members. At the second or final approval stage, the court conducts a formal hearing to determine whether the settlement is "fair, reasonable, and adequate." *Weissman v. Philip C. Gutworth, P.A.*, No. 14-0666, 2015 WL 333465, at *2 (D.N.J. Jan. 23, 2015). At the preliminary approval stage, "the 'fair, reasonable and adequate' standard [of final approval set forth in Rule 23(e)] is lowered, and the court is required to determine whether 'the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies . . . .'" *In re Nat'l Football League Players,* 961 F. Supp. 2d at 714. (internal quotation marks omitted). Courts in this Circuit have cautioned that preliminary approval must not be a judicial "rubber stamp" of the parties' agreement, and that a proposal must be scrutinized for fairness in accordance with Rule 23. *See, e.g., Id.* Whether a settlement agreement should be approved as to the claims of a Rule 23 class is an analysis distinct from whether it should be approved as to claims under the FLSA. The Court first reviews the proposed settlement for preliminary approval under Rule 23.

### 1. The Proposed Settlement is Likely to be Approved under the Fairness Considerations of Rule 23(e)

Rule 23(e)(2) provides four factors to guide a court's evaluation of whether a settlement agreement is "fair, reasonable, and adequate." These include whether (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members

equitably relative to each other. FED. R. CIV. P. 23(e)(2)(A–D). In light of these factors, some district courts within the Third Circuit have come to view an analysis employing the nine factors enumerated in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) as redundant.[5] In this district, preliminary approval has been found to require only an "initial evaluation" of the fairness of the proposed settlement that considers whether there is "probable cause" to submit the settlement to class members [*Bredbenner v. Liberty Travel, Inc.*, No. 09-1248, 2010 WL 11693610, at *3 (D.N.J. Nov. 19, 2010)], while final approval has required the application of *Girsh*. *See Bredbenner v. Liberty Travel, Inc.*, 9-0905, 2011 WL 1344745, at *11 (D.N.J. April 8, 2011). In other words, at the preliminary approval stage, the Court relies upon Rule 23(e)(2). *See In re Nat'l Football League Players*, 961 F. Supp. 2d at 714 n.5 (distinguishing between preliminary and final class settlement approval, and relegating the *Girsh* factors to consideration upon final settlement approval). The Rule 23(e)(2) factors are addressed in turn.

**a. Adequate Representation**

This factor considers whether John Hagans and Vivian Hagans, as class representatives, and Andrew R. Frisch, Esquire, and Allison Rattet, Esquire, of Morgan & Morgan, P.A., as class counsel, have "adequately represented the class." FED. R. CIV. P. 23(e)(2)(A). This analysis is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g)." 4 WILLIAM B. RUBENSTEIN, NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:49 (6th ed. 2025). As discussed in the Court's evaluation pursuant to Rule 23(a)(4), John Hagans and Vivian Hagans took steps to acquire representation and initiate this action. Additionally, although the Settlement Agreement provides

---

[5] *See Lunemann v. Kooma III LLC*, No. 23-3704, 2024 WL 2133803, at *3 n.6 (E.D. Pa. May 13, 2024); *see also Hall v. Accolade, Inc.*, No. 17-3423, 2020 WL 1477688, at *6 n.11 (E.D. Pa. Mar. 25, 2020); *Matthews v. Philadelphia Corp. for Aging*, No. 22-4632, 2025 WL 992198, at *4 n.2 (E.D. Pa. Apr. 1, 2025).

them with a service award not to exceed $10,000, this does not signify conflicting interest, as the service award recognizes the named Plaintiffs for having participated in this litigation and having cooperated with class counsel through discovery and mediation. The Court is satisfied that John Hagans and Vivian Hagans have adequately represented the class for purposes of Rule 23(e)(2)(A).

For the reasons discussed pursuant to Rule 23(g), the Court also finds that Andrew R. Frisch, Esquire, and Allison Rattet, Esquire, of Morgan & Morgan, P.A. have adequately represented the class. This factor weighs in favor of preliminary settlement approval.

**b. Arm's-Length Negotiations**

The Court must also consider whether the proposed settlement agreement was negotiated at arm's length. FED. R. CIV. P. 23(e)(2)(B). District Courts within the Third Circuit have found a presumption of fairness when a settlement agreement was reached with the assistance of a mediator. *See, e.g.*, *In re CIGNA Corp.*, No. 02-8088, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) (noting it was "clear that negotiations for settlement occurred at arm's length" when the parties were assisted by a retired judge as mediator); *see also In re Nat'l Football League Players*, 301 F.R.D. at 198 (citing 4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11:41 (4th ed. 2010) (noting that courts usually adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval")).

Here, the parties participated in settlement talks under the auspices of Judge Thomas J. Reuter on August 1, 2025 and September 3, 2025. Frisch Cert. ¶ 23 [ECF 196-4 at 8–9]. Although the initial mediation sessions did not result in a settlement, negotiations continued in the weeks thereafter, with a settlement in principle being reached on September 9, 2026. Pls.' Br. at 3 [ECF

No. 196 at 3]. Given the extent of negotiations and the role played by an experienced mediator, the Court is satisfied that the proposed settlement is the product of arm's-length negotiations.

**c. Adequate Relief**

The Court must also consider whether the relief provided for the class is adequate. FED. R. CIV. P. 23(e)(2)(C). Rule 23(e) provides four factors which district courts must consider when evaluating the adequacy of relief: (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (3) the terms of any proposed award of attorney's fees, including timing of payment; and (4) any agreement required to be identified under Rule 23(e)(3). *Id.*

**i. Cost, Risk, and Delay of Trial and Appeal**

In assessing the cost, risk and delay associated with trial, the Court is mindful that "[t]he role of a district court is not to determine whether the settlement is the fairest possible resolution—a task particularly ill-advised given that the likelihood of success at trial . . . can only be estimated imperfectly." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 173–74 (3d Cir. 2013). Rather, "[t]he Court must determine whether the compromises reflected in the settlement—including those terms relating to the allocation of settlement funds—are fair, reasonable, and adequate when considered from the perspective of the class as a whole." *Id.* A court must recognize that a settlement is a "yielding of the highest hopes in exchange for certainty and resolution" and "guard against demanding too large a settlement based on its view of the merits." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 806.

Here, Defendants agreed to pay $2,300,000 to settle this matter. Plaintiffs' counsel analyzed the payroll data produced in discovery, and based upon the number of hours each class and collective member worked, counsel calculated damages ranging from $1,900,000 to

$13,500,000. Pls.' Br. at 9 [ECF No. 196 at 9]. Assuming Plaintiffs would have established liability at trial, the proposed payment therefore exceeds the minimum calculated damages. Plaintiffs also recognize that trial presents the risk of an adverse finding regarding the classification of HHPs as independent contractors, or regarding Defendants' basis for withholding overtime premiums. Pls.' Br. at 9 [ECF No. 196 at 9]; *see Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 229 (3d Cir. 2019) (whether a worker is an employee or independent contractor is a question of fact as well as law, and questions as to the economic relationship of the parties would therefore be submitted to the jury). Continued litigation would also involve substantial cost and delay. Most immediately, it would require the parties to mount additional discovery, including several depositions. Pls.' Br. at 9 [ECF No. 196 at 9]. Additionally, Defendants would seek discovery regarding both the merits of Plaintiffs' claims and the propriety of decertifying the class. *Id.* Both parties also expressed their mutual intentions to file motions for summary judgment. *Id.* Thus, the Court is satisfied that the costs, risks, and delay of trial and appeal suggest the proposed settlement provides a fair value to class members.

**ii. Proposed Method of Distributing Relief**

The Court must also consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." FED. R. CIV. P. 23 (e)(2)(C)(ii). The Advisory Committees notes on Rule 23 contemplate that courts will "scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims" and "be alert to whether the claims process is unduly demanding." FED. R. CIV. P. 23 advisory committee's note to the 2009 amendment. Pursuant to the proposed Settlement Agreement, each class member will be paid according to his individual wage and hour claim, and will receive a proportional share of the liquidate damages. Notice of Settlement ¶ 3 [ECF No. 196-1 at 21–22]. Each class member

will be paid so long as the member does not seek exclusion from the class. The member will receive a check for unpaid wages and a check for liquidated damages with no need to complete a claim form. Courts in the Third Circuit have found that *pro rata* allocation of settlement funds is an effective method of distribution. *See, e.g.*, *Lunemann v. Kooma III LLC*, No. 23-3704, 2024 WL 2133803, at *8 (E.D. Pa. May 13, 2024). Courts in this Circuit have also found that notices to class members advising that they will receive payment so long as they do not opt out of the Rule 23 class and which impose no burden to complete a claim form represent an effective method of processing claims. *See, e.g.*, *Lunemann*, 2024 WL 2133803, at *8; *Hall v. Accolade, Inc.*, No. 17-3423, 2019 WL 3996621, at *5 (E.D. Pa. Aug. 23, 2019); *Bennett v. Schnader Harrison Segal & Lewis LLP*, No. 24-00592, 2026 WL 202548, at *4 (E.D. Pa. Jan. 22, 2026). The Court is satisfied that the proposed method of distributing relief to the class and processing claims is effective for purposes of Rule 23 (e)(2)(C)(ii).

**iii. Attorney's Fees**

The Court must also consider the "terms of any proposed award of attorney's fees, including timing of payment." FED. R. CIV. P. 23 (e)(2)(C)(iii). Here, class counsel seek an award of attorneys' fees "not to exceed 1/3 of the total Gross Settlement Amount." Settlement Agreement ¶ 24 [ECF 196-1 at 12]. The settlement is not conditioned upon counsel receiving fees of their choosing, and counsel will receive fees no sooner than the settlement checks are mailed. *Id.* The Third Circuit has enumerated factors for determining the fairness of attorneys' fees, but these are reserved for the final approval. *See In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009) (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 194 (3d Cir. 2000) (looking to, *inter alia*, the size of the fund created, the number of persons benefitted, and the skill and efficiency

of the attorneys involved)). The Court is satisfied that this factor weighs in favor of preliminary approval, and will consider the request for attorneys' fees more fully at the final approval stage.

**iv. Any Agreement in Connection with the Proposal**

Rule 23(e)(3) requires that "parties seeking approval must file a statement identifying any agreement made in connection with the proposal." FED. R. CIV. P. 23 (e)(3). Plaintiffs maintain that the Settlement Agreement is the only agreement related to this dispute. Thus, the Court finds that this factor weighs in favor of preliminary approval.

**v. Equitable Treatment of Class Members**

The Court must consider whether the Settlement Agreement treats class members equitably relative to each other. FED. R. CIV. P. 23 (e)(2)(D). Here, as previously discussed, each class member will be paid according to his individual wage and hour claim, and will receive a proportional share of the liquidated damages. Notice of Settlement ¶ 3 [ECF No. 196-1 at 21–22]. Courts within the Third Circuit have found such a proportional distribution of settlement funds treats class members equitably relative to each other. *Bennett*, No. 24-00592, 2026 WL 202548, at *4 (citing *In re Generic Pharms. Pricing Antitrust Litig.*, No. 16-2724, 2025 WL 2777570, at *7 (E.D. Pa. Sept. 26, 2025)); *McDermid v. Inovio Pharms., Inc.*, No. 20-01402, 2023 WL 227355, at *6 (E.D. Pa. Jan. 18, 2023). The Court is satisfied that this proposal treats the class members equitably.

In light of the foregoing analysis, the Court perceives no obvious deficiencies in the Settlement Agreement. The Court preliminarily finds the Settlement Agreement to be fair and likely be approved pursuant to Rule 23(e).

### C. FLSA Settlement Approval

"Although Third Circuit precedent is silent on the matter of judicial approval of FLSA settlements, district courts in this jurisdiction abide by the principle that settlement of FLSA claims under 29 U.S.C. § 216(b) requires court approval." *Fritz v. Terminite, Inc.*, No. 19-15749, 2020 WL 5015508, at *1 (D.N.J. Aug. 25, 2020); *see also Orozco, et al. v. Eli Timberland Tree Service, LLC, et al.*, No. 24-7045, 2025 WL 2304894, at *1 (D.N.J. Aug. 11, 2025) ("[D]istrict courts within the Third Circuit have . . . assumed that judicial approval is necessary."). In evaluating a proposed settlement of an FLSA action, "district courts within the Third Circuit have followed the guidance set forth by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982)." *Fritz*, No. 19-15749, 2020 WL 5015508, at *1. Courts evaluate a proposed FLSA settlement using a three-part analysis. *Payton-Fernandez*, 671 F. Supp. 3d at 520. "First, the court must determine that the settlement concerns a bona fide dispute. Second, the court must determine that the settlement is fair and reasonable to the Plaintiff-employee. And, third, the court must determine that the agreement does not frustrate the implementation of the FLSA in the workplace." *Gabrielyan v. S.O. Rose Apartments LLC*, No. 15-1771, 2015 WL 5853924, at *2 (D.N.J. Oct. 5, 2015). The Court makes each of these determinations in favor of Plaintiffs' proposal and therefore preliminarily approves the Settlement Agreement.

#### 1. The Settlement Resolves a Bona Fide Dispute

"[A] district court may find that a proposed settlement agreement resolves a bona fide dispute when it 'reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute.'" *In re Chickie's & Pete's Wage & Hour Litig.*, No. 12-6820, 2014 WL 911718, at *2 (E.D. Pa. Mar. 7, 2014) (citing *Lynn's Food Stores v.*

*U.S. ex rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016) ("In essence, for a bona fide dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim . . . ."). Here, Plaintiffs allege that Defendants misclassified them as independent contractors rather than employees, and failed to pay Plaintiffs overtime wages in violation of the FLSA, the New Jersey Wage and Hour Law, and the New Jersey Wage Payment Law. *See generally* Am. Compl. [ECF No. 139]. In furtherance of their claim, Plaintiffs conducted an analysis of pay and attendance data to assess the purported wage damages. *See* Settlement Agreement ¶ 6 [ECF No. 196-1 at 3].

Defendants denied Plaintiffs' allegations in their Answer and "continue to deny" these allegations. *See* Settlement Agreement ¶ 4 [ECF No. 196-1 at 2]. Contrary to Plaintiffs' claims, Defendants assert that "their classification of payments to Plaintiffs were correctly categorized as non-employee payments." *Id.* ¶ 4. The parties continue to disagree on a variety of issues pertaining to the classification of payments to Plaintiffs. *Id.* ¶¶ 4, 8. The classification, and the consequential computation of back wages for purported employees are issues at the forefront of this dispute. The parties' adversarial engagement, including alternative dispute resolution featuring the exchange of pay and attendance data informing competing damages analyses, are also consistent with a bona fide dispute. Accordingly, the Court is satisfied that the dispute raises fact-dependent allegations within the contours of the FLSA.

### 2. The Settlement is Fair and Reasonable

To determine whether the terms of an FLSA collective settlement agreement are fair at the stage of preliminary approval in the context of a hybrid action such as this, courts in the Third Circuit rely upon the fairness determination of Rule 23(e)(2). *See, e.g.*, *Caddick v. Tasty Baking*

*Co.*, No. 19-02106, 2021 WL 1374607, at *8 (E.D. Pa. Apr. 12, 2021). As discussed at length above, the Rule 23(e)(2) factors weigh in favor of preliminary approval of the proposed settlement as it concerns the state law claims of the Rule 23 class. However, the Court must squarely address whether the settlement is fair and reasonable in its release of FLSA claims.

Notably, the Settlement Agreement conditions settlement upon a release by Rule 23 class members of their FLSA claims, and does not distinguish between those who have asserted such claims and those who have not. *See* Settlement Agreement ¶ 14 [ECF No. 196-1 at 6]. This raises a concern that class members, in pursuing the resolution of their state law claims, must waive any FLSA claims they have yet to pursue. In *Lundeen v. 10 West Ferry Street Operations, LLC*, the Third Circuit considered whether such a release violated the FLSA opt-in requirement. 156 F.4th 332 (3d Cir. 2025). Noting that the opt-in provision is limited to providing a private right of action, the Third Circuit concluded that "the language of § 216(b) does not bar the release of unasserted FLSA claims in a court-approved Rule 23 settlement." *Id.* at 336. However, the Third Circuit circumscribed its ruling to whether such releases conflicted with the opt-in provision, and was careful to maintain that the presence of such releases in a settlement agreement was still a relevant consideration in determining whether an agreement is "fair, reasonable, and adequate." *Id.* at 341.

The *Lundeen* Court ultimately reversed the lower court's denial of preliminary approval of the hybrid action settlement and instructed a fairness evaluation, noting that courts have approved similar settlements where there has been a "clear notice to class members of the release and a meaningful opportunity to opt out." *Id.* at 342 (citing *Lunemann*, No. 23-3704, 2024 WL 2133803, at *2 (preliminarily approving a settlement agreement where "the parties provided a clear and comprehensive explanation of the release in the proposed notice" and the class members were "fully informed as to how to preserve" their unasserted FLSA claims)). Here, the Notice of

Settlement clearly conveys to the specific audience of class members, both the scope of the release and class members' opportunity to opt out. A paragraph unambiguously titled "What am I giving up to stay in the settlement class?" reads in pertinent part as follows:

> If you are a Class Member, you will remain a Class Member unless you exclude yourself. That means when the proposed settlement becomes final, you will receive a settlement payment. In exchange for the settlement payment, you will give up your right to sue NMH and fully release all claims that you have against NMH from all New Jersey and FLSA wage and hour claims asserted in this lawsuit, including for unpaid wages, overtime pay, interest, liquidated damages, or other penalties for unpaid wages, overtime, and related record keeping violations, as well as those claims that you may not be fully aware of under New Jersey and FLSA wage and hour laws.

Notice of Settlement ¶ 14 [ECF No. 196-1 at 24–25]. Additionally, a paragraph titled, "What are my options?" explains how a class member may seek exclusion form the settlement. Notice of Settlement ¶ 7 [ECF No. 196-1 at 22]. A clause labeled "Exclude Yourself from this Settlement" reads in pertinent part as follows:

> If you are a Class Member, you can exclude yourself from the Settlement by informing the Claims Administrator that you want to "opt-out" of the settlement. If you "opt-out," you will not recover any money from the settlement. However, if the settlement becomes final, this is the only option that allows you to keep your rights to sue NMH for claims related to your alleged wages during the relevant time period.

Notice of Settlement ¶ 7 [ECF No. 196-1 at 22–23]. The Court is satisfied that the Notice of Settlement guards against the threat to fairness, reasonableness, and adequacy that is posed by a release that reaches class members' unasserted FLSA claims.

**3. The Settlement does not Frustrate FLSA Implementation.**

In assessing whether a settlement agreement frustrates the purpose of the FLSA, courts consider "three interrelated FLSA objectives." *Li v. Sushi To Go Cherry Hill, LLC*, No. 22-4734, 2023 WL 4958105, at *1 (D.N.J. Aug. 3, 2023). These objectives include: (1) "combatting 'inequalities in bargaining power between employers and employees;'" (2) promoting "widespread

employer compliance with the FLSA;" and (3) honoring "the 'private-public character of employee rights,' whereby the public has a general interest in employee well-being and access to fair wages." *Ortiz v. Freight Rite, Inc.*, No. 21-1060, 2021 WL 5988582, at *4 (M.D. Pa. Dec. 17, 2021) (internal citations omitted). Courts look to "the scope of any confidentiality provisions and the breadth of any release of claims provisions" to assess the settlement's congruence with these objectives. *Id.* (internal citations omitted). Here, the proposed settlement does not require Plaintiffs to agree to a confidentiality provision of any kind, so the Court need not consider whether such a provision frustrates the implementation of the FLSA. Further, the release provision is appropriately tailored. In consideration of their settlement awards, Opt-In Plaintiffs release Defendant from any related wages or hours claims for the relevant period through September 9, 2025. *See* Settlement Agreement ¶ 14 [ECF No. 196-1 at 5]. The release functions by operation of the cashing of the class or collective member's settlement check. However, this does not run afoul of the FLSA requirement that opt-in plaintiffs file a "consent in writing to become such a party" [29 U.S.C. § 216(b)], because the release expressly applies to "FLSA Collective members" who have already "fil[ed] their consent to join." *See* Settlement Agreement ¶ 13g [ECF No. 196-1 at 4]; *Payton-Fernandez*, 671 F. Supp. 3d at 525 (challenging the propriety of opting into a FLSA collective by cashing one's settlement check). The Court therefore finds the Settlement Agreement does not frustrate the implementation of the FLSA.

**D. Notice to the Class**

Finally, the Court must consider the adequacy of notice to the class. Rule 23(c)(2)(B) provides that, for a class certified under Rule 23(b)(3) for purposes of settlement, a court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P.

23 (c)(2)(B). Rule 23(c)(2)(B) further provides that the notice must "clearly and concisely state" the following: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through an attorney if the member so desires; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on members under Rule 23(c)(3). *Id.* The Third Circuit has explained that "due process further requires that notice be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Nat'l Football League Players*, 821 F.3d at 435 (internal quotation marks omitted).

Here, the Notice of Settlement clearly states the nature of the action as one for "unpaid minimum wages and overtime under a federal law, the Fair Labor Standards Act (FLSA), . . . and under New Jersey state law (the New Jersey Wage and Hour Law and the New Jersey Wage Payment Law)." Notice of Settlement ¶ 1 [ECF No. 196-1 at 21]. The Notice clearly states the definition of the class certified as "Home Host Providers ("HHPs"), who contracted with the New Jersey Department of Human Services ("NJDHS") and provided services to NMH's clients in New Jersey, during the time period between January 11, 2019 and September 9, 2025." *Id.* It likewise summarizes the claims that HHPs were "misclassified as independent contractors, and not paid legally-mandated federal and state minimum wages and/or overtime wages for all weeks/hours worked." *Id.* The Notice explains that a class member may be "represented by [his or her] own lawyer." *Id.* ¶ 10 [ECF No. 196-1 at 24]. It further explains that a class member may request exclusion from the settlement, and outlines the time and manner of exclusion. Specifically, a class member may request exclusion "by informing the Claims Administrator that [he or she] want[s]

to 'opt-out' of the settlement" within forty-five days of the mailing of the notice. *Id.* ¶ 7 [ECF No. 196-1 at 23]. Finally, the Notice indicates to class members the binding effect of class judgment by defining the class, explaining the mechanism of exclusion, and explaining that this settlement is in lieu of judgment which may be "less favorable." *Id.* ¶¶ 7, 4 [ECF No. 196-1 at 22–23]. The Court is satisfied that the Notice of Settlement is the "best notice that is practicable under the circumstances" for purposes of Rule 23 (c)(2)(B).

The Court also finds that the Notice satisfies the strictures of due process. Notice to the class members will be informed by a list of the names and last known physical addresses, email addresses, and phone numbers provided to the Claims Administrator within 14 days of preliminary approval of the Settlement Agreement. Settlement Agreement ¶ 18 [ECF No. 196-1 at 7]. The Claims Administrator will use standard skip tracing devices to verify the accuracy of all physical addresses, and then mail individualized notices to those addresses. *Id.* If a letter is returned to sender, a diligent search for another address will be undertaken and the notice mailed there within 10 days. *Id.* The Court is satisfied that this method of identification, taken together with the contents of the Notice, renders the Notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Nat'l Football League Players*, 821 F.3d at 435 (internal quotation marks omitted).

## V. CONCLUSION

Accordingly, for all the foregoing reasons,

**IT IS HEREBY ORDERED** this **16th** day of **October, 2026**, that Plaintiffs' motion is **GRANTED** as follows:

1. The Court hereby preliminary approves the Class and Collective Action Settlement Agreement (the "Settlement") attached as Exhibit A to Plaintiff's Motion for Preliminary Approval. This is based on the Court's determination that, pursuant to applicable law, the Settlement is fair and reasonable and within the range of possible final approval.

2. This Order incorporates by reference the definitions in the Settlement, and all terms defined herein shall have the same meaning in this Order as set forth in the Settlement.

3. It appears to the Court on a preliminary basis that the settlement amount and terms of the Settlement are fair, adequate, and reasonable as to all potential Settlement Class and Settlement Collective Members when balanced against the probable outcome of further litigation and the significant risks relating to certification, liability and damages for all parties. It further appears that investigation and research have been conducted such that counsel for the Parties are able to reasonably evaluate their respective positions. It further appears to the Court that settlement at this time will avoid substantial additional costs by all Parties, as well as avoid the delay and risks that would be presented by further prosecution of the Litigation. Based on the submitted materials, it appears that the Settlement has been reached as a result of serious and non-collusive, arms-length negotiations, with both sides represented by experienced counsel familiar with the applicable facts and law. Additionally, the proposed Settlement was reached after: (1) extensive discovery, including exchanging documents and business records, and (2) a full day mediation with an experienced mediator. Thus, the Court preliminarily finds the Settlement is fair, adequate, and reasonable when balanced against the probable outcome of further litigation and the significant risks and delays associated therewith.

4. The Settlement specifies for Plaintiff's attorneys' fees not to exceed 33% of the Gross Settlement Amount, an award of litigation expenses incurred, and a proposed payment to

the Named Plaintiff in exchange for a general release. The Court will review these issues in more detail in connection with the Final Approval Hearing.

5. Accordingly, for settlement purposes, the Court certifies the following Settlement Class:

> **All Home Health Providers, contracted with the NJDHS, who provided services to Defendants' clients in New Jersey, between January 11, 2019 and September 9, 2025.**

6. The Court concludes that the Settlement Class preliminarily meets the requirements for Rule 23 certification. The Settlement Class is hereby certified, as a class action under Federal Rule of Civil Procedure 23(a) and 23(b)(3). Pending the outcome of the final fairness hearing, all members of the Settlement Class are preliminarily enjoined from commencing, prosecuting, or maintaining any claim already asserted in, and encompassed by, this Litigation.

7. The Parties' proposed resolution of FLSA claims as set forth in the Settlement Agreement is preliminarily approved as it was reached as a result of contested litigation to resolve a *bona fide* dispute. The Court further finds that the proposed FLSA settlement is within the range of possible final approval.

8. The Court provisionally appoints Andrew R. Frisch and Allison Rattet of Morgan & Morgan, P.A. as Class Counsel.

9. The Court preliminarily appoints John Hagans and Vivian Hagans as Settlement Class Representatives.

10. The Court appoints ILYM Group, Inc. the Settlement Administrator.

11. The Parties are authorized to send notice of the proposed settlement pursuant to Rule 23 to all Rule 23 Class members. Notice shall be sent in accordance with the procedures set forth in the Parties' Settlement Agreement.

12. The Court approves, as to form and content, the proposed notices attached to the Settlement Agreement as **Exhibit B**. The Court finds that the procedures for notifying the members of the Class about the Settlement as described in the Settlement Agreement provide the best notice practicable under the circumstances and, when completed, shall constitute due and sufficient notice of the proposed Settlement and Final Approval Hearing to all persons affected by and/or entitled to participate in the Settlement, in full compliance with the notice requirements of Fed. R. Civ. P. 23, due process, the Constitution of the United States, the laws of the State of New Jersey, and other applicable laws. The notices are accurate, objective, and informative and provides members of the Rule 23 Class with all the information necessary to make an informed decision regarding their participation in the Settlement and its fairness.

13. The deadline for Settlement Class Members to opt out of this Settlement or to file objections and/or comments to the Settlement Agreement shall be forty-five (45) days after the Notice of Settlement is initially mailed. Objections shall only be considered if the Settlement Class Member has not opted out of the Settlement. No Settlement Class Member shall be heard at the Final Approval Hearing (whether individually or through counsel), unless written notice of the person's intention to appear at the Final Approval Hearing has been mailed to the Settlement Administrator on or before the Objection and Opt-Out Deadline. The postmark date shall be the exclusive means for determining that an objection is timely.

14. A final approval hearing in this matter is scheduled for **January 11, 2027**. At the hearing, the Court will hear arguments concerning whether the proposed settlement is fair, adequate and reasonable and should be finally approved by the Court. The Court will further consider whether to approve Plaintiff's attorneys' fees and costs and the payment to the Named Plaintiffs in exchange for a general release. All papers in support of final approval and Plaintiffs'

unopposed motion for attorneys' fees, costs, and payments to the Named Plaintiffs shall be filed with the Court no later than 14 days in advance of the Final Approval hearing.

s/ Sharon A. King
SHARON A. KING
United States Magistrate Judge

cc: Hon. Karen M. Williams, U.S.D.J.